# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Alexia Keil, Nick Hutchison, Rachael D. Stone, Maja Mackenzie, Jonathon Fisher, David Delre, Beth Cox, and Lori Canale on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br>      v.<br><br>THE BLUE BUFFALO COMPANY, LTD.<br><br>               Defendant. | Case No. 14-md-02562-RWS<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## FACTUAL ALLEGATIONS

1.      Defendant The Blue Buffalo Company, Ltd. ("Defendant"), sells pet food for dogs and cats, and has worked to build a brand specifically targeted at ingredient-conscious pet owners.   The ingredients present in pet food are an important characteristic to consumers, including the Plaintiffs and Class Members.

2.      At issue in this action are all sizes and varieties of Defendant's pet food product lines:   "Life Protection"[1], "Wilderness", "Basics", and "Freedom" (collectively the "Blue Buffalo Products").

### *The TRUE BLUE PROMISE*

3.      At the very core of Defendant's advertising and marketing of the Blue Buffalo Products is its TRUE BLUE PROMISE, which promises that Blue Buffalo Products contain only the finest natural ingredients with "NO Chicken or Poultry By-Product Meals", "NO Corn, Wheat or Soy", and "NO Artificial Preservatives, Colors or Flavors":



---

[1] For cats, Defendant's Life Protection product line is also known as "BLUE for Cats."  *See* http://bluebuffalo.com/for-cats/product-lines/blue-for-cats/.

[2] http://bluebuffalo.com/about-us/whats-new-at-blue/wilbur-ellis-texas-plant/ (Last visited January 5, 2015).

[3] *See Nestle Purina Petcare Company v. The Blue Buffalo Company Ltd.*, 4:14-cv-00859-RWS, Doc. # 77-3 (E.D. Mo. Oct. 10, 2014).

1

4.      The TRUE BLUE PROMISE appears on all Blue Buffalo Products. For example, it is shown here on the Life Protection Formula Chicken & Brown Rice Recipe for Adult Dogs:



5.      As shown by the packaging of the Life Protection Formula Chicken & Brown Rice Recipe for Adult Dogs, the TRUE BLUE PROMISE is underscored on the front label of every Blue Buffalo Product, which states "No chicken or poultry by-product meals • No corn, wheat or soy • No artificial preservatives • No artificial flavors":



6.      The same "promise" appears on the packaging of the Life Protection Formula Chicken & Brown Rice Recipe for Indoor Adult Cats:



7.      The TRUE BLUE PROMISE is also reiterated on the back label of every Blue Buffalo Product.  For example, the back label of the Life Protection Formula Chicken & Brown Rice Recipe for Adult Dogs provides, "We never use any chicken or poultry by-product meals, and our recipes have no corn, wheat or soy, which can trigger allergic reactions":



8.      Similarly, the back label of the Life Protection Formula Chicken & Brown Rice Recipe for Indoor Adult Cats provides "we never use chicken or poultry by-product meals or anything artificial":



9.      However, Defendant's TRUE BLUE PROMISE is false and misleading. Scientific testing reveals that, contrary to the TRUE BLUE PROMISE, the Blue Buffalo

Products do, in fact, contain significant amounts of chicken/poultry by-product meal.  That's not all.  The scientific testing also reveals that the Blue Buffalo Products also contain corn, rice, grains, soy and/or artificial preservatives.  In short, the Blue Buffalo Products fail to live up to Defendant's TRUE BLUE PROMISE.

### *TESTING AND ADMISSIONS*

10.    The ingredients in Blue Buffalo Products do not conform to the TRUE BLUE PROMISE.

11.    The TRUE BLUE PROMISE promises that the Blue Buffalo Products contain "NO Chicken or Poultry By-Product Meals."  However, independent testing has revealed that Blue Buffalo Products do, in fact, contain chicken and poultry by-product meals.

12.    The TRUE BLUE PROMISE also promises that the Blue Buffalo Products contain "NO Corn, Wheat or Soy."  Here too independent testing has revealed the presence of rice and corn in various Blue Buffalo Products, including those within the Wilderness and Freedom product lines.  This is particularly problematic because Defendant advertises its Wilderness and Freedom product lines as being grain-free.  *See infra* ¶¶ 28-30 (grain free allegations).

13.    Defendant has admitted its Blue Buffalo Products contained ingredients in violation of the TRUE BLUE PROMISE.  On October 14, 2014, Defendant's Founder and Chairman Bill Bishop posted a letter on Defendant's website[2] that admitted, for at least a portion of the Class Period, that Defendant broke its TRUE BLUE PROMISE because poultry by-product meal was present in Blue Buffalo Products:

---

[2] http://bluebuffalo.com/about-us/whats-new-at-blue/wilbur-ellis-texas-plant/ (Last visited January 5, 2015).

October 14, 2014

Dear Pet Parents,

Blue Buffalo has recently learned from Wilbur-Ellis, a major U.S. Company that supplies ingredients to us and many other well-known brands of pet foods, that a Texas pet food ingredient processing plant they own had mislabeled some of the ingredients they shipped to their customers. So while their customers were ordering and paying for 100% chicken meal, at times they were receiving shipments that contained poultry by-product meal.

14.     Furthermore, emails between Blue Buffalo's suppliers and contractors or agents reveal that Blue Buffalo contracted to purchase "Chicken Meal Blend and Turkey Meal Blend:"

> [Y]ou have asked me to ship you chicken meal and turkey meal.  Our current contracts are for Chicken Meal Blend and Turkey Meal Blend and as you are aware, both of these contain some by-product meal.

*See Nestle Purina Petcare Company v. The Blue Buffalo Company Ltd.*, 4:14-cv-00859-RWS, Doc. #. 77-1 (E.D. Mo. Oct. 10, 2014).

15.     These emails show that Defendant and its agents knew of the problem soon after Purina filed its Lanham Act case against Defendant on May 6, 2014.  For example, in one email dated May 15, 2014, Defendant's agent wrote to supplier Wilbur-Ellis:

> I think if we work together, we can band-aid this situation.  ...  If you are not going to fill these contracts for any reason, then I'm going to have to go to Blue to address the breach of contract and undoubtedly divulge the details of what was shipped and the possibility that Rosser's material is the smoking gun for their problems.

*See Nestle Purina Petcare Company v. The Blue Buffalo Company Ltd.*, 4:14-cv-00859-RWS, Doc. #. 77-2 (E.D. Mo. Oct. 10, 2014).

16.     These emails[3] also reveal that, notwithstanding the TRUE BLUE PROMISE, the Blue Buffalo Products also contain soy:

---

[3] *See Nestle Purina Petcare Company v. The Blue Buffalo Company Ltd.*, 4:14-cv-00859-RWS, Doc. # 77-3 (E.D. Mo. Oct. 10, 2014).

Doug is correct. Naturox has to be added in the ingredient deck as *"sunflower oil, natural mixed tocopherols (preservative), Lecithin, Rosemary extract (natural flavor)"* by request of State regulators (especially Texas). Kemin has informed us that the lecithin they use for Naturox is soy based. There are alternatives without "soy-based" lecithin that we could use if this ends up being an issue. Switchin or having an alternative will require additional management and controls at the site.

### *Price Premium*

17.     As a result of the TRUE BLUE PROMISE, Defendant charges a premium price for the Blue Buffalo Products.  In fact, Defendant's Life Protection Formula Chicken & Brown Rice Recipe for Adult Dogs commands a 55% price premium, per pound, over a competing product, while Defendant's Wilderness Chicken Recipe for Adult Dogs commands a 94% premium, per pound:

| Brand | Quantity | Price | Unit Price |
|---|---|---|---|
| Blue Buffalo Life Protection Formula Chicken & Brown Rice Recipe for Adult Dogs | 30 lbs. | $59.99 | $2.00 per lb. |
| Blue Buffalo Wilderness Chicken Recipe for Adult Dogs | 24 lbs. | $59.99 | $2.50 per lb. |
| Purina One Smartblend Chicken & Rice Formula Dog Food | 31.1 lbs | $39.99 | $1.29 per lb. |

18.     However, independent testing reveals that the Blue Buffalo Products contain ingredients in violation of the TRUE BLUE PROMISE.  The presence of these ingredients in Blue Buffalo Products indicates that Blue Buffalo Products are worth substantially less than the premium prices paid for them.  According to Defendant, by-product meal is an inferior ingredient.  Indeed, Defendant itself states in the description of its "Nutrition Philosophy" that "[p]oultry or chicken by-product meals cost a lot less than meals made from whole meat."

19.     As a result of Defendant's deceptive conduct and/or unfair practices, Plaintiffs and Class Members suffered actual damages and/or economic losses.

*__Advertising and Marketing__*

20.    The TRUE BLUE PROMISE is not limited to the labeling of the Blue Buffalo Products.  Rather, Defendant has engaged in an extensive, nationwide, uniform marketing and advertising campaign replete with misrepresentations and false statements concerning the TRUE BLUE PROMISE that appear throughout Defendant's website, product packaging, print ads, television ads, and in-store displays.

21.    Fundamental to Defendant's deceptive marketing and advertising campaign is its "Nutrition Philosophy," which emphasizes that "BLUE foods consist of the finest natural ingredients combined in perfect balance for holistic nutrition," including high quality protein sources as its first ingredient, the best sources of fats, quality whole grains, and natural vitamins, minerals and fibers.  For example, Defendant's marketing includes the following:

> Of equal importance is the quality of the ingredients from which these nutrients are derived. For example, real chicken meat is a higher quality protein source than chicken or poultry by-product meals; chicken fat is considered a higher quality source of essential fatty acids than generic "animal fats." Subtle differences like these may determine whether a pet food brand's ingredients are as healthy as they claim to be.
>
> ****
>
> Some brands cut corners by using protein from chicken or poultry by-product meals, or even worse, from corn, corn gluten meal, soy or soybean meal–not BLUE.
>
> ****
>
> **Corn, Wheat or Soy Proteins (Glutens)**
>
> All of these are less complete and lower quality sources of protein and are common allergens in pets. Grain proteins do not contain the complete amino acid profiles specific for dogs or cats and are not as easily digestible as meat-based proteins. Many pet food companies use the less expensive glutens to increase protein levels without the complete amino acid benefits of using more expensive meat, poultry or fish proteins.
>
> Simply put, these ingredients are cheaper, lower in nutrition, and things we would never include in a BLUE recipe.

**Artificial Colors, Flavors, or Preservatives**

Preservatives like BHA, BHT, ethoxyquin, propylene glycol provide no nutritional value and have been associated with possible side effects. Some pet food brands resort to artificial colors and flavors in an attempt to make food look and taste better. We don't.

We hope this information helps you better understand what we do and why we do it at Blue Buffalo. We know we're not alone in our belief that these are the important factors that determine what makes up a truly healthy and nutritious pet food. The good thing is, BLUE dog and cat food was created with all of these things in mind–which means the decision about to what feed them just got a whole lot easier.

http://www.bluebuffalo.com/nutrition.

22.     This philosophy is embodied in Defendant's TRUE BLUE PROMISE, which appears prominently in its advertising and marketing including its website and on the packaging of all Blue Buffalo Products.

23.     Defendant repeatedly asserts that Blue Buffalo Products contain "no chicken or poultry by-product meals."  This misrepresentation appears in the True Blue Promise, in the Nutrition Philosophy, and on the front of Blue Buffalo Products.

24.     Many of Defendant's advertisements feature its "True Blue Test," where Blue Buffalo invites consumers to visit its website to "see how the ingredients in your dog or cat food brand compare to the ones in BLUE."  Customers choose a competitor's dog food, and receive a comparison of its ingredients with those of Blue Buffalo Products. For example, the ingredient comparison results between Defendant's Life Protection Adult Chicken & Brown Rice Formula and Purina's Dog Chow include assertions that Blue Buffalo Products contain "Deboned Chicken" and "Chicken Meal," in comparison to Purina's use of corn and meat and bone meal. Defendant also specifically states that its Blue Buffalo Product "DOESN'T contain chicken (or poultry) by-product meals":

8



http://bluebuffalo.com/true-blue-test/compare-dog-food/results/?brandPageId=5328&testPageId=5317



_**"Natural Ingredients" / "NO Artificial Preservatives"**_

25.    Defendant has made, and is currently making, statements and "promises" to consumers that the Blue Buffalo Products contain "Only the Finest Natural Ingredients" and have "NO Artificial Preservatives."



**BLUE uses only the finest natural ingredients and:**

- NO chicken (or poultry) by-product meals
- NO artificial flavors, colors, or preservatives
- NO corn, wheat or soy, as they have been linked to allergic reactions in some pets

## What's In Our Food and Why

BLUE foods consist of the finest natural ingredients combined in perfect balance for superior nutrition. These delicious, high-quality ingredients are the foundation of all of our products along with intensively researched vitamins, minerals, and antioxidants – each combination specifically modified for dogs, cats, lifestages, weight conditions, taste preference, and personal feeding choice.

Like us, dogs and cats require a balanced diet that is a combination of six nutrient classes:

- Proteins
- Fats
- Carbohydrates
- Vitamins
- Minerals
- Water

26.    These statements and promises are repeated throughout Defendant's websites, its national television commercials, its Blue Buffalo Products' labels, in-store displays, and other advertising materials.

27.    Defendant's statements and promises that the Blue Buffalo Products contain "Only the Finest Natural Ingredients" and have "NO Artificial Preservatives" are false and

misleading because, among other things, the Blue Buffalo Products contain chicken/poultry by-product meals that include artificial preservatives that are not present in chicken/poultry meal.

***"Grain-Free"***

28.     Grain-free pet foods are desired by consumers who believe that dogs and cats should be fed as carnivores.  Defendant attempts to capitalize on these consumers by not only representing that all of its Blue Buffalo Products contain "no corn, wheat or soy," but by also representing that certain of its Blue Buffalo Products – specifically the "Wilderness" and "Freedom" lines, as well as part of the "Basics" line – are "grain free."







### Basics™ Turkey and Potato Recipe
### *for Adult Cats*

BLUE Basics Turkey Recipe is a limited-ingredient diet formulated to minimize food sensitivities that some cats experience while maximizing the nutritional value they receive. BLUE Basics contains

- **Turkey** - A high-quality protein not commonly used in cat food.

- **Oatmeal, Potatoes and Brown Rice** - Three easily digestible carbohydrate sources.

- **A Precise Blend of Veggies, Fruit and Micronutrients** - Selected for their nutritional value and their capacity to help in the digestive process.

- **An Optimal Blend of Omega 3 and 6 Fatty Acids** - Helps maintain the immune system to help support skin and coat health.

Available in 5 and 11 lb. Bags

 **+ Zoom**

[f Like] [Share] ⟨ 0 ⟩

For cats with food sensitivities, the ingredients they don't eat are just as important as the ones they do. BLUE Basics contains:

- **NO** corn
- **NO** soy
- **NO** wheat
- **NO** eggs
- **NO** dairy

And, like all BLUE pet foods, BLUE Basics contains no chicken (or poultry) by-product meals and no artificial ingredients of any kind.

29.    However, Defendant's representations that its Blue Buffalo Products are "grain-free" and contain "no corn, wheat or soy" are false and misleading because, as testing reveals, these products do, in fact, contain these ingredients.  Specifically, the scientific tests found grains (rice hulls and/or ground corn) in the LifeSource Bits that are found in each of the "grain-free" product lines.  In fact, these grains were found in concentrations of up to 3% by weight.

30.    By falsely advertising its Blue Buffalo Products as "grain-free" when the products in fact contain grains, Defendant is misleading and deceiving consumers who seek to purchase grain free products.

12

*LifeSource Bits*

31.   Defendant's Blue Buffalo Products also contain so-called "LifeSource Bits," as

shown by their labeling:



32.   In reality, contrary to the TRUE BLUE PROMISE, scientific testing reveals that

the LifeSource Bits found in the Blue Buffalo Products also contain chicken/poultry by-product

meals and corn.  Similarly, these tests also show that the LifeSource Bits found in the "grain

free" Blue Buffalo Products contain rice hulls.[4]

---

[4] For example, scientific tests were performed on two samples each of Defendant's Wilderness
Adult Chicken Recipe Dog Food and Wilderness Adult Chicken Recipe Cat Food.  The results
showed that the LifeSource Bits in the tested dog food samples contained 3% and 1% corn or
rice, respectively.  The results also showed that the LifeSource Bits in the two Wilderness cat
food samples contained 2.2% and 2.5% rice or corn, respectively.  Also tested were two samples
each of Defendant's Freedom Adult Grain Free Chicken Recipe dog food and Freedom Adult
Grain Free Chicken Recipe cat food.  The results showed that the LifeSource Bits in the two
samples of the Freedom dog food contained 3% and 1% corn or rice, respectively.  The results
also showed that the LifeSource Bits in the two samples of the Freedom cat food contained 2%
and 2% corn or rice, respectively.

***Defendant's Misrepresentations and Omissions are Material to Consumers***

33.     Although pet foods vary in the quality of ingredients, formula and nutritional value, premium or ultra-premium pet foods, like the Blue Buffalo Products, typically have higher standards with respect to each of these important variables.

34.     Specifically, ultra-premium pet foods typically have higher quality protein sources, no artificial dyes, and added antioxidants and vitamins.

35.     Proteins are the primary building blocks of brain, muscle, fur, and skin.  Proteins affect metabolism, regulate pH, and are used in the production of antibodies, enzymes, hormones, and body tissues.  Proteins can be turned into fat and stored, or can be burned as calories.  If a pet's body does not receive enough protein, or if the nutrients are not absorbed properly, the immune system becomes weak.

36.     Protein can come from a variety of sources, some much healthier than others. Meat protein is an optimal source of essential amino acids.  As such, consumers of ultra-premium pet foods look for protein derived from quality meat and poultry sources.[5]  Many pet foods, especially the economy brands, use corn, wheat, gluten, soy, meat and bone meal as a major source of protein, but these are inferior sources of protein for pets.  Consumers of premium pet foods look for diets with quality meat or poultry sources making up at least 3 or 4 of the first 6 ingredients listed on product packaging.

37.     In contrast, many low quality pet foods are made with chicken/poultry by-product meals.  Manufacturers of low quality pet foods use by-product meals because they are less expensive.  By-product meals often contain animal necks, heads, feet, intestines, and other internal organs that are not quality sources of food for pets.

38.     Therefore, consumers of premium pet foods, like Plaintiffs and Class members look to buy products containing named meats, such as chicken, as the first ingredient, rather than

---

[5]  Additionally, the nutritional value "per kibble" is higher than most economy brands, meaning a pet will have to eat less of a premium brand to get the same nutrition.  Moreover, because pets need to eat less of a premium brand pet food to get the nutrition they need, pets on a diet of premium brand pet foods produce less waste than pets on a diet of lower quality economy brands.

the less desirable "chicken by-product meal."  As a result, these ultra-premium pet foods tend to be higher priced with larger mark-ups, a factor which has benefited industry revenue generally, and Defendant in particular.  As Defendant acknowledges, "[p]oultry or chicken by-product meals cost a lot less than meals made from whole meat."  Blue Buffalo tells consumers that it "is well worth it to know exactly what's in our food."

### *Defendant has not Changed its TRUE BLUE PROMISE*

39.     Even after acknowledging that its Blue Buffalo Products contain ingredients contrary to the TRUE BLUE PROMISE, Defendant has nonetheless continued advertising its TRUE BLUE PROMISE.

40.     Defendant includes the TRUE BLUE PROMISE on all of its Blue Buffalo Products, and features it in its marketing materials so as to make all purchasers aware of the TRUE BLUE PROMISE in order to induce purchasers to buy Blue Buffalo Products and/or to induce purchasers like Plaintiffs and Class Members to pay a premium for Blue Buffalo Products.

## PARTIES

41.     Plaintiff Alexia Keil is a Missouri citizen residing in the County of St. Louis City in the State of Missouri.  For years, she purchased Blue Buffalo Products, including Defendant's Blue Life Protection, Wilderness, and Freedom "Grain Free" pet foods for the dogs residing in her household. For the cats residing in her household, she purchased Blue Weight Control and Indoor Health, and Wilderness Adult Weight Control and Adult Indoor Chicken pet food.  Ms. Keil made these purchases for personal, family or household purposes for her family's pets.  At the time of her purchases, Plaintiff Keil knew that Defendant promised all Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

42.     Plaintiff Nick Hutchison is a citizen of Missouri who resides in Crawford County,

Missouri.  He purchased multiple bags of Blue Wilderness Chicken Recipe Adult for his two dogs within the last five years.  Mr. Hutchison made these purchases for personal, family or household purposes.  At the time of his purchases, Plaintiff Hutchison knew that Defendant promised all Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

43.     Plaintiff Rachael Stone is an Illinois citizen, and resides in St. Clair County, Illinois.  Throughout 2013 and until approximately April 2014, Ms. Stone purchased Blue Buffalo Products.  For her three dogs she purchased various formulas of Blue Buffalo Products, including Defendant's Life Protection Formula Chicken & Brown Rice Large Breed Puppy Recipe, Life Protection Chicken and Brown Rice Adult Dog Recipe, and Blue Wilderness Salmon Adult Dog Recipe. For her two cats, she purchased Defendant's Blue Indoor Health Salmon and Brown Rice Adult Cat Recipe. Ms. Stone made these purchases for personal, family or household purposes for her five pets.  At the time of her purchases, Plaintiff Stone knew that Defendant promised all Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

44.     Plaintiff Lori Canale is a New York citizen residing in Pleasantville, NY. For approximately 7-8 years, roughly between 2007-2014, Plaintiff Canale purchased Defendant's Life Protection Healthy Weight Adult dog food for her 4 dogs. Plaintiff Canale made these purchases for personal, family or household purposes.  At the time of her purchases, Plaintiff Canale knew that Defendant promised all Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

45.     Plaintiff David Delre is a citizen of the State of New Jersey.  He purchased a variety of Blue Buffalo Products for approximately two years, including Life Protection Chicken & Brown Rice Recipe for Adult Dogs.  Mr. Delre made these purchases for personal, family or household purposes for his pet.     At the time of his purchases, Plaintiff Delre knew that Defendant promised all Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

46.     Plaintiff Jonathon Fisher is a citizen of California, and resides in Los Angeles, CA. From approximately 2010 until June 2014, Plaintiff Fisher purchased many variations of Blue Buffalo Products on a monthly basis for his three dogs, specifically including  Defendant's Life Protection Salmon and Potato Adult Recipe, Life Protection Lamb and Brown Rice Small Breed Adult Recipe, and Life Protection Chicken and Rice Small Breed Adult Recipe pet foods. Plaintiff Fisher made these purchases for personal, family or household purposes.  At the time of his purchases, Plaintiff Fisher knew that Defendant promised all Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

47.     Plaintiff Maja Mackenzie is a citizen of Florida, and resides in Palm Beach County, Florida. In 2014, Plaintiff Mackenzie purchased several bags of Defendant's Life Protection Formula Chicken and Brown Rice Recipe for Adult Dogs for her pet dog. Plaintiff Mackenzie made these purchases for personal, family or household purposes.  At the time of her purchases, Plaintiff Mackenzie knew that Defendant promised all Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

48.     Plaintiff Beth Cox is a citizen of Ohio and resides in Dayton, Ohio.  Between approximately January and October 2014, Plaintiff purchased Blue Buffalo Products roughly every three weeks.  Specifically, for her two dogs, Plaintiff Cox purchased Defendant's Life Protection Healthy Weight Adult Chicken and Brown Rice Recipe dog food. In addition, for her five cats, Plaintiff Cox purchased Defendant's Life Protection Indoor Health Chicken and Brown Rice Recipe cat food. Plaintiff Cox made these purchases for personal, family or household purposes.  At the time of her purchases, Plaintiff Cox knew that Defendant promised all Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

49.     Defendant is a Delaware corporation with its corporate headquarters located at 11 River Road, Wilton, Connecticut, 06897.  Defendant markets, distributes and sells various pet

food products nationwide.  Founded in 2002, Defendant claims to be the leader in premium, quality, all-natural pet foods.  As a result of strong advertising and marketing programs, Defendant has experienced double and triple-digit annual growth over the past several years.  In 2013 alone, Defendant spent more than $50 million in advertising.  Defendant sells its products in leading national pet specialty chains, including PetSmart, Petco and Pet Supplies Plus, as well as in more than 10,000 neighborhood stores nationwide.

## JURISDICTION AND VENUE

50.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

51.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this District, Plaintiffs purchased Blue Buffalo Products in this District, and Plaintiffs reside in this District.  Additionally, venue is proper here because the parties are subject to the JPML order transferring this litigation here.

## CLASS ACTION ALLEGATIONS

52.  Plaintiffs bring this action on behalf of themselves and all other similarly situated persons pursuant to Fed. R. Civ. P. 23.

### *The Classes and Subclasses Defined*

53.  Plaintiffs Keil and Delre seek to represent a nationwide Class defined as all persons in the United States who purchased Blue Buffalo Products, for purposes of the Magnuson-Moss Warranty Act (Count I), and Plaintiffs Keil and Hutchison seek to represent a nationwide Class defined as all persons in the United States who purchased Blue Buffalo Products, for purposes of the Unjust Enrichment claim (Count IV).   Excluded from the Class are

persons or entities that purchased Blue Buffalo Products for resale, Defendant, and its subsidiaries and affiliates.

54.     Plaintiffs Keil and Delre seek to represent a Warranty Subclass for purposes of the Express and Implied Warranty claims (Counts II and III, respectively), for all persons in the United States who purchased Blue Buffalo products, except persons who reside in the following states, who are excluded from the Warranty Subclass: Alabama, Arkansas, Idaho, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, Montana, Nebraska, Oregon, Rhode Island, South Dakota, Tennessee, and Texas.

55.     The following subclasses are being brought under the consumer protection laws of Missouri (Count V), New York (Counts VI and VI), California (Counts VIII, IX, and X), New Jersey (Counts XI and XII), Illinois (Count XIII), Florida (Count XIV), and Ohio (Count XV):

(a)     Plaintiffs Keil and Hutchison seek to represent a subclass defined as all Class members who are Missouri residents or who purchased Blue Buffalo Products within the State of Missouri (hereafter, the "Missouri Subclass"), for purposes of Count V;

(b)     Plaintiff Canale seeks to represent a subclass defined as all Class members who are New York residents or who purchased Blue Buffalo Products within the State of New York (hereafter, the "New York Subclass"), for purposes of Counts VI and VII;

(c)     Plaintiff Fisher seeks to represent a subclass defined as all Class members who are California residents or who purchased Blue Buffalo Products within the State of California (hereafter, the "California Subclass"), for purposes of Counts VIII, IX, and X;

(d)     Plaintiff Delre seeks to represent a subclass defined as all Class members who are residents of New Jersey or who purchased Blue Buffalo Products within the State of New Jersey (hereafter the "New Jersey Subclass"), for purposes of Counts XI and XII;

(e)     Plaintiff Stone seeks to represent a subclass defined as all Class members who are residents of Illinois or who purchased Blue Buffalo Products within the State of Illinois (hereafter the "Illinois Subclass"), for purposes of Count XIII;

(f)     Plaintiff Mackenzie seeks to represent a subclass defined as all Class members who are residents of Florida or who purchased Blue Buffalo Products within the State of Florida (hereafter the "Florida Subclass"), for purposes of Count XIV; and

(g)      Plaintiff Cox seeks to represent a subclass defined as all Class members who are residents of Ohio or who purchased Blue Buffalo Products within the State of Ohio (hereafter the "Ohio Subclass"), for purposes of Count XV.

### *The Classes and Subclasses Satisfy the Rule 23 Requirements*

56.     Members of the Class and Subclasses are so numerous that joinder of all members is impracticable.  While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiffs believe the members of the Class exceed hundreds of thousands, if not millions of persons.

57.     Common questions of law and fact exist as to all members of the Class and Subclasses and predominate over any questions solely affecting individual members of the Class and Subclasses.  Among questions of law and fact common to the Class and Subclasses are:

a.   Whether Blue Buffalo Products contain chicken or poultry by-product meals;

b.   Whether Blue Buffalo Products contain corn, wheat, or soy;

c.   Whether Blue Buffalo Products contain artificial preservatives, colors, or flavors;

d.    Whether Defendant's TRUE BLUE PROMISE is false;

e.    Whether Defendant's TRUE BLUE PROMISE is misleading;

f.   Whether Defendant's TRUE BLUE PROMISE is deceptive;

g.  Whether Defendant expressly warranted that the Blue Buffalo Products would conform to the TRUE BLUE PROMISE;

h.  Whether Defendant impliedly warranted that the Blue Buffalo Products would conform to the TRUE BLUE PROMISE;

i.  Whether Defendant breached warranties by making the representations above;

j.  Whether Defendant was unjustly enriched by making the representations and omissions above;

k.  Whether Defendant's actions as described above violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.,

l.  Whether Defendant's actions as described above violate the Missouri Merchandising Practices Act, MO. REV. STAT. §§ 407.020, *et seq*.;

m.  Whether Defendant's actions as described above violate the California Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*.;

n.  Whether Defendant's actions as described above violate the California False Advertising Law, California Business & Professions Code §§ 17500, *et seq*.;

o.  Whether Defendant's actions as described above violate the California Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*.;

p.  Whether Defendant's actions as described above violate the New York Deceptive Trade Practices Act, General Business Law §§ 349, *et seq*.;

q.  Whether Defendant's actions as described above violate the New York False Advertising Law, General Business Law §§ 350, *et seq*.;

r.   Whether Defendant's actions as described above violate the Ohio Consumer Sales Protection Act, R.C. 1345.01, *et seq*.;

s.   Whether Defendant's actions described above violate the New Jersey Consumer Fraud Act, N.J. STAT. §§ 56:8-1, *et seq*.;

t.   Whether Defendant's actions described above violate New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, N.J. STAT. §§ 56:12-14 to 56:12-18.

u.   Whether Defendant's actions as described above violate the Illinois Unfair Practices Act, 805 ILL. COMP. STAT. 505/1, *et seq*.;

v.   Whether Defendant's actions as described above violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.;

w.   Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above described practices.

58.   Plaintiffs' claims are typical of the claims of Class and the Subclasses because Plaintiffs and each member of the Class purchased Blue Buffalo Products, and suffered a loss of money as a result of that purchase.

59.   Plaintiffs are adequate representatives of the Class and the Subclasses because their interests do not conflict with the interests of the Class and Subclass members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class and Subclass members will be fairly and adequately protected by Plaintiffs and their counsel.

60.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by the individual members of the Class and Subclasses may be relatively small, the expense and burden of individual litigation make it impossible for members of the

Class and Subclasses to individually redress the wrongs done to them.  There will be no difficulty in the management of this class action.

## COUNT I
## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)

61.     Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above in paragraphs 1-60 and further allege as follows.

62.     Plaintiffs Keil and Delre bring this Count I individually and on behalf of the members of the Class against Defendant.

63.     Blue Buffalo Products are consumer products as defined in 15 U.S.C. § 2301(1).

64.     Plaintiffs Keil and Delre and Class members are consumers as defined in 15 U.S.C. § 2301(3).

65.     Plaintiffs Keil and Delre purchased Blue Buffalo Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. § 2302(e) and 15 U.S.C. § 2310(d)(3)(A).

66.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

67.     In connection with the sale of Blue Buffalo Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the products conformed to the TRUE BLUE PROMISE in that the products did not contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

68.     Defendant breached these written warranties because the Blue Buffalo Products did in fact contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

69.     By reason of Defendant's breach of the written warranties stating that the Blue Buffalo Products conformed to the TRUE BLUE PROMISE, Defendant violated the statutory

rights due Plaintiffs Keil and Delre and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiffs Keil and Delre and Class members.

70.     Within a reasonable time after Plaintiffs knew or should have known of such failure to conform, Plaintiffs gave Defendant notice thereof.

## COUNT II
## BREACH OF EXPRESS WARRANTY

71.     Plaintiffs repeat and reallege each and every allegation above contained in paragraphs 1-60, as if set forth in full herein.

72.     Plaintiffs Keil and Delre bring this Count II individually and on behalf of the Warranty Subclass, against Defendant.   The Warranty Subclass includes all purchasers nationwide except those residing in Alabama, Arkansas, Idaho, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, Montana, Nebraska, Oregon, Rhode Island, South Dakota, Tennessee, and Texas, against Defendant.

73.     Defendant sold, and Plaintiffs Keil and Delre and members of the Warranty Subclass purchased, Blue Buffalo Products.

74.     Defendant represented in its marketing, advertising, and promotion of Blue Buffalo Products that those products would conform to the TRUE BLUE PROMISE, in that the products would not contain chicken/poultry by-product meals, corn, rice, soy, and/or artificial preservatives.

75.     Defendant made this representation to induce Plaintiffs Keil and Delre and members of the Warranty Subclass to purchase Blue Buffalo Products.

76.     The TRUE BLUE PROMISE was part of the basis of the bargain between Defendant and Plaintiffs Keila and Delre, and members of the Warranty Subclass.

77.    The Blue Buffalo Products did not conform to Defendant's representations and warranties in that they contained chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

78.    Within a reasonable time after Plaintiffs knew or should have known of such failure to conform, Plaintiffs gave Defendant notice thereof.

79.    As a direct and proximate result of Defendant's breaches of its express warranty and failure of the Blue Buffalo Products to conform, Plaintiffs Keil and Delre and members of the Warranty Subclass have been damaged in that they did not receive the product as specifically warranted and/or paid a premium for the product.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

80.    Plaintiffs repeat and reallege each and every allegation above contained in paragraphs 1-60, as if set forth in full herein.

81.    Plaintiffs Keil and Delre bring this Count III individually and on behalf of the members of the Warranty Subclass against Defendant.

82.    Defendant sold and Plaintiffs Keil and Delre and members of the Warranty Subclass purchased Blue Buffalo Products.

83.    When sold by Defendant, the Blue Buffalo Products were not merchantable, did not pass without objection in the trade under the label description, were not of fair average quality within that description, were not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.

84.    Within a reasonable time after Plaintiffs knew or should have known that the product was not fit for such purpose and/or was not otherwise merchantable as set forth above, Plaintiffs gave Defendant notice thereof.

85.     As a direct result of the Blue Buffalo Products being unfit for such purpose and/or otherwise not merchantable, Plaintiffs were damaged.

**COUNT IV**
**UNJUST ENRICHMENT**

86.     Plaintiffs repeat the allegations of the foregoing paragraphs 1-60 as if fully set forth herein.

87.     Plaintiffs Keil and Hutchison bring this Count IV individually and on behalf of all members of the Unjust Enrichment Subclass. The Unjust Enrichment Subclass consists of all consumers Nationwide who purchased Blue Buffalo Products.

88.     Plaintiffs Keil and Hutchison conferred benefits on Defendant by purchasing Blue Buffalo Products at a premium price.

89.     Defendant has knowledge of such benefits.

90.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs Keil and  Hutchison's, and Class members' purchases of Blue Buffalo Products. Retention of those moneys under these circumstances is unjust and inequitable because Defendant falsely and misleadingly represented that its Blue Buffalo Products contained no chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives when, in fact, the Blue Buffalo Products contained one or more of these ingredients, which caused injuries to Plaintiffs Keil and Hutchison and members of the Class because they would not have purchased (or paid a price premium) for Blue Buffalo Products had the true facts been known.

91.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs Keil and Hutchison and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs Keil and Hutchison and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT V
## <u>VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT ("MMPA")</u>
### (MO. REV. STAT. §§ 407.020, *et seq.*)

92.    Plaintiffs and Class members hereby reallege and incorporate by reference each allegation set forth in paragraphs 1-60 above as if fully set forth herein and further allege as follows:

93.    Plaintiffs Keil and Hutchison assert this Count V on behalf of themselves and the Missouri Subclass against Defendant.

94.    The Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020 (West 2010), provides, in part, as follows:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce … in or from the state of Missouri, is declared to be an unlawful practice … Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

95.    The Missouri Merchandising Practices Act further provides for a civil action to recover damages in Mo. Rev. Stat. § 407.025.1, as follows:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.  The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

96.    This Count V is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendant.  Defendant's business practices in its advertising, marketing, packaging, labeling and sales of Blue Buffalo Products as compliant with the TRUE

BLUE PROMISE in that they contained no chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives is an unconscionable, unfair, and deceptive act or practice and constitutes multiple, separate violations of Mo. Rev. Stat. § 407.020 because the Blue Buffalo Products in fact contain chicken/poultry by-product meals, corn, rice, and/or artificial preservatives.

97.    Plaintiffs and members of the Missouri Subclass purchased Blue Buffalo Products.

98.    Such purchase of Blue Buffalo Products was primarily for personal, family, or household purposes.

99.    In connection with the sale of Blue Buffalo Products, Defendant misrepresented the goods as containing no chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives when in fact the goods contained such ingredients, as set forth in this Complaint.

100.    In connection with the sale of Blue Buffalo Products, Defendant concealed a material fact, namely that the goods contained chicken/poultry by-product meals, corn, rice, soy, and/or artificial preservatives.

101.    Defendant's concealment, suppression, misrepresentations and/or omission as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiffs Keil and Hutchison and members of the Missouri Subclass regarding Blue Buffalo Products.

102.    In violation of the MMPA, Defendant employed fraud, deception, false promise, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts in its sale and advertisement of Blue Buffalo Products in the State of Missouri.

103.    Defendant engaged in the concealment, suppression, misrepresentations and/or omission of the aforementioned material facts with the intent that others, such as Plaintiffs Keil and Hutchison, the Missouri Subclass, and/or the general public would rely upon the concealment, suppression, misrepresentation and/or omission of such material facts and purchase Blue Buffalo Products.

104.    As a result of their purchase of Blue Buffalo Products, Plaintiffs and the members of the Missouri Subclass sustained ascertainable loss and damage in that, among other things, the actual value of the products on the dates they were sold to Plaintiffs was less than their value would have been on those dates had the products been as represented by Defendant.

105.    Plaintiffs Keil and Hutchison and the members of the Missouri Subclass are entitled to recover their actual damages, attorneys' fees, and injunctive or other equitable relief, pursuant to Missouri law, including Mo. Rev. Stat. § 407.025.

106.    Furthermore, Defendant's unlawful conduct set forth in this Complaint was and is outrageous because of Defendant's evil motive or reckless indifference to and conscious disregard of the rights of others and for the rights of Plaintiffs Keil and Hutchison and members of the Missouri Subclass and warrants an award of punitive damages to deter Defendant, and others in similar circumstances, from committing such actions in the future.

## COUNT VI
## VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT ("GBL")
### (New York Gen. Bus. Law § 349)

107.    Plaintiffs and Class members hereby reallege and incorporate by reference each allegation set forth in paragraphs 1-60 above as if fully set forth herein and further allege as follows:

108.    Plaintiff Canale asserts this Count VI on behalf of herself and the New York Subclass.

109. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting that Blue Buffalo Products contained no chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives when, in fact, Blue Buffalo Products contained chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

110. Defendant's business practices of marketing, advertising, and promoting Blue Buffalo Products in a misleading, inaccurate, and deceptive manner by misrepresenting that Blue Buffalo Products conform to the TRUE BLUE PROMISE, in that the Blue Buffalo Products do not contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, constitutes the use by Defendant of unconscionable commercial practices, deception, and misrepresentation and, thus constitutes multiple, separate violations of Section 349 of the New York General Business Law.

111. In marketing, advertising, and promoting Blue Buffalo Products to consumers, including Plaintiff Canale and members of the New York Subclass, Defendant made the material misrepresentations and omissions set forth in this Complaint throughout the United States, including the State of New York.

112. The foregoing deceptive acts and practices were directed at consumers.

113. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, benefits, quality, and nature of Blue Buffalo Products to induce consumers to purchase same, and/or to pay a premium for same.

114. Defendant's unconscionable commercial practices, false promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiff Canale and members of the New York

Subclass, would attach importance to in their purchasing decisions or conduct regarding the purchase of Blue Buffalo Products.

115.    Plaintiffs and members of the New York Subclass were injured because:  (a) they would not have purchased Blue Buffalo Products, or would not have purchased Blue Buffalo Products on the same terms, had they known that the products in fact contained chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives; (b) they paid a price premium for Blue Buffalo Products based on Defendant's false and misleading statements; and (c) Blue Buffalo Products did not have the characteristics and benefits promised because they contained chicken/poultry by-product meals, corn, rice, and/or artificial preservatives.  As a result, Plaintiff Canale and the New York Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Blue Buffalo Products or the difference in value between Blue Buffalo Products as advertised and Blue Buffalo Products as actually sold.

116.    On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VII
## FALSE ADVERTISING
### (New York Gen. Bus. Law § 350)

117.    Plaintiffs repeat the allegations in paragraphs 1-60 as if fully set forth herein.

118.    Plaintiff Canale brings this Count VII individually and on behalf of the members of the New York Subclass against Defendant.

119.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way and which constitutes false advertising in violation of Section 350 of the New York General Business Law.

31

120.    Defendant's false, misleading and deceptive statements and representations of fact, including but not limited to the TRUE BLUE PROMISE, were and are directed to consumers.

121.    Defendant's false, misleading and deceptive statements and representations of fact, including but not limited to the TRUE BLUE PROMISE, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

122.    Defendant's false, misleading and deceptive statements and representations of fact, including but not limited to the TRUE BLUE PROMISE, have resulted in consumer injury or harm to the public interest.

123.    Plaintiff Canale and members of the New York Subclass have been injured because: (a) they would not have purchased Blue Buffalo Products had they known that the products in fact contained chicken/poultry by-product meals, corn, rice, and/or artificial preservatives; (b) they paid a price premium for Blue Buffalo Products based on Defendant's false and misleading statements; and (c) the Blue Buffalo Products did not have the characteristics and benefits promised because they contained chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.  As a result, Plaintiff Canale and the New York Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Blue Buffalo Products or the difference in value between Blue Buffalo Products as advertised and Blue Buffalo Products as actually sold.

124.    As a result of Defendant's false, misleading and deceptive statements and representations of fact, including but not limited to the TRUE BLUE PROMISE, Plaintiff Canale has suffered and continues to suffer economic injury.

125.     Plaintiff Canale and members of the New York Subclass suffered an ascertainable loss caused by Defendant's misrepresentations because they paid more for Blue Buffalo Products than they would have had they known the truth about the product.

126.     On behalf of herself and other members of the New York Subclass, Plaintiff Canale seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT VIII**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(Bus. & Prof. Code §§ 17200, *et seq.*)**

127.     Plaintiffs and Class members hereby reallege and incorporate by reference each allegation set forth in paragraphs 1–60 above as if fully set forth herein and further allege as follows:

128.     Plaintiff Fisher brings this Count VIII on behalf of himself and the California Subclass under California law against Defendant.

129.     Defendant is subject to the Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

130.     Defendant violated the "unlawful" prong of the UCL by violating California's Consumers Legal Remedies Act ("CLRA") as described in Count X, below.

131.     Defendant also violated the "unlawful" prong of the UCL by violating California's False Advertising Law ("FAL") as described in Count IX, below.

132.     Defendant's conduct, described herein, violated the "unfair" prong of the UCL by misrepresenting that Blue Buffalo Products would conform to the TRUE BLUE PROMISE and

provide consumers with Blue Buffalo Products that contained no chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

133.   Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL by misrepresenting that Blue Buffalo Products would conform to the TRUE BLUE PROMISE in that the Blue Buffalo Products would not contain any chicken/poultry by-product meals, corn, rice, soy and artificial preservatives.

134.   Plaintiff Fisher and the California Subclass members suffered lost money or property as a result of Defendant's UCL violations because:  (a) they would not have purchased Blue Buffalo Products or would not have purchased Blue Buffalo Products on the same terms if the true facts concerning those products had been known; and (b) they paid a price premium due to the false representations about the products.

## COUNT IX
## FOR VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")
### (Bus. & Prof. Code §§ 17500 *et seq.*)

135.   Plaintiffs and Class members incorporate by reference and reallege each and every allegation in paragraphs 1-60 set forth above as though fully set forth herein.

136.   Plaintiff Fisher brings this Count IX on behalf of himself and the California Subclass under California law against Defendant.

137.   Defendant violated California Business & Professions Code § 17500 by publicly disseminating misleading and false advertisements promising that Blue Buffalo Products do not chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

138.   Defendant's misleading and false advertisements were disseminated to increase sales of Blue Buffalo Products.

139.   Defendant knew or should have known its false advertisements were untrue or misleading.

140.    Furthermore, Defendant publicly disseminated the false advertisements as part of a plan or scheme and with the intent not to sell Blue Buffalo Products as advertised.

141.    Plaintiff Fisher and the members of the California Subclass have suffered harm as a result of these violations of the FAL because: (a) they would not have purchased Blue Buffalo Products or would not have purchased Blue Buffalo Products on the same terms if the true facts concerning the products had been known; and (b) Blue Buffalo Products did not conform to Defendant's representations and promises.

142.    Pursuant to Business & Professions Code § 17500, Plaintiff Fisher seeks an order of this Court permanently enjoining Defendant from continuing to publicly disseminate misleading and false advertisements as alleged herein.  Plaintiff Fisher also seeks an order that requires Defendant to: (a) make full restitution for all monies wrongfully obtained; and (b) disgorge all ill-gotten revenues and/or profits.

**COUNT X**
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(Civil Code §§ 1750, *et seq.*)**

143.    Plaintiffs and Class members hereby reallege and incorporate by reference each allegation in paragraphs 1-60 set forth above as if fully set forth herein and further allege as follows:

144.    Plaintiff Fisher brings this Count X on behalf of himself and the California Subclass under California law against Defendant.

145.    CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendant violated this provision by misrepresenting that Blue Buffalo Products contained no chicken/poultry by-product meals, corn, rice, soy and/or artificial

preservatives, by falsely representing that Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

146.    CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendant violated this provision by misrepresenting that Blue Buffalo Products contained no chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, and by falsely representing that Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

147.    CLRA § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Defendant violated this provision by misrepresenting that Blue Buffalo Products contained no chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, and by falsely representing that Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

148.    Plaintiff Fisher and the California Subclass members suffered lost money or property as a result of these violations because: (a) they would not have purchased Blue Buffalo Products or would not have purchased Blue Buffalo Products on the same terms if the true facts concerning those products had been known; (b) they paid a price premium due to the false representations about the products; and (c) the products did not perform as promised.

149.    Prior to the filing of this Complaint, CLRA notice letters were served on Defendant, which comply in all respects with California Civil Code § 1782(a).  Plaintiff Fisher sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.  Defendant was further advised that in the event that the relief requested has not been provided within thirty (30) days, Plaintiff would amend his Complaint to include a request for monetary damages pursuant to the CLRA.

150.    Wherefore, such time having elapsed, Plaintiff Fisher now seeks damages for violations of the CLRA.

## COUNT XI
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA")
### (NEW JERSEY STAT. §§ 56:8-1, *et seq.*)

151.    Plaintiffs and Class members hereby reallege and incorporate by reference each allegation set forth in paragraphs 1-60 above as if fully set forth herein and further allege as follows:

152.    Plaintiff Delre brings this Count XI on behalf of himself and the New Jersey Subclass against Defendant.

153.    Defendant, by selling, distributing, designing, packaging and marketing Blue Buffalo Products, as set forth above and below engaged in deceptive practices and acts in violation of New Jersey Stat. § 56:8-1, *et seq.* ("NJCFA").

154.    Namely, Defendant used unconscionable commercial practices, fraud, deception, false pretense, false promise, misrepresentation, and the knowing concealment, suppression, or omission of material facts with the intent that others, including Plaintiff Delre and members of the New Jersey Subclass, rely upon such concealment, suppression or omission, in connection with the sale or advertisement of Blue Buffalo Products, which are "merchandise" under the NJCFA.

155.    Defendant engaged in unconscionable commercial conduct because it misrepresented that Blue Buffalo Products did not contain any chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, when Blue Buffalo Products do in fact contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

156.    The sale of Blue Buffalo Products in New Jersey to Plaintiff Delre and members of the New Jersey Subclass is an unlawful practice in violation of § 56:8-2 of the NJCFA.

157.     Defendant included its TRUE BLUE PROMISE on every bag of its Blue Buffalo Products in order to induce Plaintiff Delre and the New Jersey Subclass to purchase Blue Buffalo Products and/or to pay a premium for Blue Buffalo Products.

158.     As a result of Defendant's conduct, Plaintiff Delre and the members of the New Jersey Subclass sustained ascertainable losses, and were damaged thereby.

159.     As set forth in § 56:8-2.11, Defendant is liable to Plaintiff Delre and members of the New Jersey Subclass for a refund of all monies obtained from them in the purchase of Blue Buffalo Products.

160.     As set forth in § 56:8-2.12, Plaintiff Delre and members of the New Jersey Subclass may maintain a private right of action to recover such refunds.

161.     Plaintiff Delre and members of the New Jersey Subclass suffered an ascertainable loss caused by Defendant's misrepresentations because: (a) they would not have purchased Blue Buffalo Products or would not have purchased Blue Buffalo Products on the same terms if the true facts concerning those products had been known; (b) they paid a price premium due to the false representations about the products; and (c) the products were not of the quality promised in that they contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

162.     Defendant's dissemination of these misrepresentations in order to sell more of its product were actuated by actual malice and/or accompanied by a wanton and willful disregard of harm to Plaintiff Delre and members of the New Jersey Subclass.

163.     As set forth in § 56:8-19, Plaintiff Delre and members of the New Jersey Subclass may bring this action and this Court "shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest . . . [and] the court shall also award reasonable attorneys' fees, filing fees, and reasonable costs of suit."  Plaintiff Delre and New Jersey Subclass members seek this relief.

**COUNT XII**
**VIOLATION OF THE NEW JERSEY TRUTH-IN-CONSUMER CONTRACT,**
**WARRANTY AND NOTICE ACT ("TCCWNA")**
(NEW JERSEY STAT. §§ 56:12-14 to 56:12-18)

164.    Plaintiffs and Class members hereby reallege and incorporate by reference each allegation set forth in paragraphs 1-60 above as if fully set forth herein and further allege as follows:

165.    Plaintiff Delre brings this Count XII on behalf of himself and the New Jersey Subclass against Defendant.

166.    The TCCWNA provides:

> No seller…shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign …which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

167.    The labels and marketing materials for Blue Buffalo products, including, but not limited to the TRUE BLUE PROMISE, are written consumer warranties, notices and/or signs offered, given and/or displayed to consumers and prospective consumers subject to the TCCWNA.

168.    Plaintiffs and class members are "consumer[s] or prospective consumer[s]" within the meaning of N.J.S.A. § 56:12-15.

169.    Defendant is a "seller" within the meaning of N.J.S.A. § 56:12-15.

170.    The rights of consumers to truthful and accurate statements on the labels and marketing materials for Blue Buffalo products, as well as the right to avoid deception caused by false and misleading statements on such labels and marketing materials, are "clearly established legal rights" under N.J.S.A. § 56:8-2.

171.    The responsibility of a seller to refrain from the employment of any unconscionable commercial practice, deception, fraud, false pretense, or misrepresentation, and to refrain from the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of merchandise, and to refrain from selling products with labels that make false statements about the products, are clearly established under N.J.S.A. § 56:8-2.

172.    The Defendant violated the TCCWNA by misrepresenting that Blue Buffalo products do not contain any chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

173.    Pursuant to N.J.S.A. § 56:12-17, Defendant is liable to Plaintiff Delre and the New Jersey Subclass for a civil penalty of not less than $ 100.00 or for actual damages, or both at the election of the consumer.  In addition, Plaintiff Delre and the New Jersey Subclass are entitled to reimbursement for all reasonable attorney's fees and court costs incurred as a result of bringing this action.

## COUNT XIII
## VIOLATION OF ILLINOIS UNFAIR PRACTICES ACT
### (805 ILL. COMP. STAT. 505/1, *et seq*.)

174.    Plaintiffs and Class members hereby reallege and incorporate by reference each allegation set forth above in paragraphs 1-60 as if fully set forth herein and further allege as follows:

175.    Plaintiff Stone asserts this Count XIII on behalf of herself and the Illinois Subclass against Defendant.

176.    The Illinois Unfair Practices Act, 805 Ill. Comp. Stat. 505/2, *et seq*., prohibits a corporation from engaging in unfair or deceptive trade practices.  The Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices,
> including but not limited to the use or employment of any deception fraud,

false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act,", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

177.    At all relevant times, Blue Buffalo Products have been available for purchase by consumers through the State of Illinois.

178.    At all relevant times, Defendant has been engaged in advertising, offering for sale, selling and/or distributing Blue Buffalo Products directly or indirectly to the residents of the State of Illinois.

179.    Plaintiff Stone and members of the Illinois Subclass have purchased Blue Buffalo Products for their own personal and/or household use.

180.    At all relevant times, Defendant, in connection with its advertisements, offers for sale, sales, and distribution of Blue Buffalo Products, knowingly and purposefully misrepresented the material fact that the Blue Buffalo Products contained no chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives; and concealed, omitted, and/or suppressed the material fact that Blue Buffalo Products do contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, contrary to the TRUE BLUE PROMISE. Defendant intended that Plaintiff Stone and members of the Illinois Subclass would rely upon its misrepresentations, concealments, omissions, and/or suppressions so that Plaintiff Stone and members of the Illinois Subclass would purchase Blue Buffalo Products.  Defendant's packaging of Blue Buffalo Products makes false or misleading representations that the Blue Buffalo Products do not contain any chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives which tended to deceive, or deceived or misled, consumers.  In truth, Blue Buffalo

41

Products do in fact contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

181.   The material misrepresentations and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff Stone, the Illinois Subclass, and the general public into believing that Blue Buffalo Products did not contain any chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, when, in fact, as set forth in detail above, Blue Buffalo Products do contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

182.   Had Plaintiff Stone and the Illinois Subclass members known Blue Buffalo Products did not conform to the quality as advertised, in that Blue Buffalo Products contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, they would not have purchased Blue Buffalo Products.

183.   As a result of Defendant's deceptive and unfair acts, Plaintiff Stone and the Illinois Subclass members have been damaged in the amount of either the purchase price they paid for Blue Buffalo Products or the difference between the premium price paid for Blue Buffalo Products and the price they would have paid had they known that Blue Buffalo products were not of the nature and quality promised in that Blue Buffalo Products contained chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.  Defendant's conduct offends established public policy, and is substantially injurious to consumers.

184.   Plaintiff Stone and members of the Illinois Subclass are entitled to damages in an amount to be proven at trial, but not less than either the purchase price they paid for Blue Buffalo Products or the difference between the premium price paid for Blue Buffalo Products and the price they would have paid had they known that the Blue Buffalo Products do in fact contain any chicken/poultry by-product meals, corn, rice, and/or artificial preservatives.

185.     Defendant should also be ordered to cease its deceptive advertising, and should be made to engage in a corrective advertising campaign, to inform consumers that Blue Buffalo Products do in fact contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

186.     Defendant included its TRUE BLUE PROMISE on every bag of Blue Buffalo Products in order to induce Plaintiff Stone and members of the Illinois Subclass to purchase Blue Buffalo Products and/or to pay a premium for Blue Buffalo Products.

187.     As a result of Defendant's conduct, Plaintiff Stone and members of the Illinois Subclass have been injured by Defendant's unlawful conduct.

## COUNT XIV
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")
### (FLA. STAT. §§ 501.201, *et seq.*)

188.     Plaintiffs and Class members hereby reallege and incorporate by reference each allegation set forth above in paragraphs 1-60 as if fully set forth herein and further allege as follows:

189.     Plaintiff Mackenzie brings this Count XIV on behalf of herself and the Florida Subclass against Defendant.

190.     Defendant violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business. The material misrepresentations and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff Mackenzie and the general public, into believing that Blue Buffalo Products contained no chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, by falsely representing that Blue Buffalo Products conformed to the TRUE BLUE PROMISE.

191.    Defendant's deceptive and unfair practice is targeted at consumers to make them believe that Blue Buffalo Products contain better ingredients than competitor products, thus leading consumers to believe that they are paying a price premium because Blue Buffalo Products are superior to less expensive alternatives.

192.    The above discussed advertising and labeling of Blue Buffalo Products is likely to, and does, mislead reasonable consumers.

193.     Had Plaintiff Mackenzie and the Florida Subclass members known Blue Buffalo Products do in fact contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, they would not have purchased Blue Buffalo Products or would not have purchased Blue Buffalo Products on the same terms.

194.    As a result of Defendant's deceptive and unfair acts, Plaintiff Mackenzie and the Florida Subclass members have been damaged in the amount of the purchase price of the Blue Buffalo Products or the difference between the premium price paid for Blue Buffalo Products and the price they would have paid had they known that the Blue Buffalo Products do not conform to Defendant's representations.

195.    Defendant's conduct offends established public policy and is substantially injurious to consumers.

196.    Plaintiff Mackenzie and the Florida Subclass members are entitled to damages in an amount to be proven at trial, but not less than either the purchase price of the Blue Buffalo Products or the difference between the premium price paid for Blue Buffalo Products and the price they would have paid had they known that the Blue Buffalo Products do not perform as advertised. The price Plaintiff Mackenzie and the Florida Subclass members would have paid is no more than the market value of the Blue Buffalo Products, had Plaintiff Mackenzie and the

Florida Subclass members known that Blue Buffalo Products do not conform to Defendant's representations.

197.    Defendant should also be ordered to cease its deceptive advertising, and should be made to engage in a corrective advertising campaign, to inform consumers that Blue Buffalo Products do in fact contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

**COUNT XV**
**VIOLATION OF OHIO'S CONSUMER SALES PRACTICES ACT**
**("CSPA")**
**(O.R.C. 1345.01, *et seq*.)**

198.    Plaintiffs and Class members hereby reallege and incorporate by reference each allegation set forth in paragraphs 1-60 above as if fully set forth herein and further allege as follows:

199.    Plaintiff Cox brings this Count XV on behalf of herself and the Ohio Subclass under Ohio law against Defendant.

200.    The Ohio CSPA prohibits unfair or deceptive acts or practices in consumer transactions: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.  Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." O.R.C. §1345.02(A).

201.    The CSPA defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." O.R.C. §1345.01(A).

202.    Defendant is a "person" and/or "supplier" engaged in "consumer transactions" within the meaning of O.R.C. §1345.01.

203.    Plaintiff Cox and the members of the Ohio Subclass are "consumers" within the meaning of O.R.C. §1345.01.

204.    Without limiting the scope of §1345.02(A), the CSPA enumerates several specific acts or practices of a supplier that are per se deceptive, including the following that are particularly applicable to the allegations in this Complaint: "That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;" or "That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." O.R.C. §1345.02(B)(1) and (2).

205.    Defendant engaged in unfair or deceptive acts or practices by stating that Blue Buffalo Products have certain performance characteristics or benefits that the products do not have in violation of O.R.C. §1345.02(B)(1). Specifically, Defendant stated that Blue Buffalo Products do not contain any chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, when, in fact, Blue Buffalo Products do contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

206.    Defendant engaged in unfair or deceptive acts or practices by stating that Blue Buffalo Products are of a particular standard, quality, or grade, but they are not, in violation of O.R.C. §1345.02(B)(2). Specifically, Defendant stated that Blue Buffalo Products do not contain any chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, when, in fact, Blue Buffalo Products do contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

207.    In addition to the foregoing, the CSPA also separately prohibits unconscionable acts or practices in connection with a consumer transaction: "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an

unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." O.R.C. §1345.03(A).

208.    The CSPA enumerates seven specific circumstances that "shall be taken into consideration" in order to determine whether an act or practice is unconscionable, including the following two circumstances that are particularly applicable to the allegations in this Complaint: "Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers"; and "Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment." O.R.C. §1345.03(A)(2) and (6).

209.    Defendant engaged in unconscionable acts or practices because Defendant knew at the time each consumer transaction was entered into that the price of its Blue Buffalo Products were substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers in violation of O.R.C. §1345.03(A)(2).  Specifically, Defendant charged consumers a price for Blue Buffalo Products that was substantially in excess of the price at which similar competitor products were readily obtainable in similar consumer transactions by like consumers.

210.    Defendant engaged in unconscionable acts or practices because knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment in violation of O.R.C. §1345.03(A)(6).  Specifically, Defendant knowingly made misleading statements that Blue Buffalo Products do not contain any chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives, which consumers were likely to rely on to their detriment.

211.    Plaintiff Cox and members of the Ohio Subclass have been injured by Defendant's unfair, deceptive and/or unconscionable acts or practices because: (a) they would not have purchased Blue Buffalo Products had they known that the products in fact contained chicken/poultry by-product meals, corn, rice, and/or artificial preservatives; (b) they paid a price premium for Blue Buffalo Products based on Defendant's false and misleading statements; and (c) the Blue Buffalo Products did not have the characteristics, benefits, standard, quality, or grade promised because they contained chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.

212.    As a direct and proximate result, Plaintiff Cox and the Ohio Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Blue Buffalo Products or the difference between the premium price paid for Blue Buffalo Products and the price they would have paid had they known that the Blue Buffalo Products were not of the nature and quality promised.

213.    Defendant's conduct as alleged constitutes intentional and wanton violation of Plaintiff Cox's rights and the rights of the members of the Ohio Subclass, or was done with a reckless indifference to those rights.

214.    Defendant should also be ordered to cease its deceptive advertising, and should be made to engage in a corrective advertising campaign, to inform consumers that Blue Buffalo Products do in fact contain chicken/poultry by-product meals, corn, rice, soy and/or artificial preservatives.  O.R.C. §1345.09(D).

215.    The court may award Plaintiffs a reasonable attorney's fee if Defendant knowingly committed an act or practice that violates the CSPA.  O.R.C. §1345.09(F)(2).

## RELIEF DEMANDED

216.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a.      For an order certifying the nationwide Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

b.      For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.      For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclasses on all counts asserted herein;

d.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For injunctive relief as pleaded or as the Court may deem proper; and

h.      For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  January 30, 2015                              Respectfully submitted,

**KamberLaw, LLC**

By:      _/s/ Scott A. Kamber_____
Scott A. Kamber (SK-5794,SDNY)
100 Wall Street 23rd floor
New York, NY  10005
P. (212) 920-3072
F. (212) 202-6364
skamber@kamberlaw.com

Deborah Kravitz, #275661CA
KamberLaw LLP
401 Center St., Suite 111
Healdsburg, CA
P. (707) 820-4247
F. (212) 202-6364
dkravitz@kamberlaw.com

**Interim Class Counsel and Chair of the Plaintiffs'
Executive Committee and Attorneys for Plaintiff
Hutchison**

**The Simon Law Firm, P.C.**

By:    /s/ *John Simon*
John G. Simon, #35231MO
Ryan A. Keane, #62112MO
800 Market Street, 17th FL
St. Louis, Missouri 63101
P. (314) 241-2929
F. (314) 241-2029
jsimon@simonlawpc.com
rkeane@simonlawpc.com

**Liaison Counsel and Member Plaintiffs' Executive
Committee and Attorneys for Plaintiffs Keil and
Stone**

**Gray, Ritter & Graham, P.C.**

Don M. Downing #30405MO
701 Market Street, Suite 800
St. Louis, MO  63101-1826
P.  (314) 241-5620, ext. 2006
F.  (314) 241-4140
ddowning@grgpc.com

**Bursor & Fisher, P.A.**

Joseph I. Marchese
Frederick Klorcyk
Bursor & Fisher, P.A.
888 Seventh Ave.
New York, NY 10019
P.  (646) 837-7410
F.  (212) 989-9163
jmarchese@bursor.com
fklorczyk@bursor.com

*Members of Plaintiffs' Executive Committee and*
*Attorneys for Plaintiff Canale*

**Steelman, Gaunt & Horsefield**

>David Steelman, #27334MO
>901 N Pine St
>Rolla, MO 6540
>P. (573) 341-8336
>F. (573) 341.8548
>dsteelman@steelmanandgaunt.com

*Member of Plaintiffs' Executive Committee and*
*Attorney for Plaintiff Hutchison*

**Faruqi & Faruqi, LLP**

>Antonio Vozzolo
>369 Lexington Ave, 10th Floor
>New York, NY  10017
>P. (212) 983-8330
>avozzolo@faruqilaw.com

*Attorneys for Plaintiff Delre*

**Halunen & Associates**

>Clayton Halunen
>Melissa W. Wolchansky
>80 South Eighth Street
>Minneapolis, Minnesota 55402
>P. (612) 605-4098
>halunen@halunenlaw.com
>wolchansky@halunenlaw.com

**Milstein Adelman, LLP**

>Gillian L. Wade
>Allison R. Willett
>2800 Donald Douglas Loop North
>Santa Monica, California 90405
>P. (310) 396-9600
>gwade@milsteinadelman.com
>awillett@milsteinadelman.com

*Attorneys for Plaintiff Fisher*

**The Eggnatz Law Firm, P.A.**

Joshua Harris Eggnatz
5400 S. University Drive
Suite 413
Davie, FL 33328
P. (954) 889-3359
F. (954) 889-5913(
jeggnatz@eggnatzlaw.com

*Attorney for Plaintiff Mackenzie*

**SPANGENBERG SHIBLEY & LIBER LLP**

Stuart E. Scott (0064834)
Daniel Frech (0082737)
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
P.  (216) 696-3232
F.  (216) 696-3924
sscott@spanglaw.com
dfrech@spanglaw.com

**TYCKO & ZAVAREEI LLP**

Jonathan Tycko (D.C. Bar No. 445851)
Andrea R. Gold (D.C. Bar No. 502607)
2000 L Street, NW, Suite 808
Washington, DC 20036
P.  (202) 973-0900
F.  (202) 973-0950
jtycko@tzlegal.com
agold@tzlegal.com

*Attorneys for Plaintiff Cox*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and accurate copy of the foregoing was served electronically

upon all counsel of record via the CM/ECF system on this 30th day of January, 2015.

   */s/ John Simon*