**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: BLUE BUFFALO COMPANY, | ) | |
| LTD. MARKETING AND SALES | ) | |
| PRACTICES LITIGATION | ) | Case No.  4:14 MD 2562 RWS |
| | ) | |
| | ) | |
| RELATES TO:  ALL CASES | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT
<u>CLASS, AND PERMISSION TO DISSEMINATE CLASS NOTICE</u>**

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY .............................................. 1

MATERIAL TERMS OF SETTLEMENT ........................................................... 4

ARGUMENT .......................................................................................................... 7

I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS
     APPROPRIATE ............................................................................................ 7

     A.  Overview Of The Class Settlement Approval Process ...................... 7

     B.  The Settlement Is Entitled To A Presumption Of Fairness............... 8

     C.  Applicable Factors Favor Preliminary Approval .............................. 9

          1.  There is no fraud or collusion .................................................. 10

          2.  The stage of proceedings and amount of investigation
             and discovery provide adequate basis for informed
             assessment ................................................................................ 11

          3.  The merits and risk of continued litigation, weighed
             Against benefits of the settlement, favor approval ................... 11

          4.  Complexity, expense, and likely duration of the
             litigation favor settlement ........................................................ 15

          5.  Counsel and parties believe that the Settlement is fair
             and reasonable........................................................................... 16

          6.  Other factors are neutral or as yet unknown

II.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR
     SETTLEMENT PURPOSES ...................................................................... 16

     A.  The Proposed Class Meets The Requirements Of *Amchem*............ 16

     B.  Rule 23(a) Requirements Are Satisfied

          1.  Numerosity.................................................................................. 17

2.    Commonality ........................................................................................17

3.    Typicality ............................................................................................19

4.    Adequacy ............................................................................................20

C.  Rule 23(b)(3) Requirements Are Satisfied .......................................................21

1.    Common questions of law or fact predominate ..........................................21

2.    Class treatment is superior to other methods of adjudication ....................24

III.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND
        METHOD OF CLASS NOTICE ....................................................................25

A.  The Proposed Notice Provides For The Best Notice Practicable
    Under The Circumstances ...........................................................................25

B.  The Proposed Form Notice Adequately Informs Class
    Members Of Their Rights ...........................................................................26

CONCLUSION ..................................................................................................27

## TABLE OF AUTHORITIES

PAGE(S)

### CASES

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................ passim

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
    133 S. Ct. 1184 (2013) ................................................................................ 21

*Barfield v. Sho-Me Power Elec. Co-op.,*
    2013 WL 3872181 (W.D. Mo. July 25, 2013) ........................................... 20

*Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.,*
    2013 WL 4855308 (E.D. Mo. Sept. 11, 2013) ...................................... 9, 15

*Bradford v. AGCO Corp.,*
    187 F.R.D. 600 (W.D. Mo. 1999) .............................................................. 17

*Carpe v. Aquila, Inc.,*
    224 F.R.D. 454 (W.D. Mo. 2004) ......................................................... 20, 21

*Clark v. Bally's Park Place, Inc.,*
    298 F.R.D. 188 (D.N.J. 2014) ................................................................... 21

*Claxton v. Kum & Go, L.C.,*
    2015 WL 3648776 (W.D. Mo. June 11, 2015) .................................. passim

*Cromeans v. Morgan Keegan & Co.,*
    303 F.R.D. 543 (W.D. Mo. 2014) .............................................................. 24

*Daniels v. Greenkote,*
    2013 WL 1890654 (E.D. Mo. May 6, 2013) ............................................... 9

*DeBoer v. Mellon Mortg. Co.,*
    64 F.3d 1171 (8th Cir. 1995) .............................................................. passim

*Doran v. Mo. Dep't of Soc. Servs.,*
    251 F.R.D. 401 (W.D. Mo. 2008) .............................................................. 19

*E.E.O.C. v. McDonnell Douglas Corp.,*
    894 F. Supp. 1329 (E.D. Mo. 1995) ....................................................... 9, 11

*Glen v. Fairway Indep. Mortgage Corp.,*
    265 F.R.D. 474 (E.D. Mo. 2010) ......................................................... 18, 24

*Grunin v. Int'l House of Pancakes,*
    513 F.2d 114 (8th Cir. 1975) ..................................................................... 12

*Haley v. Medtronic, Inc.,*
    169 F.R.D. 643 (C.D. Cal. 1996) .............................................................. 23

*Hartley v. Suburban Radiologic Consultants, Ltd.,*
295 F.R.D. 357 (D. Minn. 2013) ............................................................. 19

*Holden v. Burlington N., Inc.,*
665 F. Supp. 1398 (D. Minn. 1987) ......................................................... 15

*Hopkins v. Kansas Teachers Cmty. Credit Union,*
265 F.R.D. 483 (W.D. Mo. 2010) ............................................................ 24

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
689 F.3d 229 (2d Cir. 2012) ..................................................................... 23

*In re Aquila ERISA Litig.,*
237 F.R.D. 202 (W.D. Mo. 2006) ....................................................... 17, 19

*In re BankAmerica Corp. Sec. Litig.,*
210 F.R.D. 694 (E.D. Mo. 2002) ........................................................ 14, 15

*In re McDonnell Douglas Corp. Secs. Litig.,*
98 F.R.D. ................................................................................................. 22

*In re Mercedes-Benz Antitrust Litig.,*
213 F.R.D. 180 (D.N.J. 2003) ................................................................... 23

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.,*
716 F.3d 1057 (8th Cir. 2013) ............................................... 8, 9, 15, 19

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.,*
2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) .................................. 14, 25

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.,*
396 F.3d 922 (8th Cir. 2005) ..................................................................... 9

*In re Zurn Pex Plumbing Prods. Liab. Litig.,*
2013 WL 716088 (D. Minn. Feb. 27, 2013) ................................... passim

*In re Zurn Pex Plumbing,*
2012 WL 5055810 .................................................................................... 16

*In re: Apa Assessment Fee Litig.,*
2015 WL 5996354 (D.D.C. Oct. 14, 2015) .............................................. 23

*Jackson v. Collections Acquisition Co., LLC,*
2013 WL 5592603 (E.D. Mo. Oct. 9, 2013) ........................................... 24

*Janson v. LegalZoom.com, Inc.,*
271 F.R.D. 506 (W.D. Mo. 2010) ............................................................ 23

*Jones v. CBE Grp., Inc.,*
215 F.R.D. 558 (D. Minn. 2003) .............................................................. 22

*Jones v. NovaStar Fin., Inc.,*
257 F.R.D. 181 (W.D. Mo. 2009) ............................................................ 17

*Kelly v. Phiten USA, Inc.,*
    277 F.R.D. 564 (S.D. Iowa 2011) ......................................................................... 13, 20

*Knowlton v. Anheuser-Busch Companies, LLC,*
    2014 WL 2009076 (E.D. Mo. May 16, 2014) .............................................................. 17

*Lane v. Lombardi,*
    2012 WL 5462932 (W.D. Mo. Nov. 8, 2012) .............................................................. 20

*Liddell by Liddell v. Bd. of Educ. of City of St. Louis,*
    126 F.3d 1049 (8th Cir. 1997) .................................................................................... 7

*Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1,*
    921 F.2d 1371 (8th Cir. 1990) ................................................................................. 7, 8

*Marshall v. Nat'l Football League,*
    787 F.3d 502 (8th Cir. 2015) ............................................................................... 8, 9, 12

*Morgan v. United Parcel Serv. of Am., Inc.,*
    169 F.R.D. 349 (E.D. Mo. 1996) ............................................................................... 21

*Petrovic v. Amoco Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) .................................................................................... 8

*Petrovic,*
    200 F.3d ..................................................................................................................... 25

*Prater v. Medicredit, Inc.,*
    2015 WL 4385682 (E.D. Mo. July 13, 2015) .......................................................... 10, 26

*Risch v. Natoli Eng'g Co., LLC,*
    2012 WL 3242099 (E.D. Mo. Aug. 7, 2012) ............................................................ 9, 12

*Roberts v. Source for Pub. Data, LP,*
    2010 WL 2195523 (W.D. Mo. May 28, 2010) ............................................................ 26

*Schmidt v. Fuller Brush Co.,*
    527 F.2d 532 (8th Cir. 1975) ..................................................................................... 8

*Simmons v. Enter. Holdings, Inc.,*
    2012 WL 718640 (E.D. Mo. Mar. 6, 2012) ............................................................. 9, 16

*Smith v. Questar Capital Corp.,*
    2015 WL 1963019 (D. Minn. Apr. 30, 2015) ............................................................. 26

*Sullivan v. DB Investments, Inc.,*
    667 F.3d 273 (3d Cir. 2011) ...................................................................................... 23

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,*
    209 F.R.D. 159 (C.D. Cal. 2002) ............................................................................... 23

*Van Horn v. Trickey,*
    840 F.2d 604 (8th Cir. 1988) ..................................................................................... 9

v

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) .................................................................. 17, 18

*Weil v. Long Island Sav. Bank, FSB,*
   200 F.R.D. 164 (E.D.N.Y. 2001) ............................................................ 23

*Welsch v. Gardebring,*
   667 F. Supp. 1284 (D. Minn. 1987) ...................................................... 16

*White v. Martin,*
   2002 WL 32596017 (W.D. Mo. Oct. 3, 2002) .................................... 21

*White v. Nat'l Football League,*
   822 F. Supp. 1389 (D. Minn. 1993) ...................................................... 12

## STATUTES

28 U.S.C. App. at 141      24

California Business and Professions Code § 17200      2

California Business and Professions Code § 17500      2

California Civil Code § 1750      2

New York General Business Law § 349      2

New York General Business Law § 350      2

## RULES

Fed. R. Civ. P. 23 ............................................................................................ 16

Fed. R. Civ. P. 23(a) ...................................................................................... 16

Fed. R. Civ. P. 23(a)(1) ................................................................................ 17

Fed. R. Civ. P. 23(a)(2) ................................................................................ 17

Fed. R. Civ. P. 23(a)(3) ................................................................................ 19

Fed. R. Civ. P. 23 (a)(4) ............................................................................... 20

Fed. R. Civ. P. 23(b)(3) ................................................................................ 21

Fed. R. Civ. P. 23 (c)(2) ............................................................................... 26

Fed. R. Civ. P. 23(e) ...................................................................................... 25

## OTHER AUTHORITES

Fed. Prac. & Proc. Civ. § 1781 ................................................................... 24

## INTRODUCTION

Alexia Keil, Nick Hutchison, Rachael D. Stone, Maja Mackenzie, Jonathan Fisher, David Delre, Beth Cox, Lori Canale, and Derek McCusker, on behalf of themselves and all others similarly situated ("Class Representatives" or "Plaintiffs") respectfully submit this memorandum in support of their motion for preliminary approval of a settlement reached with Defendant, Blue Buffalo Company, Ltd.  ("Blue Buffalo" or "Defendant").

The Settlement[1] provides Settlement Class Members both monetary and injunctive relief. Blue Buffalo has agreed to pay $32 million (exclusive of Incentive Awards to Class Representatives)[2] into a Settlement Fund.  There is no potential reversion of funds to Blue Buffalo.  After payment of fees and costs, all available funds will be distributed to Settlement Class Members.  Each Settlement Class Member may file a claim that will, if timely and valid, entitle the Class Member to a cash payment, as described in the Settlement Agreement and summarized below.  In addition, the Settlement provides meaningful injunctive relief.

Plaintiffs and Class Counsel believe that the Settlement is fair, adequate and reasonable for the Settlement Class Members – it offers individual Class Members monetary recovery and provides injunctive relief that addresses issues underlying Plaintiffs' claims.   Plaintiffs respectfully request that this Court preliminarily approve the Settlement, certify the Settlement Class, and authorize Notice to be sent to Class Members.

## BACKGROUND AND PROCEDURAL HISTORY

Beginning on May 7, 2014, consumers in several states filed a series of class actions challenging the veracity of certain claims made by Blue Buffalo regarding the ingredients in its

---

[1]  All capitalized terms have the same meaning as used in the Parties' Settlement Agreement.  *See* Settlement Agreement, Kamber Decl. Ex. A.

[2]  If the Court finds that Incentive Awards are appropriate, Blue Buffalo will pay Incentive Awards separate from, and in addition to, the $32 million Settlement Fund.

pet foods. On October 17, 2014, the Judicial Panel on Multidistrict Litigation centralized these actions against Blue Buffalo in this Court.  *See* Dkt. No. 1.

On January 30, 2015, Plaintiffs filed their Consolidated Class Action Complaint ("Compl.") asserting claims against Blue Buffalo under Magnuson-Moss Warranty Act, Missouri Merchandising Practices Act, New York General Business Law § 349 (New York Deceptive Trade Practices Act), New York General Business Law § 350 (New York False Advertising Law), California Civil Code § 1750 *et seq.* (Consumers Legal Remedies Act or "CLRA"), California Business and Professions Code § 17200 *et seq.* (Unfair Competition Law or "UCL"), California Business and Professions Code § 17500 *et seq.* (False Advertising Law or "FAL"), New Jersey Consumer Fraud Act, New Jersey Truth-In-Consumer Contract, Warranty and Notice Act, Illinois Unfair Practices Act, Florida's Deceptive and Unfair Trade Practices Act, Ohio Consumer Sales Practices Act, and for Breach of Express Warranty, Breach of Implied Warranty of Merchantability, and Unjust Enrichment.  *See* Dkt. No. 36.  Blue Buffalo answered the initial Consolidated Complaint on March 20, 2015.  *See* Dkt. No 45.

In connection with this Settlement, Plaintiffs will, with leave of Court, file an Amended Consolidated Complaint, and Blue Buffalo does not object to the filing of an Amended Consolidated Complaint.[3]

The Class Representatives allege in the Action, *inter alia*, that Blue Buffalo breached its "True Blue Promise."  The True Blue Promise states that Blue Buffalo Products contain "NO Chicken or Poultry By-Product Meals," "NO Corn, Wheat or Soy," and "NO Artificial Preservatives, Colors or Flavors."  Compl. ¶ 3.  Plaintiffs further allege that, contrary to the True

---

[3] In conjunction with this motion for preliminary approval, Plaintiffs request leave to file their [Proposed] Amended Consolidated Class Action Complaint, which corrects a typographical error, adds an additional Class Representative, amends the class definition, and adds an additional claim under the Massachusetts Consumer Protection Act, among other conforming edits.  *See* [Proposed] Amended Consolidated Complaint, Kamber Decl. Ex B.

Blue Promise, the Blue Buffalo Products did, in fact, contain significant amounts of chicken/poultry by-product meal, corn, rice, grains, soy, and/or artificial ingredients.

In its Answer, Blue Buffalo denied the material allegations of the Consolidated Class Action Complaint and any and all liability with respect to all facts and claims alleged therein, and continues to deny that any Settlement Class Member has suffered any harm or damage or is entitled to any monetary or relief whatsoever in connection with the Action.  However, as a result of discovery conducted in another lawsuit, Blue Buffalo has admitted that, for a period of time ending in May 2014, in violation of Blue Buffalo's procurement contracts and ingredient specifications, a major supplier of ingredients to Blue Buffalo and many other pet food companies sent mislabeled ingredients to manufacturing facilities that produce certain Blue Buffalo pet food products.

As a result of this misconduct, Blue Buffalo filed a third party complaint in this Action against Wilbur-Ellis Company ("Wilbur-Ellis") and Diversified Ingredients, Inc. ("Diversified") on June 12, 2015, seeking indemnification and/or contribution for any liability that Blue Buffalo may have on account of these actions.  Dkt. No. 61.

Prior to reaching the proposed Settlement, the parties were actively engaged in discovery, and Plaintiffs were well on the way to preparing to file their class certification motion, which is due December 18, 2015.

The parties engaged in a day-long mediation before former United States District Judge Wayne A. Andersen in Chicago, Illinois on October 26, 2015.  *See* Kamber Decl. ¶¶ 8-9.  Class Counsel entered the mediation fully informed of the merits of the Class Members' claims, and negotiated the proposed Settlement while zealously advancing the position of Plaintiffs and Class Members, and being fully prepared to continue to litigate rather than accept a settlement that was

not in the best interest of Plaintiffs and Class Members.  Judge Andersen actively supervised and participated in the settlement discussions to help the parties reach an acceptable compromise. Although an agreement was not reached that day, Class Counsel, with the continued assistance of Judge Andersen, was able to negotiate the instant Settlement notwithstanding the complexities of the case, the damages analyses at issue, and the involvement of the third-party defendants.  *See Id.* ¶¶ 8-10, and 12.  After much arms-length negotiation, and the assistance of Judge Andersen, the parties have arrived at a Settlement that will provide meaningful compensation to Settlement Class Members, as well as injunctive relief, and avoid the risks and delay of further litigation.

## MATERIAL TERMS OF SETTLEMENT

### Cash Awards And Injunctive Relief:

Under the Settlement, Blue Buffalo will provide both monetary and non-monetary benefits to a Settlement Class defined as:

> All residents of the United States of America who, from May 7, 2008 through the Preliminary Approval Date, purchased any of the Blue Buffalo Products.[4]

Settlement Agreement ¶ 1.25, Kamber Decl. Ex. A.   Blue Buffalo agrees to pay $32 million into the settlement fund for compensation to Settlement Class Members.  *See id.* at ¶¶ 1.27, 2.4.

Each Settlement Class Member may submit a claim that will, if timely and valid, entitle the Class Member to a cash payment, according to which Option s/he chooses in submitting a Claim Form. Subject to potential adjustment as described in the Settlement, monies will be distributed to Settlement Class Members pro rata based on the amounts apportioned to each

---

[4]  Excluded are: the Released Persons, the Court and its personnel, and Settlement Class Members who exclude themselves from the Settlement, pursuant to the procedures set forth in Section 5 of the Settlement Agreement.  Putative class members who exclude themselves from the Settlement shall no longer thereafter be Settlement Class Members, and they shall not be bound by this Settlement Agreement and shall not be eligible to make a claim for any benefit under the terms of this Settlement Agreement.

Settlement Class Member by the following claims process (subject to the pro rata adjustments set forth in the Settlement):

> Option 1.  Settlement Class Members who do not provide valid Proof of Purchase, and complete the Claim Form confirming under penalty of perjury (i) that they purchased one or more Blue Buffalo Products during the Settlement Class Period; (ii) the place of purchase; (iii) the identification of the Blue Buffalo Product; and (iv) the total sum of money spent by them on Blue Buffalo Products during the Settlement Class Period, shall receive, for each $50 in purchases, $5.00 in the form of a cash payment; provided, however, that recovery under this Option 1 may not exceed $10, and provided further that a Settlement Class Member who confirms that they purchased one or more Blue Buffalo Products but did not spend at least $50 on such purchases will nonetheless be entitled to a minimum recovery of a $5.00 cash payment;

or

> Option 2.  Settlement Class Members who complete the Claim Form and provide valid Proof of Purchase showing their actual purchase(s) of Blue Buffalo Products during the Settlement Class Period shall receive, for each $50 in purchases, $5.00 in the form of a cash payment; provided, however, that recovery under this Option 2 may not exceed $200.

A Settlement Class Member will be eligible for one claim submission per household.

In addition, the injunctive relief component requires that Blue Buffalo shall ensure that it no longer represents to the public that the Blue Buffalo Products do not include chicken or poultry by-product meal unless or until: (a) all specifications for Blue Buffalo Products have been reviewed to ensure that they are consistent with all packaging claims found on the product and representations regarding the products found on the Blue Buffalo website; and (b) Blue Buffalo has reviewed its supplier relationships and has instituted practices to ensure that all materials provided by its suppliers comply with the applicable product specifications.  *See* Settlement Agreement ¶ 2.1, Kamber Decl. Ex. A.

**Class Notice and Administration:**

The parties have selected a qualified third-party administrator to issue Notice to Class Members, receive exclusion requests, process claims, respond to inquiries, issue settlement checks to claimants, and conduct other activities relating to class notice and administration under the parties' supervision.  *See* Settlement Agreement at ¶¶ 2.6, 4.5-4.6, and Exhibit 2 thereto (Declaration of Jeanne C. Finegan) ("Finegan Decl."), Kamber Decl. Ex. A.  As set forth in detail in Section 4 of the Settlement Agreement, the Class Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law, and shall otherwise be in the manner and form approved by the Court.  Subject to Court approval, Notice will be accomplished as set forth in the Finegan Decl., Settlement Agreement Ex. 2, Kamber Decl. Ex. A.  The Media Plan described in the Finegan Decl. provides that media delivery of Class Notice shall be completed within sixty (60) days after the Preliminary Approval Date.  In addition, Blue Buffalo has in its possession approximately 1.8 million e-mail addresses of potential Class Members.  The Claims Administrator shall send short a form notice or link to the Settlement Website to all such e-mail addresses within thirty (30) days after the Preliminary Approval Date.  *Id.*

As described in the proposed Class Notice, any Class Member wishing to be excluded from the Settlement can opt out by submitting a timely request to do so.  The procedures for opting out are those commonly used in class action settlements, are straightforward and clearly described in the Notice.  Class Members also will be given the opportunity to present objections, in order to preserve an ability to appeal.

If the Court grants final approval after Class Members are notified and the time period for opt-out requests and objection expires, all Class Members who do not request exclusion will be

bound by the Settlement and subject to the release of claims against Released Persons. Settlement Agreement ¶ 5.2, Kamber Decl. Ex. A.

**Attorneys' Fees and Incentive Awards:**

Plaintiffs' attorneys have not been paid for their extensive efforts or reimbursed for costs incurred. Class Counsel will petition the Court for an award of attorneys' fees, costs and expenses not to exceed 25% of the total $32 million value of the Settlement Fund, exclusive of interest accumulated. Settlement Agreement ¶ 3.1, Kamber Decl. Ex. A. Such award is subject to this Court's approval and will serve to compensate for the time, risk and expense Plaintiffs' counsel incurred pursuing claims on Settlement Class Members' behalf.

Class Counsel also will petition the Court for approval of Incentive Awards to Class Representatives, not to exceed $1,500.00 each. Blue Buffalo has agreed to pay these Incentive Awards separate from and in addition to the $32 million fund amount. *Id.* at ¶ 3.2. Finally, if final approval is granted, Class Counsel is informed that Blue Buffalo will dismiss without prejudice its claims against the third-party defendants.

<u>**ARGUMENT**</u>

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    Overview Of The Class Settlement Approval Process

"The law strongly favors settlements. Courts should hospitably receive them." *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 126 F.3d 1049, 1056 (8th Cir. 1997) (quoting *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990)). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). "Class actions, in general, 'place an

enormous burden of costs and expense upon [ ] parties.'"  *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975)).  Settlement avoids protracted litigation and conserves resources.  *See In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (expense of continued litigation "weigh[s] in favor of" approving settlement).

Approval of a class action settlement involves a two-step process.  The court first makes a preliminary fairness evaluation.  *See Manual for Complex Litigation* § 21.632 (4th ed.) (hereafter "*Manual*").  If the preliminary evaluation does not disclose grounds to doubt fairness or other obvious deficiencies, and appears to fall within the range of possible approval, the court directs that notice be given to class members and sets a fairness hearing, at which arguments and evidence may be presented in support of or against the settlement.  *See Manual* § 21.633.  The notice should tell class members how to make their views known to the court.  *Id.*

Under this framework, "the goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness.   Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase."  Newberg on Class Actions § 13:13 (5th ed.) (citing cases).[5]

**B.       The Settlement Is Entitled To A Presumption Of Fairness**

Given that "[a] strong public policy favors agreements, . . . courts should approach them with a presumption in their favor."  *Little Rock School Dist.*, 921 F.2d at 1388; *accord Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) ("judges should not substitute their own judgment as to optimal settlement terms for the judgments of the litigants and their

---

[5] At the conclusion of the Notice period, and after any objections have been resolved, the Court will address whether final approval is warranted.

counsel") (internal quotation marks omitted).  The Eighth Circuit "begin[s] with the guiding principle that 'a class action settlement is a private contract negotiated between the parties.'" *Marshall*, 787 F.3d at 509 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)).  "The court's role in reviewing a negotiated class settlement is to 'to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned.'" *Id.* (quoting *In re Wireless,* 396 F.3d at 934). The settlement agreement is "presumptively valid."  *In re Uponor,* 716 F.3d at 1063.

### C.    Applicable Factors Favor Preliminary Approval

"[I]n determining whether a settlement is fair, reasonable, and adequate [the Court] considers . . . the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Risch v. Natoli Eng'g Co., LLC*, 2012 WL 3242099, at *2 (E.D. Mo. Aug. 7, 2012) (quoting *In re Wireless,* 396 F.3d at 932-33) (citations omitted); *accord Simmons v. Enter. Holdings, Inc.,* 2012 WL 718640, at *2 (E.D. Mo. Mar. 6, 2012) (same).  The most important factor "is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 502 (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).  Other and related factors include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 2013 WL 4855308, at *3 (E.D. Mo. Sept. 11, 2013) (citing *Daniels v. Greenkote,* 2013 WL 1890654, at *2 (E.D. Mo. May 6, 2013); *E.E.O.C. v. McDonnell Douglas*

*Corp.*, 894 F. Supp. 1329, 1333 (E.D. Mo. 1995)); *see also Prater v. Medicredit, Inc.*, 2015 WL 4385682, at *2 (E.D. Mo. July 13, 2015) (granting approval based on factors including benefits to the class; strengths and weaknesses of plaintiffs' case and defenses asserted; complexity, expense, and probable duration of further litigation; risk and delay).

These factors more than support a preliminary approval threshold here.

### 1.     There is no fraud or collusion

The Settlement Agreement is the product of arms-length negotiations between the parties spanning several weeks, and the active participation of a neutral mediator.  The parties engaged in a day-long mediation before Judge Andersen in Chicago, Illinois on October 26, 2015.  Both during and after the in-person mediation, Judge Andersen actively supervised and participated in the settlement discussions to help the parties reach an acceptable compromise.  Although an agreement was not reached that day, the parties continued to communicate over the course of several weeks.  With the continued assistance of Judge Andersen, the parties eventually were able to reach the negotiated compromise memorialized in the Settlement.

The Settlement has none of the "hallmarks" sometimes seen as matters of concern, such as reversion of funds to defendant or clear sailing provisions as to attorneys' fees.  Moreover, the active assistance of a neutral mediator is a strong indicator of a lack of collusion.  *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("It also warrants mention that a Magistrate Judge  presided over the settlement negotiations and that the district court had prior experience with this type of litigation.  Such multiple layers of scrutiny further militate in favor of the settlement and against [objectors'] claims of collusion."); *Claxton v. Kum & Go, L.C.*, 2015 WL 3648776, at *6 (W.D. Mo. June 11, 2015) (approving settlement as "a product of

extensive negotiation conducted over a period of several months and requiring the services of a mediator").

> **2.    The stage of proceedings and amount of investigation and discovery provide adequate basis for informed assessment**

This factor considers whether investigation and discovery is "to a point at which an informed assessment of its merits and the probable future course of the litigation can be made." *E.E.O.C.*, 894 F. Supp. at 1334.  Here, Class Counsel, along with Supporting Counsel, devoted substantial time and resources to investigating, litigating, and resolving this case.  *See* Kamber Decl. ¶¶ 5-6.   Class Counsel served and responded to discovery requests; reviewed approximately 140,000 pages of documents; served third-party subpoenas; obtained and reviewed all transcripts of depositions taken in the *Purina* matter; and noticed and prepared for numerous depositions.  *Id.* at ¶ 7.  In addition to this discovery, Class Counsel retained and consulted with an expert witness, commissioned independent testing on Blue Buffalo's products to verify the allegations of the complaint and test representations made by Blue Buffalo, and began drafting Plaintiffs' intended motion for class certification, which was due to be filed by December 18, 2015.  *Id.*

There has been a great deal of factual development and analysis to date.  The parties and their counsel have sufficient information to assess and weigh the merits of claims and defenses, the risks attendant to continued litigation, and the benefits of settlement.

> **3.    The merits and risks of continued litigation, weighed against benefits of the settlement, favor approval**

"The very purpose of compromise is to avoid the delay and expense of . . . a trial . . . Accordingly, while it is incumbent on the district court to determine the propriety of the settlement, it need not resolve all of the underlying disputes, . . . and the value of the settlement

need not be determined with absolute precision." *DeBoer*, 64 F.3d at 1178 (internal quotations and citations omitted); *see also In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 (noting that the court "does not have the responsibility of trying the case or ruling on the merits of the matters resolved by agreement . . .  Rather, the very purpose of compromise is to avoid the delay and expense of such a trial.") (quoting *White v. Nat'l Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993))[6].

The court considers, among other things, the strength of plaintiffs' case as against defenses that have been or are likely to be asserted on the merits and in regard to class certification. *See, e.g., Risch*, 2012 WL 3242099, at *3 ("Taking into account the strengths of Plaintiff's case and the defenses available to Defendant, the proposed Settlement Agreement appears to provide appropriate, substantial and immediate relief.").  The reasonableness of the Settlement can be evaluated by weighing the risks against the benefits.

The terms of the proposed Settlement here weigh heavily in favor of preliminary approval.  The $32,000,000 Settlement Fund is a very substantial amount, and claimants with proof of purchase will receive up to $200 in cash—a sizeable recovery in a consumer class action.

In contrast, the present risks are substantial.  In the initial Complaint, Plaintiffs allege nationwide class claims for violation of the Magnuson-Moss Warranty Act ("MMWA") (Count I) and unjust enrichment (Count IV).[7]  Blue Buffalo has denied all liability and asserted nine

---

[6] "To require the district court to make detailed factual findings on the value of class claims in every case, even if it would ultimately find any of its findings of little value to evaluating the fairness, reasonableness, and adequacy of the settlement would run counter to this Court's guiding principle that '[t]he very purpose of compromise is to avoid the delay and expense of such a trial.'" *Marshall*, 787 F.3d at 518 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)).

[7] In the proposed Amended Consolidated Complaint, Plaintiffs additionally allege nationwide class claims for implied and express warranty.

affirmative defenses.  *See* Answer (Dkt. No. 45).   While Plaintiffs believe that they would ultimately prevail on those claims,[8] they are cognizant that continued litigation entails non-trivial legal risks.  For example, there are risks that the Court would decline to certify a class, there is uncertainty and a lack of precedent as to some elements of the application of the Magnuson-Moss Warranty Act, and potential issues regarding choice of law.  Plaintiffs also face risks that they may not prevail at summary judgment or trial.  Blue Buffalo is represented by able counsel who would present a vigorous defense, and there is no assurance that the class would prevail. Given the risks Plaintiffs would face at class certification, summary judgment, and trial, in the eyes of Plaintiffs and their counsel, the proposed Settlement provides the Settlement Class with an outstanding opportunity to obtain significant relief at this stage in the litigation, while abrogating the risks that might prevent them from obtaining relief should the litigation continue.

Moreover, as in many cases, "[t]he possibility of a large monetary recovery through future litigation is highly speculative, and any such recovery would occur only after considerable additional delay."  *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011).   The outcome of this litigation is far from certain, as is the level of recovery a class might obtain if this case were litigated all the way to trial.  Plaintiffs' estimate of the potential compensatory damages they could possibly recover at trial, in a best-case scenario, based upon discovery and analysis of available information, yields a damages figure of approximately $100,000,000. Because there are substantial risks as to whether Plaintiffs could successfully certify and maintain a class, let alone prevail at trial, a settlement at this stage that reflects an amount that is 32% of the maximum compensatory recovery, is a compromise well above the fair and

---

[8] This argument is equally applicable to the additional nationwide class claims (for both express and implied warranties) included in the proposed First Amended Consolidated Complaint. *See* [Proposed] First Amended Consolidated Complaint, Kamber Decl. Ex. B.

reasonable range.   In fact, even if this estimate understated damages by 100%, the recovery would still be 16%, which still would be fair and reasonable.

As against these risks and uncertainties, the Settlement provides immediate and valuable monetary and injunctive relief.  The Settlement offers cash compensation to every Class Member who timely submits a valid claim form.   Those who provide proof of purchase have the opportunity to obtain a higher amount of cash compensation, based on how much Blue Buffalo Product they purchased.   The injunctive relief under the Settlement also brings real value. Plaintiffs allege that Blue Buffalo warranted its products as not having deficiencies they actually possessed.   The injunctive relief contemplated in the Settlement ensures that such concerns are appropriately addressed.

The parties naturally dispute the strength of the Plaintiffs' case, and the Settlement reflects the parties' compromise, weighing the likelihood of various potential outcomes.  This case carries significant risks for all parties, and would consume a great deal of time and expense if litigated to the end.  In light of the risk and delay of litigation, weighed against the substantial benefits the settlement will provide to the Settlement Class Members, the proposed resolution is a fair, reasonable, and adequate compromise and should be preliminarily approved.

The Settlement "brings real and immediate benefits to the settlement class while they may well not get anything if the case were to go forward or, if they did receive some benefits, may well not receive anything until years into the future after millions of dollars have been spent."  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 2004 WL 3671053, at *10-11 (W.D. Mo. Apr. 20, 2004).  "It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation.  *Id.* (citing *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701 (E.D. Mo. 2002) (recognizing it is often

"proper to take the bird in hand instead of a prospective flock in the bush.")); *see also Albright*, 2013 WL 4855308, at *3 ("If the case were to proceed, the resulting motion practice, trial and appeals, could have been lengthy, involved, and expensive, presenting a substantial risk that Plaintiffs and the Settlement Classes would not ultimately prevail on their claim . . . the Settlement Agreement eliminates a substantial risk that the Class Members would walk away 'empty-handed.").[9]  In sum, the Settlement substantially fulfills the objectives of this action, and provides real relief to Class Members expeditiously, without the cost, risk or delay of further litigation.

### 4.  Complexity, expense, and likely duration of the litigation favor settlement

Complexity and expense of further litigation, particularly in class actions, "weigh[s] in favor of approval." *In re Uponor,* 716 F.3d at 1063.  "The complexity and expense of class action litigation is well-recognized" and "various procedural and substantive defenses[,] . . . the expense of proving class members' claims, the certainty that resolution under [a] settlement will foreclose any subsequent appeals, and the fear that, unsettled, the 'ultimate resolution of the action . . . could well extend into the distant future,' all weigh in favor of the settlement's approval." *Claxton*, 2015 WL 3648776, at *6 (quoting *In re Zurn Pex Plumbing*, 2013 WL 716088, at *7).

---

[9] "[A] settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate." *In re BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 708 (E.D. Mo. 2002); *see also Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) ("A cash settlement amounting to only a fraction of the potential cash recovery (and the present proposed settlement is not such a recovery) does not in itself render the settlement unfair or inadequate.  In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted).

5.      **Counsel and parties believe that the Settlement is fair and reasonable**

"The views of the parties to the settlement must also be considered" as well as the judgments of experienced class counsel. *DeBoer*, 64 F.3d at 1178. Courts give "'great weight' to and may 'rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.'" *In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 (quoting *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987)) (citations omitted). The terms of the Settlement here were reached by arm's-length negotiation between attorneys familiar with the legal and factual issues of the case and who are well versed in litigating similar class claims. The parties and their respective counsel, having taken the risks and benefits into consideration, agree that the Settlement is fair and reasonable.

## II.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A.    The Proposed Class Meets The Requirements Of *Amchem*

Before granting preliminary approval, the Court should determine whether the class proposed for settlement purposes is appropriate under Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual* § 21.632. The practical purpose of certification is to facilitate notice of settlement terms to the class and provide them with the date and time of the final approval hearing. *See id.* at § 21.633; *see also In re Zurn Pex Plumbing*, 2012 WL 5055810, at *5 ("Conditionally certifying a class in connection with preliminary approval allows notice to the class."). The court may certify a class solely for purposes of settlement after making a "determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Simmons*, 2012 WL 718640, at *1 (quoting *Manual* § 21.632).

### B.    Rule 23(a) Requirements Are Satisfied

The four prerequisites of Rule 23(a) "are otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006).[10] These requirements are easily met.

### 1.    Numerosity

"Rule 23(a)(1) requires that the proposed class be 'so numerous that joinder of all members is impracticable.'" *Aquila ERISA Litig.,* 237 F.R.D. at 207 (quoting Fed. R. Civ. P. 23(a)(1)). Here, numerosity cannot reasonably be disputed. Blue Buffalo can identify at least 1.8 million potential members of the Settlement Class (Settlement Agreement ¶4.4, Kamber Decl. Ex. A), and the Settlement Class indisputably is even larger, easily satisfying the numerosity requirement. *See Knowlton v. Anheuser-Busch Companies, LLC*, 2014 WL 2009076, at *2 (E.D. Mo. May 16, 2014) (certifying class of "[s]ome 800 persons" because "[r]equiring each of those individuals to bring his or her own legal action undoubtedly would be inconvenient and costly to both individuals and the legal system."); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 186 (W.D. Mo. 2009) (holding that class of over "one thousand persons" satisfied numerosity requirement); *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) ("This Court finds that a class of twenty to sixty-five members is sufficiently numerous under Rule 23.").

### 2.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is met where the issues raised have "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original). The

---

[10] In certifying a settlement class, the court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

threshold for commonality is low, requiring only that the issue "linking the class members is substantially related to the resolution of the litigation." *In re Zurn Pex Plumbing*, 2013 WL 716088, at *3 (internal citations and quotations omitted).  That is, Plaintiffs' "claims must depend on a common contention . . . that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.  "[T]he presence of differing legal inquiries and factual discrepancies will not preclude class certification." *Glen v. Fairway Indep. Mortgage Corp.*, 265 F.R.D. 474, 478 (E.D. Mo. 2010).

The commonality requirement is easily satisfied here because Plaintiffs and all Settlement Class Members' claims arise from the same facts, as each claim focuses on the common contention that Blue Buffalo's True Blue Promise assured customers that its products contained "NO Chicken or Poultry By-Product Meals," "NO Corn, Wheat, or Soy," and "NO Artificial Preservatives, Colors or Flavors."  Compl. ¶¶ 3-4, 25, 27; *see also id.* ¶¶ 5-8, 23. Plaintiffs' core allegations are that Blue Buffalo breached its True Blue Promise, because "[s]cientific testing reveals that contrary to the True Blue Promise, the Blue Buffalo Products do, in fact, contain significant amounts of chicken/poultry by-product meal[,] [and] also contain corn, rice, grains, soy and/or artificial preservatives."  Compl. ¶9.

The determination of the following common questions of fact will resolve issues central to the validity of Plaintiffs' and Class Members' claims in a single stroke:  whether Blue Buffalo Products contain chicken or poultry by-product meals, corn, wheat, soy, and/or artificial preservatives, colors, or flavors; whether Defendant's True Blue Promise is false or misleading; whether Defendant warranted that the Blue Buffalo Products would conform to the True Blue Promise; whether Defendant breached these warranties; whether Defendant violated state

consumer protection laws; and whether Defendant was unjustly enriched. *See* Compl. ¶ 57 (listing common questions of law and fact).

Accordingly, the commonality requirement is met. *See, e.g., Hartley v. Suburban Radiologic Consultants, Ltd.,* 295 F.R.D. 357, 376 (D. Minn. 2013) (commonality satisfied where claims based on form letters with same content to all class members); *Claxton,* 2015 WL 3648776, at *3 ("Here, there are multiple questions of law or fact common to the class – i.e. whether Defendant misrepresented the gasoline sold; whether the marketing/labeling of the gasoline was false, misleading, deceptive, or unfair; whether Defendant knew or should have known of the contamination prior to relevant time period; whether the sale of contaminated fuel constituted a breach of an express or implied warranty; etc.").

### 3.    Typicality

"Typicality requires the plaintiff to show 'the claims or defenses of the representative parties are typical of the claims or defenses of the class [.]'" *Claxton,* 2015 WL 3648776, at *3 (quoting Fed. R. Civ. P. 23(a)(3)).  "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer,* 64 F.3d at 1174; *accord Aquila ERISA Litig.,* 237 F.R.D. at 209.

Typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff." *In re Zurn Pex Plumbing*, 2013 WL 716088, at *3.  Class representatives "need not share identical interests with every class member, but only 'common objectives and legal and factual positions.'" *Claxton*, 2015 WL 3648776, at *3 (quoting *In re Uponor, Inc.,* 716 F.3d at 1064).

Typicality is met here because Plaintiffs' claims "emanate from the same legal theory or offense as the claims of the class," thereby satisfying the typicality requirement. *Doran v. Mo.*

*Dep't of Soc. Servs.,* 251 F.R.D. 401, 405 (W.D. Mo. 2008).  Plaintiffs, like all Settlement Class

Members, each purchased Blue Buffalo Products, were exposed to the same True Blue Promise,

and paid a price premium for the Blue Buffalo Products.  *See* Compl. ¶¶41-49.  As a result, each

Class Representative and Settlement Class Member has been injured in the same manner, and

therefore each Class Representative's interests are co-extensive with those of the proposed class.

*See Kelly*, 277 F.R.D. at 568 (typicality requirement was "clearly met" where each settlement

class member's grievance was based upon the same alleged misleading statements by defendant).

### 4.   Adequacy

The fourth and final requirement of Rule 23(a) is that "the representative parties will

fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23 (a)(4).  "The adequacy

requirement is met where "1) the representatives and their attorneys are able and willing to

prosecute the action competently and vigorously; and 2) each representative's interests are

sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will

diverge."  *Barfield v. Sho-Me Power Elec. Co-op.*, 2013 WL 3872181, at *3 (W.D. Mo. July 25,

2013) (quoting *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004)); *see also In re Zurn*

*Pex Plumbing*, 2013 WL 716088, at *4  Adequacy focuses on whether Plaintiffs' attorneys are

"qualified, experienced, and generally able to conduct the proposed litigation," and whether

Plaintiffs have "interests antagonistic to those of the class."  *Claxton*, 2015 WL 3648776, at *4

(quoting *Lane v. Lombardi*, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012)).

There is no indication that the interest of any Class Representative is antagonistic to the

interests of the class.  Each is a member of the class, and is aligned in the common interest of

vindicating their claims.  Moreover, Class Counsel and Supporting Counsel have significant

experience in prosecuting class actions and complex cases.  Thus, Plaintiffs and their counsel are

qualified and able advocates, adequate to represent the interests of the Class Members.  *See White v. Martin*, 2002 WL 32596017, at *10 (W.D. Mo. Oct. 3, 2002) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action.") (quoting *Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996)).

### C.    Rule 23(b)(3) Requirements Are Satisfied

Finally, the proposed Settlement Class meets the requirements of Rule 23(b)(3), which authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members;" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Claxton*, 2015 WL 3648776, at *4; Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  Both aspects of Rule 23(b)(3) are met here.

### 1.    Common questions of law or fact predominate

Predominance only requires "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).  "The fact that some individual questions will be involved in the case does not preclude a finding that the common issues will predominate." *Carpe*, 224 F.R.D. at 458; *see also Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 199 (D.N.J. 2014) ("That common issues must be shown to predominate does not mean that individual issue[s] need be non-existent.  All class members need not be identically situated upon all issues, so long as their claims are not in conflict with

each other.") (internal quotations and citation omitted).  This is "a test readily met in certain cases alleging consumer or securities fraud.…"  *Amchem*, 521 U.S. at 625.

Here, common questions of fact predominate because Plaintiffs' and the Class Members' claims each arise from the uniform True Blue Promise.  *See supra* § II.B.2.  The determination of the following common questions of fact will resolve issues central to the validity of Plaintiffs' and Class Members' claims in a single stroke:  (1) whether Defendant labeled and advertised the Blue Buffalo Products as compliant with its True Blue Promise in that the products contain "NO Chicken or Poultry By-Product Meals," "NO Corn, Wheat or Soy," and "NO Artificial Preservatives, Colors or Flavors"; (2) whether the Blue Buffalo Products did, in fact, contain "Chicken or Poultry By-Product Meals," "Corn, Wheat or Soy," or "Artificial Preservatives, Colors or Flavors"; (3) whether Defendant's True Blue Promise is false or misleading; (4) whether Defendant warranted that the Blue Buffalo Products would conform to the True Blue Promise; (5) whether Defendant breached these warranties; (6) whether the True Blue Promise and related advertising were material to class members' decision to purchase the Blue Buffalo Products; (7) whether Defendant violated state consumer protection laws; (8) whether class members were damaged by purchasing Blue Buffalo Products that did not comply with the True Blue Promise; and (9) whether Defendant was unjustly enriched.  Because these overriding questions focus on Defendant's conduct—and not on Plaintiffs' conduct—and because they concern the core question of liability, they predominate over any individualized questions.  *See Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 569 (D. Minn. 2003) ("The predominance inquiry focuses primarily on common questions regarding liability.") (citing cases); *In re McDonnell*

*Douglas Corp. Secs. Litig.*, 98 F.R.D. at 616 ("[I]n determining whether common questions predominate, courts focus on the liability issues") (citing authorities).[11]

Here, the elements of each claim[12] will be established with common evidence regarding Blue Buffalo's uniform conduct and representations.[13]  This common evidence includes, for example, Blue Buffalo's admission that the Blue Buffalo Products did contain chicken by-product meal in violation of the True Blue Promise.  Compl. ¶13.[14]  This common evidence is not "dependent on the conduct of [Defendant's] customers, but rather the conduct of [Defendant] itself."  *Janson v. LegalZoom.com, Inc.*, 271 F.R.D. 506, 512 (W.D. Mo. 2010).  "Because the class claim[s] [are] based upon [a uniform misrepresentation made] to all putative class members and can be proven with common evidence, individualized inquiries are not necessary and do not

---

[11] *See also In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003) ("common issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members"); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("[T]o determine predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members.") (citing cases); *Weil v. Long Island Sav. Bank, FSB*, 200 F.R.D. 164, 175 (E.D.N.Y. 2001) (inquiry that "necessarily focuses on defendants' conduct, that is, what defendants did, rather than what plaintiffs did" predominates over individual questions) (citation and internal quotation marks omitted); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 650 (C.D. Cal. 1996) (common questions predominated where claim focused on defendant's conduct, not defective product's effect on plaintiffs).

[12] This argument holds true for both all of the claims brought in the initial Consolidated Complaint, as well as all of the claims contained in the proposed First Amended Consolidated Complaint.

[13] Because Plaintiffs are seeking certification of a *settlement* class, any concern about differences in state laws will not defeat predominance because "the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 302-03 (3d Cir. 2011) (noting that "the class settlement posture of this case largely marginalizes the objectors' concern that state law variations undermine a finding of predominance."). As other Circuits have observed, variation in state laws is "irrelevant to certification of a settlement class since a settlement would eliminate the principal burden of establishing the elements of liability under disparate laws." *Id.* at 303 (internal citations and quotations omitted); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) ("[T]he existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis."). As the Second Circuit noted, "with a settlement class, the manageability concerns posed by numerous individual questions of reliance disappear." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d at 241. "Hence, insofar as an apparent threat to predominance is only a matter of unmanageability at trial, that should not foreclose certification of a settlement-only class." *In re: Apa Assessment Fee Litig.*, 2015 WL 5996354, at *5 (D.D.C. Oct. 14, 2015).

[14] Additional common evidence will include Blue Buffalo's sales records, packaging, advertising, and documents from Blue Buffalo and third parties reflecting ingredient purchases by Blue Buffalo.

defeat class certification." *Jackson v. Collections Acquisition Co., LLC*, 2013 WL 5592603, at *4 (E.D. Mo. Oct. 9, 2013) (holding "[c]ommon questions of fact predominate because the primary issue in this case involves the legality of defendant's conduct in allegedly failing to disclose on the collection letter that Payliance is a debt collector pursuant to the FDCPA and whether the collection letters stated that they were an attempt to collect a debt."); *see also Glen*, 265 F.R.D. at 481 (E.D. Mo. 2010) ("Because the class claim is based upon a promise given to all putative class members in a form contract and can be proven with common evidence, individualized inquiries are not necessary."). Similarly, any variation that might exist in the amount of damages due to each Class Member does not defeat predominance.[15]

### 2.    Class treatment is superior to other methods of adjudication

Resolution through a class-wide settlement and claims process is the superior way to proceed. There are four factors in Rule 23(b)(3) to consider: "(1) the class members' interest in individual control of case prosecution or defense; (2) the extent and nature of any litigation a class member may have already begun; (3) the desirability, or lack thereof, of concentrating the litigation of the claims in this forum; and (4) the potential difficulties in managing the class action." *Claxton*, 2015 WL 3648776, at *5  (quoting *Hopkins v. Kansas Teachers Cmty. Credit Union,* 265 F.R.D. 483, 489 (W.D. Mo. 2010)).

First, Settlement Class Members have little interest in individually controlling separate lawsuits and settlement given the relatively small individual economic injuries involved, and those that do can choose to opt out of the Settlement. Second, it appears that no individual

---

[15]  "[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by the individuals within the class." Advisory Committee's 1966 Notes on Fed. R. Civ. P. 23, 28 U.S.C. App. at 141; *see also* Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. § 1781, at 235-37; W. Rubenstein, Newberg on Class Actions § 4:54 at 205 (5th ed. 2012) ("individual damage[s] calculations should not scuttle class certification under Rule 23(b)(3)"); *accord Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 559 (W.D. Mo. 2014).

Settlement Class Member has chosen to commence litigation concerning this controversy except through class litigation, further suggesting that a collective action is indeed the superior method of recovery.  Third, the Judicial Panel on Multidistrict Litigation has already determined that this Court is an appropriate forum in which to concentrate class members' claims.  Fourth, there will be no difficulties in managing a class trial, "for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.

A class action here "avoid[s] potential duplicative litigation and . . . save[s] the parties time and legal costs to adjudicate common legal and factual issues," and thus, is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Claxton*, 2015 WL 3648776, at *5.  Resolution of all claims, which arise from a common course of conduct, through a class-wide settlement is a practical and proper course of action.  Plaintiffs therefore respectfully request that the Court provisionally certify the class for settlement purposes only.

## III. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A. The Proposed Class Notice Provides For The Best Notice Practicable Under The Circumstances

Under Rule 23(e), the Court must direct notice in a reasonable manner to class members who would be bound by the proposed class settlement.  "Notice of a settlement proposal need only be as directed by the district court . . . and reasonable enough to satisfy due process." *DeBoer*, 64 F.3d at 1176. The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 WL 3671053, at *8 (quoting *Petrovic*, 200 F.3d at 115)).  "There is no one 'right way' to provide notice as contemplated under Rule 23(e)." *Id.*

Here, as described in the Settlement Agreement, the parties propose that Notice be provided by publication, as well as by direct notice via email (or postcard, for any undeliverable email addresses) to all Blue Buffalo customers for whom Blue Buffalo possesses address information.

**B.      The Proposed Form Of Class Notice Adequately Informs Settlement Class Members Of Their Rights**

Any notice provided to Settlement Class Members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on Class Members.  *See* Fed. R. Civ. P. 23 (c)(2).

The proposed Notice here describes the material terms of the Settlement, the relief it will provide, the date, time and place of the final-approval hearing, procedures and deadlines for opting out or objecting, and explanation that if the class member does not opt out, he or she will be bound by any final judgment in this case, including a release of claims.  The proposed notice also advises Settlement Class Members that Plaintiffs' counsel have pursued the lawsuit on a contingent basis and have not received payment of fees or any reimbursement of their out-of-pocket expenses.  The proposed notice further advises Settlement Class Members that Plaintiffs' counsel will apply to the Court for an award of fees and expenses.

The form of notice proposed complies with the requirements of Fed. R. Civ. P. 23 (c)(2), and due process.  *See Smith v. Questar Capital Corp.*, 2015 WL 1963019, at *8 (D. Minn. Apr. 30, 2015); *Prater*, 2015 WL 4385682, at *2; *Claxton*, 2015 WL 3648776, at *6-7; *Roberts v. Source for Pub. Data, LP*, 2010 WL 2195523, at *3 (W.D. Mo. May 28, 2010).

The notice is accurate and informs Settlement Class Members of the material terms of the settlement and their rights pertaining to it.  The Court should therefore approve the proposed Notice and direct that Notice be disseminated as proposed by the parties.

<u>**CONCLUSION**</u>

For the reasons stated above, Plaintiffs request that the Court:  (1) grant Plaintiffs leave to file their Amended Consolidated Class Action Complaint; (2) preliminarily approve the parties' proposed class action settlement; (3) provisionally certify a Rule 23(b)(3) class for settlement purposes only; (4) approve the proposed Notice and direct that it should issue; (5) set the date and time of a fairness hearing; and (6) grant such other relief as the Court deems necessary and appropriate.

Dated: December 9, 2015

Respectfully submitted,

  /s/ Scott Kamber
Scott A. Kamber (SK-5794,SDNY)
KamberLaw LLC
100 Wall Street 23rd floor
New York, NY 10005
P. (212) 920-3072
F. (212) 202-6364
skamber@kamberlaw.com

Deborah Kravitz, #275661CA
KamberLaw LLP
401 Center St., Suite 111
Healdsburg, CA
P. (707) 820-4247
F. (212) 202-6364
dkravitz@kamberlaw.com

*Interim Class Counsel and Chair of the Plaintiffs' Executive Committee*

  _/s/ John Simon_____
The Simon Law Firm, P.C.
John G. Simon, #35231MO
800 Market Street, 17th FL
St. Louis, Missouri 63101
P. (314) 241-2929
F. (314) 241-2029
jsimon@simonlawpc.com

*Liaison Counsel and Member Plaintiffs' Executive
Committee*


Gray, Ritter & Graham, P.C.
Don M. Downing #30405MO
701 Market Street, Suite 800
St. Louis, MO 63101-1826
P. (314) 241-5620, ext. 2006
F. (314) 241-4140
ddowning@grgpc.com

Bursor & Fisher, P.A.
Joseph I. Marchese
Frederick J. Klorczyk, III
888 Seventh Ave.
New York, NY 10019
P. 646-837-7410
F. 212-989-9163
jmarchese@bursor.com
fklorczyk@bursor.com

Steelman, Gaunt & Horsefield
David Steelman, #27334MO
901 N Pine St
Rolla, MO 6540
P. (573) 341-8336
F. (573) 341.8548
dsteelman@steelmanandgaunt.com

*Members of Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on December 9, 2015 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

By:  _/s/ *John Simon*_____
Counsel for Plaintiffs