# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE BLUE BUFFALO COMPANY, LTD. MARKETING AND SALES PRACTICES LITIGATION | Case No. 14-md-02562-RWS<br><br>**STIPULATION OF SETTLEMENT** |

This Stipulation of Settlement (the "Settlement Agreement") is made by and among Alexia Keil, Nick Hutchison, Rachael D. Stone, Maja Mackenzie, Jonathan Fisher, David Delre, Beth Cox, Lori Canale, and Derek McCusker (the "Class Representatives" or "Plaintiffs"), on behalf of themselves and the Settlement Class (defined below), on the one hand, and Blue Buffalo Company, Ltd. ("Blue Buffalo" or "Defendant"), on the other hand, subject to and conditioned upon Court approval of the terms and conditions hereof.

## RECITALS

A.   On October 17, 2014, the United States Judicial Panel on Multidistrict Litigation ordered that the Class Representatives' respective complaints be centralized in the Eastern District of Missouri. *See* 10/17/2014 Transfer Order [Dkt. No. 1].

B.   On January 30, 2015, Plaintiffs filed their Consolidated Class Action Complaint ("Compl.") asserting claims against Blue Buffalo under Magnuson-Moss Warranty Act, Missouri Merchandising Practices Act, New York General Business Law § 349 (New York Deceptive Trade Practices Act), New York General Business Law § 350 (New York False Advertising Law), California Civil Code § 1750 *et seq.* (Consumers Legal Remedies Act or "CLRA"), California Business and Professions Code § 17200 *et seq.* (Unfair Competition Law or "UCL"), California Business and Professions Code § 17500 *et seq.* (False Advertising Law or "FAL"), New Jersey Consumer Fraud Act, New Jersey Truth-In-Consumer Contract, Warranty and Notice Act, Illinois Unfair Practices Act, Florida's Deceptive and Unfair Trade Practices Act,

Ohio Consumer Sales Practices Act, and for Breach of Express Warranty, Breach of Implied

Warranty of Merchantability, and Unjust Enrichment.  *See* Dkt. No. 36.

C.      In connection with this Settlement, Plaintiffs will, with leave of Court, file an

Amended Consolidated Complaint, and Blue Buffalo does not object to the filing of an Amended

Consolidated Complaint.

D.      Blue Buffalo answered the initial Consolidated Complaint on March 20, 2015.

E.      The Class Representatives allege in the Action, *inter alia*, that Blue Buffalo

breached its "True Blue Promise."  The True Blue Promise assures consumers that Blue Buffalo

Products contain only the finest natural ingredients with "NO Chicken or Poultry By-Product

Meals," "NO Corn, Wheat or Soy," and "NO Artificial Preservatives, Colors or Flavors."

Compl. ¶ 3.  This "promise" appears on all Blue Buffalo Products.  *Id.* ¶ 4.  Plaintiffs further

allege that, contrary to the True Blue Promise, the Blue Buffalo Products did, in fact, contain

significant amounts of chicken/poultry by-product meal, corn, rice, grains, soy, and/or artificial

ingredients.

F.      Blue Buffalo denies the material allegations of the Consolidated Class Action

Complaint and any and all liability with respect to all facts and claims alleged therein, and

further denies that any of the Settlement Class Members or anyone has suffered any harm or

damage or is entitled to any monetary or relief whatsoever in connection with the Action.

However, as a result of discovery conducted in another lawsuit, Blue Buffalo recently learned

that, for a period of time ending in May 2014, in violation of Blue Buffalo's procurement

contracts and ingredient specifications, a major supplier of ingredients to Blue Buffalo and many

other pet food companies sent mislabeled ingredients to manufacturing facilities that produce

certain Blue Buffalo pet food products.  As a result of this misconduct, which was not previously

known to or detected by Blue Buffalo or, to Blue Buffalo's knowledge, by any other customer of this supplier, some Blue Buffalo pet food products manufactured using the mislabeled ingredients contained poultry by-product meal. Based on this information, on June 12, 2015, Blue Buffalo filed a third party complaint in this Action against Wilbur-Ellis Company ("Wilbur-Ellis") and Diversified Ingredients, Inc. ("Diversified"), seeking indemnification and/or contribution for any liability that Blue Buffalo may have on account of these actions.

G. Class Counsel (defined below) represents that it conducted an examination and investigation of the facts and law relating to the matters in this Action, including, but not limited to, engaging in discovery, review and analysis of over 140,000 of Blue Buffalo's, and relevant third parties' (including suppliers and retailers), documents and data, conducting a damage analysis, and independent testing of the Blue Buffalo Products (defined below). Class Counsel also represents that it evaluated the merits of the Parties' contentions and evaluated this Settlement, as it affects all parties, including Settlement Class Members. The Class Representatives and Class Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, represent that they are satisfied that the terms and conditions of this Settlement are fair, reasonable, and adequate, and that this Settlement is in the best interest of the Settlement Class Members (defined below).

H. Blue Buffalo, while disclaiming all liability with respect to all claims, considers it desirable to resolve the Action on the terms stated herein in order to avoid further expense, inconvenience and burden and, therefore, has determined that this Settlement on the terms set forth herein is in Blue Buffalo's best interests.

I. This Settlement Agreement reflects a compromise between the Parties and shall in no event be construed as or be deemed an admission or concession by any party of the truth of

any allegation or the validity of any purported claim or defense asserted in any of the pleadings in the Action, or of any fault on the part of Blue Buffalo, and all such allegations expressly are denied.

J.      Substantial settlement negotiations have taken place between the Parties, including a day-long mediation session on October 26, 2015 conducted with the assistance of the Honorable Wayne R. Andersen in Chicago, Illinois, and subsequent settlement communications between the Parties, also involving the mediator.  As a result, this Settlement Agreement has been reached, subject to the Court approval process set forth herein.

K.      In consideration of the covenants and agreements set forth herein, and of the releases and dismissals of claims as described below, and other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged by each of the Parties, the Class Representatives, on behalf of themselves and the Settlement Class Members, and Blue Buffalo agree to the Settlement described herein, subject to Court approval, under the following terms and conditions.

## 1.  DEFINITIONS

1.1      "Action" means Multi-District Litigation No. 2562 (*In re Blue Buffalo Marketing & Sales Practices Litigation*, 4:14-MD-2562 (E.D. Mo.)) ("MDL 2562").  MDL 2562 includes the Consolidated Class Action Complaint (Dkt. No. 36) and any amendments thereto, and all individual actions transferred to, and coordinated with MDL 2562 by the Judicial Panel on Multi-District Litigation ("JPML") (collectively, the "Individual Actions"), specifically:

- *Delre v. Blue Buffalo Company, Ltd.*, 3:14-00768 (D. Conn)
- *Renna v. Blue Buffalo Company, Ltd.*, 3:14-00833 (D. Conn.)
- *MacKenzie v. Blue Buffalo Company, Ltd.*, 9:14-80634 (S.D. Fla.)
- *Stone v. Blue Buffalo Company, Ltd.*, 3:13-cv-00520 (S.D. Ill.)
- *Keil v. Blue Buffalo Company, Ltd.*, 4:14-00880 (E.D. Mo.)

- *Hutchison, et al. v. Blue Buffalo Company, Ltd.*, 4:14-01070 (E.D. Mo.)
- *Andacky, et al. v. Blue Buffalo Company, Ltd.*, 2:14-02938 (E.D.N.Y.)
- *Fisher v. The Blue Buffalo Company, Ltd.*, 14-05937 (C.D. Cal.)
- *Teperson v. The Blue Buffalo Company, Ltd. et al*, 14-01682 (S.D. Cal.)
- *Cox v. Blue Buffalo Co., Ltd.*, 14-00435 (S.D. Ohio)
- *Douglas v. Blue Buffalo Company, Ltd.*, 15-02891 (E.D. La.)
- *Lyman v. Blue Buffalo Company, Ltd.*, 15-02870 (D.S.C.)
- *Jacobs v. Blue Buffalo Pet Products, Inc.*, 16-13417 (D. Mass.)

Any action filed after the date of this Settlement Agreement that is transferred by the JPML to MDL 2562 shall be deemed to be included within the definition of Individual Actions.

1.2     "Blue Buffalo Products" means the products set forth in Exhibit 1.

1.3     "Claim" has the meaning set forth at paragraph 2.7 below.

1.4     "Claim Form" means the document to be submitted by Settlement Class Members seeking compensation pursuant to this Settlement Agreement.  The Claim Form will be available online at the Settlement Website (defined at paragraph 1.28 below) and the contents of the Claim Form will be approved by the Court in connection with the Court-Ordered Allocation Plan (defined below).

1.5     "Claimant" means a Settlement Class Member who submits a claim as described in Section II of this Settlement Agreement.

1.6     "Class Counsel" means the law firm of KamberLaw LLC.

1.7      "Class Representatives" means Plaintiffs Alexia Keil, Nick Hutchison, Rachael D. Stone, Maja Mackenzie, Jonathan Fisher, David Delre, Beth Cox, Lori Canale, and Derek McCusker.

1.8     "Court" means the United States District Court, Eastern District of Missouri.

1.9     "Defendant's Counsel" means the law firms of Patterson Belknap Webb & Tyler LLP; Paul, Weiss, Rifkind, Wharton & Garrison LLP; and Carmody MacDonald P.C.

1.10 "District Court Final Approval Date" means the day on which the Court's Settlement Approval Order and Final Judgment (defined at paragraph 1.24 below) is entered.

1.11 "Fee and Expense Award" means the amount awarded to Class Counsel by the Court for attorneys' fees, costs, and expenses, which shall be distributed by Class Counsel, with the advice and consent of Supporting Counsel (defined at paragraph 1.30 below), in a manner consistent with counsel's contribution to the benefit obtained for the Class.

1.12 "Effective Date" means the fifth business day after the last of the following dates:

    a. Blue Buffalo's Counsel, Blue Buffalo, and Class Counsel have executed this Stipulation;

    b. The Court has entered the Final Approval Order; and

    c. The Final Approval Order has become a final, non-appealable judgment approving the Settlement in all respects and is no longer subject to review, rehearing, appeal, petition for allowance of appeal, petition for certiorari, or other review of any kind.

1.13 "Incentive Award" means any award sought by application to and approved by the Court that is payable to the Class Representatives separate and apart from the Cash Settlement Fund, which shall be distributed by Class Counsel to the Class Representatives.

1.14 "Media Plan" means a proper notice plan, substantially as described in Exhibit 2 hereto (Declaration of Jeanne C. Finegan), developed by the Settlement Administrator (defined at paragraph 1.23 below) to expose a majority percentage of the Settlement Class to the Notice and to command the Settlement Class Members' attention when the Publication Notice appears on the internet or in printed media.

1.15    "Notice and Other Administrative Costs" means all costs and expenses actually incurred by the Settlement Administrator in the publication of Class Notice, establishment of the Settlement Website and the processing, handling, reviewing, and paying of claims made by Claimants, which have been estimated by the Settlement Administrator to be $925,000.

1.16    "Notice Date" means the date upon which notice is initially sent.

1.17    "Parties" means Alexia Keil, Nick Hutchison, Rachael D. Stone, Maja Mackenzie, Jonathan Fisher, David Delre, Beth Cox, Lori Canale, Derek McCusker, and Blue Buffalo Company, Ltd.

1.18    "Preliminary Approval" means that the Court has entered an order preliminarily approving the terms and conditions of this Settlement Agreement, including the manner of providing and content of notice to Settlement Class Members.

1.19    "Preliminary Approval Date" means the date on which the Court enters an Order granting Preliminary Approval.

1.20    "Proof of Purchase" means acceptable documentation that provides proof of the purchase of Blue Buffalo Products.  Such acceptable documentation will consist of an original receipt from a retailer, print out from a loyalty program, or other legitimate, documentary proof showing payment to a retailer for Blue Buffalo Products that was not used as proof for any other claim.

1.21    "Publication Notice" means the proposed short form notice, substantially in the form as that attached hereto and made a part hereof as Exhibit 3, to be approved by the Court and to be published in accordance with Section 4 of this Stipulation.

1.22    "Released Persons" means Blue Buffalo; all of Blue Buffalo's past and present respective parents, subsidiaries, divisions, affiliates, persons and entities directly or indirectly

under its or their control in the past or in the present; Blue Buffalo's respective assignors, predecessors, successors, and assigns; and all past or present partners, shareholders, managers, members, directors, officers, employees, agents, attorneys, insurers, accountants, and representatives of any and all of the foregoing.

1.23    "Settlement Administrator" means Heffler Claims Group and its successors and assigns.

1.24    "Settlement Approval Order and Final Judgment" means an order and judgment issued and entered by the Court, approving this Settlement Agreement as binding upon the Parties and the Settlement Class Members and dismissing the claims against Blue Buffalo with prejudice, and setting the amount for an award of attorneys' fees.  Class Counsel represents that it will not apply for attorneys' fees that exceed one-quarter of the total $32 million value of the Settlement Fund as defined in paragraph 1.27 below, exclusive of any interest accumulated, in that fund.  Class Counsel may also seek an award of costs and expenses to be paid from the Settlement Fund.  The Settlement Approval Order and Final Judgment shall constitute a judgment within the meaning and for purposes of Rule 54 of the Federal Rules of Civil Procedure.  The Parties jointly shall request the Court to enter the proposed Settlement Approval Order and Final Judgment.

1.25    "Settlement Class Members" or "Settlement Class" means:

> All residents of the United States of America who, from May 7 2008 through the Preliminary Approval Date, purchased any of the Blue Buffalo Products.  Excluded from this definition are the Released Persons, the Court, and its personnel.  Settlement Class Members who exclude themselves from the Settlement, pursuant to the procedures set forth in Section V of the Settlement Agreement, shall no longer thereafter be Settlement Class Members and shall not be bound by this Settlement Agreement and shall not be eligible to make a claim for any benefit under the terms of this Settlement Agreement or object thereto.

1.26    "Settlement Class Period" means the period of time from May 7, 2008 through the

Preliminary Approval Date.

1.27    "Settlement Fund" means the total cash commitment of Blue Buffalo for purposes

of this settlement, as described in Section 2 of this Settlement Agreement, with a total value of

thirty two million dollars ($32,000,000), paid by Blue Buffalo for purposes of effectuating the

settlement of this Action, the payment and disposition of which is subject to the provisions of

this Settlement Agreement, including paragraphs 2.2, 2.4, 2.5, and 5.6, below.

1.28    "Settlement Website" means a website operated and maintained by the Settlement

Administrator solely for purposes of making available to the Settlement Class Members the

documents, information, and online claims submission process referenced in paragraphs 2.6

through 2.10 below.

1.29    "Settlement Notice" means the proposed long form notice substantially in the

form as that attached hereto and made a part hereof as Exhibit 4, to be approved by the Court and

to be disseminated in accordance with Section 4 of this Stipulation.

1.30    "Supporting Counsel" means The Simon Law Firm, P.C., as Liaison Counsel, and

the remaining members of the Plaintiffs' Executive Committee, comprised of the law firms of

Gray Ritter & Graham, P.C., Steelman, Gaunt & Horsefield, and Bursor & Fisher, P.A.

1.31    "Valid Claim Form" means a Claim Form submitted by a Settlement Class

Member that (a) is submitted in accordance with the directions on the Claim Form and the

provisions of the Settlement Agreement; (b) is accurately, fully and truthfully completed and

executed, with all of the information requested in the Claim Form by a Settlement Class Member

on the initial submission; (c) is signed physically or by e-signature by a Settlement Class

Member or Person with authority to sign for and bind a Settlement Class Member, subject to

penalty of perjury; (d) is returned via mail and post-marked by the Claims Deadline or received

by mail or on-line submission by midnight of the Claims Deadline Eastern Standard Time and is

determined to be valid by the Settlement Administration.

    1.32    As used herein, the plural of any defined term includes the singular thereof and

the singular of any defined term includes the plural thereof, as the case may be.

## 2. SETTLEMENT CONSIDERATION

    2.1.    Injunctive Relief.  Within sixty (60) calendar days after entry of the

Final Approval Order, Blue Buffalo shall ensure that it no longer represents to the public that the

Blue Buffalo Products do not include chicken or poultry by-product meal unless or until:

        (i)    All specifications for Blue Buffalo Products have been reviewed for the purpose of ensuring that they are consistent with all packaging claims found on the product and representations regarding the products found on the Blue Buffalo website; and

        (ii)    Blue Buffalo has reviewed its supplier relationships and has instituted practices designed to ensure that all materials provided by its suppliers comply with the applicable product specifications

    2.2.    Payments from the Settlement Fund. The Settlement Fund shall be applied to pay,

in the following order:

        (i)    all costs and payments associated with the Media Plan and administration of the Settlement Fund, including all payments to the Settlement Administrator, as described in paragraph 4.5 below;

        (ii)    any necessary taxes and tax expenses on the Settlement Fund;

        (iii)    any award of attorneys' fees and costs made by the Court to Class Counsel

under the Settlement Agreement, described in paragraph 3.1 below; and

(iv)   Valid Claim Forms for cash benefits submitted by Settlement Class
Members pursuant to paragraph 2.7 below.

2.3.   Incentive Awards.  Blue Buffalo agrees to separately provide each Class Representative with an Incentive Award as ordered by the Court, but in no event to exceed $1,500 per Class Representative, in accordance with paragraph 3.2 below.

2.4.   Total Financial Commitment.  Blue Buffalo's total financial commitment and obligation under this Settlement Agreement, including but not limited to paragraph 3.1, shall not exceed $32,000,000, exclusive of any Incentive Awards to the Class Representatives awarded by the Court and paid by Blue Buffalo in accordance with paragraphs 2.3 and 3.2.

2.5.   Schedule of Payments into Settlement Fund.  Within thirty (30) days of the Preliminary Approval Order, Blue Buffalo shall deposit an amount equal to $32,000,000 into an interest-bearing escrow account.  Such account and the terms of the escrow shall be acceptable to Class Counsel.  The interest accumulated on these monies shall be included in the Settlement Fund and be made available as payment to Settlement Class Members upon granting Final Approval of this settlement.  In the event Final Approval is not granted, the Settlement Fund and all accumulated interest shall revert to Blue Buffalo.

2.6.   Claims Process.  Each Settlement Class Member shall be entitled to submit a claim for a cash payment as set forth below.  The period for submitting such claims shall commence upon the Notice Date and continue for no less than 90 days (the "Notice Period").  The Settlement Administrator shall, subject to the supervision of the Court, administer the relief provided by this Stipulation by processing Claim Forms in a rational, responsive, cost effective and timely manner.  The Settlement Administrator shall maintain reasonably detailed records of

its activities under this Stipulation.  The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices, and such records will be made available to Class Counsel and Defendant's Counsel, the Parties and their representatives promptly upon request.  The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  The Settlement Administrator shall promptly provide Class Counsel and Defendant's Counsel with information concerning Notice, administration and implementation of the Stipulation.  Should the Court request or should it be reasonably advisable to do so, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator.  Without limiting the foregoing, the Settlement Administrator shall:

    i.    upon request, promptly forward to Defendant's Counsel and Class Counsel, copies of all documents and other materials relating to the administration of the Stipulation;

    ii.    receive requests from Class Members to exclude themselves from the Settlement Class and promptly provide to Class Counsel and Defendant's Counsel a copy thereof upon receipt.  If the Settlement Administrator receives any requests for exclusion from Class Members after the Exclusion Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

    iii.    provide reports and summaries, as requested, to Class Counsel and Defendant's Counsel, including without limitation, reports regarding the number of Claim Forms received and the identity of the Settlement Class Members;

iv.    employ reasonable procedures to screen Claims Forms for waste, fraud, and

abuse and shall reject a Claim Form, or any part of a claim for a payment

reflected therein, where the Settlement Administrator determines that there is

evidence of fraud.  The Settlement Administrator will review each Claim

Form based upon the initial submission by a Settlement Class Member and

ensure that each is complete, properly substantiated and, based on the

substantiation, determine the appropriate benefit to be paid, if any, in

accordance with the terms of this Agreement.  The Settlement Administrator

is empowered to pay legitimate and valid claims only.

v.    prepare a declaration attesting to compliance with the Class Notice

requirements set forth below and identifying all opt-outs and/or objectors.

Such declaration shall be provided to Defendant's Counsel and Class Counsel

for filing with the Court no later than fourteen (14) days prior to the Final

Approval Hearing.

vi.    issue Benefit Checks. All Benefit Checks issued pursuant to this

Stipulation shall bear in the legend that they expire if not negotiated within

ninety (90) days of their date of issue.  To the extent that a Benefit Check

issued to a Settlement Class Member is not cashed within ninety (90) days

after the date of issue, the check will be void.

All Claims must be submitted with a Claim Form and received by the Settlement

Administrator or postmarked by the Claims Deadline.  The Claims Deadline shall be clearly set

forth in the Class Notice, the Settlement Website, and on the Claim Form.  Settlement Class

Members who fail to submit a Claim Form by the Claims Deadline shall not be eligible for an Award.

The Claim Form will be available on the Settlement Website. The Claim Form will be mailed to Settlement Class Members upon request by calling or writing to the Settlement Administrator. Settlement Class Members may submit their completed and signed Claim Forms to the Settlement Administrator by such means as proscribed by the Notice on or before the Claims Deadline. Such Claim Form shall be submitted to the Court for approval substantially in the form as that attached hereto and made a part hereof as Exhibit 5.

After all claims have been processed, the Settlement Administrator will provide Defendant's Counsel and Class Counsel with the approved claimants list, including the distribution calculations for each claim, and details regarding any deficient Claim Forms and all claims marked for denial. The Settlement Administrator will maintain a database of filed claims, which will include all relevant information captured from the Claim Form.

2.7.    Claims. Each Settlement Class Member may file a claim that will, if valid, entitle the Class Member to a cash payment. All available monies in the Settlement Fund will be paid out to Class Members with no possibility of reversion to Blue Buffalo. Subject to potential adjustment as described in Paragraph 2.8 below, monies will be distributed to Class Members pro rata based on the amounts apportioned to each Class Member by the following claims process subject to the pro rata adjustments set forth in Paragraph 2.8:

> Option 1. Settlement Class Members who do not provide valid Proof of Purchase, and complete the Claim Form confirming under penalty of perjury (i) that they purchased one or more Blue Buffalo Products during the Settlement Class Period; (ii) the place of purchase; (iii) the identification of the Blue Buffalo Product; and (iv) the total sum of money spent by them on Blue Buffalo Products during the Settlement Class Period, shall receive, for each $50 in purchases, $5.00 in the form of a cash payment; provided, however, that recovery under this Option 1 may not exceed $10, and provided further that a Settlement Class Member who

confirms that they purchased one or more Blue Buffalo Products but did not spend at least $50 on such purchases will nonetheless be entitled to a minimum recovery of a $5.00 cash payment;

or

Option 2.  Settlement Class Members who complete the Claim Form and provide valid Proof of Purchase showing their actual purchase(s) of Blue Buffalo Products during the Settlement Class Period shall receive, for each $50 in purchases, $5.00 in the form of a cash payment; provided, however, that recovery under this Option 2 may not exceed $200.

A Settlement Class Member is eligible for one claim submission per Household.  A Household shall mean all persons who share a common address, means of payment or loyalty card.  The Settlement Administrator shall pay all fees associated with the administration and issuance of checks for cash payments to Settlement Class Members from the Settlement Fund.

2.8.    Pro Rata Adjustments.  If the total value of claims submitted exceeds or falls short of the balance remaining in the Settlement Fund, then, subject to Paragraph 2.9 below, the compensation provided to each Settlement Class Member shall be reduced or increased pro rata.  Accordingly, cash payments may be in increments greater or less than $5.00, depending upon the actual number and nature of claims submitted.  If cash payments are made in increments greater than $5.00, the maximum recoveries under Option 1 and Option 2 will be increased pro rata.

2.9.    Review of Claims.  The Settlement Administrator shall be responsible for reviewing all claims to determine their validity.  The Settlement Administrator shall reject any claim that does not comply in any material respect with the instructions on the Claim Form or the terms of paragraph 2.7, above, or is submitted after the close of the claim period set by the Court ("Claim Period Close Date").  The Parties may review any claims found to be invalid by the Settlement Administrator and bring any disagreement to the attention of the Settlement Administrator.  If the Parties both agree that a claim is valid, the claim shall be paid irrespective

of the determination made by the Settlement Administrator.  If either Class Counsel or Defense

Counsel shall believe a claim is valid while the other does not, such disagreements shall be

resolved by the Hon. Wayne R. Andersen.  All further mediation fees shall be paid from the

Settlement Fund.

2.10.   Cash Benefit – Uncleared Checks.  Those Settlement Class Members whose cash

benefit checks are not cleared within ninety (90) days after issuance shall be ineligible to receive

a cash settlement benefit and Blue Buffalo shall have no further obligation to make any payment

pursuant to this Settlement Agreement or otherwise to such Settlement Class Members.  All

unpaid funds from uncleared checks shall remain in the Settlement Fund pending further order of

the Court.  If any unpaid funds remain in the Settlement Fund, Class Counsel shall make an

application to the Court to seek approval for a proposed disposition of the unpaid funds. Such

proposed distribution may not include any additional payment to Counsel for fees or expenses.

2.11.   Notice to Attorneys General**.**  The Settlement Administrator shall provide the

notices to the appropriate state and federal officials as required by 28 U.S.C. § 1715 *et seq*. under

the direction and supervision of Defendant's Counsel.

### 3.  CLASS COUNSEL ATTORNEYS' FEES AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

3.1.   Attorneys' Fees, Costs and Expenses.  Class Counsel will petition the Court for an

award of attorneys' fees, costs and expenses in an amount not to exceed one quarter of the total

$32 million value of the Settlement Fund, exclusive of interest accumulated and, with the advice

and consent of Supporting Counsel, distribute such fees, costs and expenses in a manner

consistent with counsel's contribution to the benefit obtained for the Class.  Such fees, costs and

expenses, if approved by the Court, shall be payable within 30 days following the District

Court's final order approving the settlement and fee award, or such later date as required by the

Court, subject to the provision of reasonable and adequate security, and Class Counsel providing all payment routing information and the tax I.D. numbers for Class Counsel. The Fee and Expense Award shall be the total obligation of Blue Buffalo to pay for attorneys' fees, costs and/or expenses of any kind (including, but not limited to, travel, filing fees, court reporter and videographer expenses, expert fees and costs, and document review and production costs related to this Action or any claims asserted in the Action). Any disputes regarding the distribution of fees or the reasonableness or adequacy of the security to be provided by counsel shall be mediated by the Hon. Wayne R. Andersen and decided by the Court. Notwithstanding the foregoing, if the Final Settlement Approval Order and Final Judgment or any part of it is vacated, overturned, reversed, or rendered void or unenforceable as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, then Class Counsel shall, within sixty (60) days, repay to the Settlement Fund the full amount of the attorneys' fees and costs paid to Class Counsel. In such event, Class Counsel and Supporting Counsel shall be liable for the return of such payments they each received, but none shall be liable for amounts received by other counsel. Class Counsel and Supporting Counsel agree that the denial of, reduction or downward modification of, or failure to grant any application for attorneys' fees, costs, or expenses shall not constitute grounds for modification or termination of this Settlement Agreement, including the releases provided for herein.

      3.2.    **Incentive Awards.** Class Counsel will petition the Court for approval of Incentive Awards payable to the Class Representatives in amounts not to exceed $1,500.00 each. Blue Buffalo shall pay such award by wire transfer or check to Class Counsel within fourteen (14) calendar days after the Final Settlement Approval Date, subject to the prior delivery to Blue Buffalo of tax I.D. number(s) for each individual receiving such award. Class Representatives

agree that the denial of, reduction or downward modification of, or failure to grant any application for Incentive Awards shall not constitute grounds for modification or termination of this Settlement Agreement, including the releases provided for herein.

## 4. NOTICE TO CLASS AND ADMINISTRATION OF SETTLEMENT

4.1.     Class Notice.  The Class Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clauses), and any other applicable law, and shall otherwise be in the manner and form approved by the Court.  Any disputes regarding Class Notice will be mediated by the Hon. Wayne R. Andersen and resolved by the Court.

4.2.     General Notice Terms.  The Class Notice shall:

a.     inform Settlement Class Members that, if they do not exclude themselves from the Class, they may be eligible to receive the relief under the proposed settlement;

b.     contain a short, plain statement of the background of the Action, the Class certification and the proposed settlement;

c.     describe the proposed settlement relief outlined in this Stipulation; and

d.     state that any relief to Settlement Class Members is contingent upon the Court's final approval of the proposed settlement.

4.3.     Notice of Exclusion and Objection Rights.  The Class Notice shall inform Settlement Class Members of their rights to exclude themselves from the Class or object to the proposed settlement, as described in paragraphs 5.3 and 5.4 below.

4.4.     Time and Manner of Notice.  Class Notice shall be provided as set forth in the Media Plan; media delivery of Class Notice shall be completed within sixty (60) days after the

Preliminary Approval Date.  In addition, Blue Buffalo has in its possession approximately 1.8 million e-mail addresses of potential Class Members.  The Claims Administrator shall send short form notice or a link to the Settlement Website to all such e-mail addresses within thirty (30) days after the Preliminary Approval Date.

4.5.    Responsibilities of Settlement Administrator.  The Settlement Administrator (including subcontractors) shall help implement the terms of the proposed Settlement Agreement.  The Settlement Administrator shall be responsible for administrative tasks, including, without limitation, (a) notifying the appropriate state and federal officials about the settlement, (b) arranging, as set forth in the Media Plan, for distribution of Class Notice (in the form approved by the Court) and Claim Forms (in a form ordered by the Court) to Settlement Class Members, (c) answering inquiries from Settlement Class Members and/or forwarding such written inquiries to Class Counsel or their designee, (d) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion to the settlement, (e) establishing the Settlement Website that posts notices, Claim Forms and other related documents, (f) receiving and processing claims and distributing cash payments to Settlement Class Members, and (g) otherwise assisting with implementation and administration of the Settlement Agreement terms.  The actual costs and expenses of the Settlement Administrator will be paid from the Settlement Fund.

4.6.    Performance Standards of Settlement Administrator.  The contract with the Settlement Administrator shall obligate the Settlement Administrator to abide by the following performance standards:

a.    The Settlement Administrator shall accurately and neutrally describe, and shall train and instruct its employees and agents to accurately and

objectively describe, the provisions of this Stipulation in communications with Settlement Class Members;

b.     The Settlement Administrator shall provide prompt, accurate and objective responses to inquiries from Class Counsel or its designee, Defendant and/or Defendant's Counsel or its designee, and shall periodically report on claims, objectors, exclusion requests, or such other information that may be reasonably requested by Defendant's Counsel or Class Counsel; and

c.     The Settlement Administrator shall seek clarification, instruction or authorization for performance of its duties and expenditure or disposition of cash from both Class Counsel and its designee and from Defendant and/or Defendant's Counsel or its designee.

## 5. CLASS SETTLEMENT PROCEDURES

5.1.     Settlement Approval. On or about December 14, 2015, the Class Representatives shall move for a Conditional Class Certification and Preliminary Approval Order, conditionally certifying the Settlement Class, preliminarily approving the terms and conditions of this Settlement Agreement as fair, reasonable, and adequate, and in the best interests of the Settlement Class Members, approving notice to the Settlement Class Members as described in Section 4 above, and setting a hearing to consider final approval of the Settlement and any objections thereto. Blue Buffalo may join in such motion in whole or in part and shall be provided such papers no less than four days prior to the papers being submitted to the Court for consideration. Class Counsel intends to submit such papers to the Court for consideration on or about December 8, 2015.

5.2.    Settlement Approval Order and Final Judgment.  At or before the final fairness hearing, the Class Representatives shall move for entry of a Settlement Approval Order and Final Judgment consistent with the terms of this Agreement and the Preliminary Approval Order, granting final approval of this Settlement and holding this Settlement Agreement to be fair, reasonable, and adequate, and in the best interests of the Settlement Class Members, and binding (as of the Final Settlement Approval Date) on all Settlement Class Members who have not excluded themselves as provided below, and ordering that the Settlement relief be provided as set forth in this Settlement Agreement, ordering the releases as set forth in Section 6 below to be effective on the Final Settlement Approval Date, and entering judgment in the Action.

5.3.    Objections.  Any Settlement Class Member who intends to object to the Settlement must do so no later than ninety (90) calendar days after the Notice Date (the "Objection Deadline").  In order to object, the Settlement Class Member must file with the Court, and provide a copy to Class Counsel and Defendant's Counsel, a hand signed document that includes:

      a.    The name, address, telephone number, and, if available, the email address of the Person objecting, and if represented by counsel, of his/her counsel;

      b.    Specifically and in writing, all objections and grounds;

      c.    Whether he/she intends to appear at the Final Approval Hearing, either with or without counsel;

      d.    A statement sufficient to establish his/her membership in the Settlement Class, including all information required by the Claim Form;

      e.    A detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class actions submitted in any court,

whether state or federal, in the United States in the previous five (5) years. If the Settlement Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the Objection to this Settlement; and

    f.    The proposed order granting Preliminary Approval will provide that any Settlement Class Member wishing to object and/or appear who fails to follow the procedures set forth above may, in the discretion of the Court, be precluded from doing so.

    5.4.    Requests for Exclusion.  The Class Notice shall advise all Settlement Class Members of their right to be excluded from the Settlement.  If, within such time as is ordered by the Court and contained in the Class Notice, any Settlement Class Member wishes to be excluded from the Settlement, he or she must do so by timely mailing a valid opt-out notice, as described in the Class Notice.  Any Settlement Class Member who timely elects to opt out of the Settlement shall not be permitted to object to the Settlement.  Persons falling within the definition of the Settlement Class who validly and timely request exclusion from the Settlement effected by this Settlement Agreement, pursuant to the procedures set forth in this paragraph, shall not be Settlement Class Members, shall not be bound by this Settlement Agreement and shall not be eligible to make a claim for any benefit under the terms of this Settlement Agreement.

    At least seven (7) calendar days prior to the final approval hearing, Class Counsel shall prepare or cause the Settlement Administrator to prepare a list of the persons who have excluded

themselves in a valid and timely manner from the Settlement Class (the "Opt-Outs"), and Class

Counsel shall file that list with the Court.

5.5.    Stay of the Action.  The Parties shall request that the Court, in connection with

Preliminary Approval, issue an immediate stay of the Action.

5.6.    Effect If Settlement Not Approved.  This Settlement Agreement was entered into

only for purposes of settlement, subject to and without waiver of the Parties' respective rights.  If

the Court does not enter the order granting Preliminary Approval or does not grant final

approval, or if the Final Settlement Approval Date does not occur, Class Counsel and

Defendant's Counsel shall endeavor, consistent with the Settlement Agreement, to cure any

defect identified by the Court; provided, however, that Blue Buffalo shall not be obligated to

accept such cure if it increases the cost or burden of the Settlement Agreement to Blue Buffalo or

any of the other Released Persons or reduces or otherwise affects the scope of the releases

provided by this Settlement Agreement.  In the event that the Settlement Agreement is

terminated for any reason, final approval does not occur for any reason, or the Final Settlement

Approval Date does not occur, then no term or condition of the Settlement Agreement, or any

draft thereof, or any discussion, negotiation, documentation, or other part or aspect of the Parties'

settlement discussions shall have any effect, nor shall any such matter be admissible in evidence

for any purpose in the Action, or in any other proceeding, the Parties shall be restored to their

respective positions immediately preceding execution of this Settlement Agreement.  If the final

Settlement Approval Order and Final Judgment or any part of it is vacated, overturned, reversed,

or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or

otherwise terminated for any other reason, then within thirty (30) days, Class Counsel shall

return to Blue Buffalo all attorneys' fees, costs, and other payments received by Class Counsel

under the Settlement Agreement, as set forth in paragraph 3.1 above. The Parties agree that all drafts, discussions, negotiations, documentation, or other information prepared in relation to the Settlement Agreement and the Parties' settlement discussions shall be treated as strictly confidential and may not be disclosed to any person other than the Parties' counsel, insurers, accountants, auditors, and other related parties required to have notice of this Settlement Agreement pursuant to applicable state and federal law, including but not limited to laws governing publicly traded corporations. Blue Buffalo's rights with respect to class certification expressly are reserved and preserved.

## 6. RELEASES

6.1.    Release by Settlement Class Members. Effective as of the Final Settlement Approval Date, each and all of the Settlement Class Members (except any such person who has filed a proper and timely request for exclusion) shall release and forever discharge, and shall be forever barred from asserting, instituting, or maintaining against any or all of the Released Persons, any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, or liabilities whether legal, equitable, or otherwise, relating in any way to the marketing, advertising, or labeling of any of the Blue Buffalo Products at any time on or after May 7, 2008 and prior to Final Settlement Approval Date, that were asserted, or could have been asserted, in the Action (collectively, the "Claims"). With respect to the Claims released pursuant to this paragraph, each Settlement Class Member shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code section 1542 (and equivalent, comparable, or analogous provisions of the laws of the United States of America or any state or territory thereof, or of the common law or civil law). Section 1542 provides that:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Each and every term of this paragraph shall inure to the benefit of each and all of the Released Persons, and each and all of their respective successors and personal representatives, which persons and entities are intended to be beneficiaries of this paragraph.

6.2　Effectuation of Settlement.　None of the above releases include releases of claims or otherwise affects rights to enforce the terms of the Settlement Agreement.

6.3　No Admission of Liability.　This Settlement Agreement reflects, among other things, the compromise and settlement of disputed claims among the parties, and neither this Settlement Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this Settlement Agreement, are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, defense, or of any point of fact or law on the part of any party.　Blue Buffalo denies the material allegations of the complaint filed in this Action.　Neither this Settlement Agreement, nor the fact of settlement, nor the settlement proceedings, nor the settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by any or all of the Released Persons, or be offered or received in evidence as an admission, concession, presumption or inference of any wrongdoing or liability by any or all of the Released Persons in any proceeding, other than such proceedings as may be necessary to consummate, interpret or enforce this Settlement Agreement.　The Parties agree that Blue Buffalo's third party complaint for indemnification and contribution should be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

## 7. CERTIFICATION OF SETTLEMENT CLASS

7.1    The Parties agree, for settlement purposes only, that this Action shall be certified and proceed as a class action under Federal Rule of Civil Procedure 23(b)(3), with a class consisting of all Settlement Class Members, and with Alexia Keil, Nick Hutchison, Rachael D. Stone, Maja Mackenzie, Jonathan Fisher, David Delre, Beth Cox, Lori Canale, and Derek McCusker, as Class Representatives, and with Class Counsel as counsel for the Settlement Class Members.

7.2    Any certification of a conditional, preliminary or final settlement class pursuant to the terms of this Settlement shall not constitute, and shall not be construed as, an admission on the part of Blue Buffalo that this Action, or any other proposed or certified class action, is appropriate for trial class treatment pursuant to Federal Rule of Civil Procedure or any similar state or federal class action statute or rule.  This Settlement Agreement shall be without prejudice to the rights of Blue Buffalo to: (a) move to dismiss or stay this Action on any applicable basis; (b) oppose certification in this Action should this Settlement Agreement not be approved or implemented for any reason; or (c) oppose certification in any other proposed or certified class action.  Neither the fact of this settlement nor this Settlement Agreement shall be used in connection with efforts in any proceeding to seek certification of any claims asserted against Blue Buffalo.

## 8. MISCELLANEOUS PROVISIONS

8.1.    Change of Time Periods.  The time periods and/or dates described in this Settlement Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Class Counsel and Defendant's Counsel, without notice to Settlement Class Members.  The Parties reserve the right, by agreement and

subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Settlement Agreement.

8.2.    Time for Compliance.  If the date for performance of any act required by or under this Settlement Agreement falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Settlement Agreement.

8.3.    Governing Law.  This Settlement Agreement is intended to and shall be governed by the laws of the State of Missouri without giving effect to principles of conflicts of laws.

8.4.    Entire Agreement.  The terms and conditions set forth in this Settlement Agreement constitute the complete and exclusive statement of the agreement between the parties relating to the subject matter of this Settlement Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement.  The Parties further intend that this Settlement Agreement constitutes the complete and exclusive statement of its terms as between the parties, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving this Settlement Agreement.  Any modification of the Settlement Agreement must be in writing signed by Class Counsel and Blue Buffalo.

8.5.    Advice of Counsel.  The determination of the terms and the drafting of this Settlement Agreement have been by mutual agreement after negotiation, with consideration by and participation of all parties and their counsel.  The presumption found in California Civil Code section 1654 (and equivalent, comparable, or analogous provisions of the laws of the United States of America or any state or territory thereof, or of the common law or civil law) that

uncertainties in a contract are interpreted against the party causing an uncertainty to exist is waived by all parties.

8.6.     Binding Agreement.  This Settlement Agreement shall be binding upon and inure to the benefit of the respective heirs, successors, and assigns of the Parties, the Settlement Class Members and the other Released Persons.

8.7.     No Waiver.  The waiver by any party of any provision or breach of this Settlement Agreement shall not be deemed a waiver of any other provision or breach of this Settlement Agreement.

8.8.     Execution in Counterparts.  This Settlement Agreement shall become effective upon its execution by all of the undersigned.  The parties may execute this Settlement Agreement in counterparts, and execution of counterparts shall have the same force and effect as if all parties had signed the same instrument.  The parties further agree that signatures provided by portable document format (PDF) or other electronic transmission shall have the same force and effect as original signatures.

8.9.     Enforcement of this Settlement Agreement.  The Court shall retain jurisdiction, and shall have exclusive jurisdiction, to enforce, interpret, and implement this Settlement Agreement, including any alleged violation, and the terms of any order entered pursuant to this Settlement Agreement.  However, any dispute or disagreement between the Parties regarding this Agreement and its implementation for purposes of submission to the Court for Preliminary Approval, shall be mediated by the Hon. Wayne R. Andersen.

8.10.   Notices.  All notices to the Parties or counsel required by this Settlement Agreement shall be made in writing and communicated by email and mail to the following addresses:

If to the Class Representatives, Settlement Class Members, or Class Counsel:

Liaison Counsel:

John G. Simon
The Simon Law Firm, P.C,
800 Market St., Ste 1700
St. Louis, MO  63101
T:  1.314.241.2929
jsimon@simonlawpc.com


If to Blue Buffalo or Defendant's Counsel:

Steven A. Zalesin
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 336-2000
Facsimile:   (212) 336-2222
sazalesin@pbwt.com


The rest of this page intentionally left blank.

IN WITNESS HEREOF the undersigned, being duly authorized and intending to be legally bound hereby, have caused this Settlement Agreement to be executed on the dates shown below and agree that it shall take effect on the date it is executed by all of the undersigned.

**APPROVED AND AGREED:**

DATED: December 9, 2015 _____

Scott A. Kamber
KamberLaw LLC
*Interim Class Counsel*

DATED: December 9, 2015 _____

Steven A. Zalesin
PATTERSON BELKNAP WEBB & TYLER LLP
*Attorneys for Defendant Blue Buffalo Co., Ltd.*

DATED: December 9, 2015 _____

Larry Miller, General Counsel
Blue Buffalo Co., Ltd.

DATED: December 9, 2015 _____

John G. Simon
The Simon Law Firm, P.C.
*Liaison Counsel*

DATED: December 9, 2015 _____

Don M. Downing
Gray, Ritter & Graham, P.C

DATED: December 9, 2015 _____

Joseph I. Marchese
Bursor & Fisher, P.A.

IN WITNESS HEREOF the undersigned, being duly authorized and intending to be legally bound hereby, have caused this Settlement Agreement to be executed on the dates shown below and agree that it shall take effect on the date it is executed by all of the undersigned.

**APPROVED AND AGREED:**

DATED: December 9, 2015 _____

Scott A. Kamber
KamberLaw LLC
*Interim Class Counsel*

DATED: December 9, 2015 _____

Steven A. Zalesin
PATTERSON BELKNAP WEBB & TYLER LLP
*Attorneys for Defendant Blue Buffalo Co., Ltd.*

DATED: December 9, 2015 _____

Larry Miller, General Counsel
Blue Buffalo Co., Ltd.

DATED: December 9, 2015 _____

John G. Simon
The Simon Law Firm, P.C.
*Liaison Counsel*

DATED: December 9, 2015 _____

Don M. Downing
Gray, Ritter & Graham, P.C

DATED: December 9, 2015 _____

Joseph I. Marchese
Bursor & Fisher, P.A.

STIPULATION OF SETTLEMENT
CASE NO. 14-MD-02562-RWS

IN WITNESS HEREOF the undersigned, being duly authorized and intending to be legally bound hereby, have caused this Settlement Agreement to be executed on the dates shown below and agree that it shall take effect on the date it is executed by all of the undersigned.

**APPROVED AND AGREED:**

DATED: December 9, 2015     _____

                                 Scott A. Kamber
                                 KamberLaw LLC
                                 *Interim Class Counsel*

DATED: December 9, 2015     _____

                                 Steven A. Zalesin
                                 PATTERSON BELKNAP WEBB & TYLER LLP
                                 *Attorneys for Defendant Blue Buffalo Co., Ltd.*

DATED: December 9, 2015     _____

                                 Larry Miller, General Counsel
                                 Blue Buffalo Co., Ltd.

DATED: December 9, 2015     _____

                                 John G. Simon
                                 The Simon Law Firm, P.C.
                                 *Liaison Counsel*

DATED: December 9, 2015     _____

                                 Don M. Downing
                                 Gray, Ritter & Graham, P.C.

DATED: December 9, 2015     _____

                                 Joseph I. Marchese
                                 Bursor & Fisher, P.A.

IN WITNESS HEREOF the undersigned, being duly authorized and intending to be legally bound hereby, have caused this Settlement Agreement to be executed on the dates shown below and agree that it shall take effect on the date it is executed by all of the undersigned.

**APPROVED AND AGREED:**

DATED: December 9, 2015     _____

Scott A. Kamber
KamberLaw LLC
*Interim Class Counsel*

DATED: December 9, 2015     _____

Steven A. Zalesin
PATTERSON BELKNAP WEBB & TYLER LLP
*Attorneys for Defendant Blue Buffalo Co., Ltd.*

DATED: December 9, 2015     _____

Larry Miller, General Counsel
Blue Buffalo Co., Ltd.

DATED: December 9, 2015     _____

John G. Simon
The Simon Law Firm, P.C.
*Liaison Counsel*

DATED: December 9, 2015     _____

Don M. Downing
Gray, Ritter & Graham, P.C

DATED: December 9, 2015     _____

Joseph I. Marchese
Bursor & Fisher, P.A.

DATED: December 9, 2015

David Steelman
Steelman, Gaunt & Horsefield

*Executive Committee Members*

**EXHIBIT 1**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| IN RE BLUE BUFFALO COMPANY, LTD. MARKETING AND SALES PRACTICES LITIGATION | Case No. 14-md-02562-RWS<br><br>**Product List** |
|---|---|

| UPC | Product Name |
|---|---|
| **Dry Dog Food** | |
| 840243109746 | Basics Adult Grain Free Turkey 4 oz Sample |
| 859610002863 | Basics Adult Salmon 11 lb |
| 859610002870 | Basics Adult Salmon 24 lb |
| 859610002849 | Basics Adult Salmon 4 lb |
| 859610002825 | Basics Adult Turkey 11 lb |
| 859610002832 | Basics Adult Turkey 24 lb |
| 859610002801 | Basics Adult Turkey 4 lb |
| 840243100026 | Basics Grain Free Adult Duck 22 lb |
| 840243100002 | Basics Grain Free Adult Duck 4 lb |
| 840243100040 | Basics Grain Free Adult Lamb 11 lb |
| 840243100057 | Basics Grain Free Adult Lamb 22 lb |
| 840243100033 | Basics Grain Free Adult Lamb 4 lb |
| 840243105441 | Basics Grain Free Adult Salmon 11 lb |
| 840243105465 | Basics Grain Free Adult Salmon 22 lb |
| 840243105427 | Basics Grain Free Adult Salmon 4 lb |
| 840243100064 | Basics Grain Free Large Breed Adult Lamb 22 lb |
| 840243100088 | Basics Grain Free Small Breed Adult Lamb 11 lb |
| 840243100071 | Basics Grain Free Small Breed Adult Lamb 4 lb |
| 859610007523 | Basics Grain Free Turkey & Potato Recipe 11 lb |
| 859610007530 | Basics Grain Free Turkey & Potato Recipe 24 lb |
| 859610007509 | Basics Grain Free Turkey & Potato Recipe 4.5 lb |
| 859610005857 | Basics Healthy Weight Turkey & Potato Recipe 24 lb |
| 859610005833 | Basics Healthy Weight Turkey & Potato Recipe 4 lb |
| 859610005826 | Basics Large Breed Turkey & Potato 24 lb |
| 859610005765 | Basics Puppy Turkey & Potato 11 lb |
| 859610005772 | Basics Puppy Turkey & Potato 24 lb |
| 859610005741 | Basics Puppy Turkey & Potato 4 lb |
| 840243105434 | Basics Salmon 11 lb |
| 840243105458 | Basics Salmon 24 lb |
| 840243105410 | Basics Salmon 4 lb |

| UPC | Product Name |
|---|---|
| 859610006717 | Basics Senior Turkey & Potato Recipe 24 lb |
| 859610006687 | Basics Senior Turkey & Potato Recipe 4 lb |
| 859610005802 | Basics Small Breed Turkey & Potato 11 lb |
| 859610005789 | Basics Small Breed Turkey & Potato 4 lb |
| 840243105397 | Basics Turkey 11 lb |
| 840243105403 | Basics Turkey 24 lb |
| 840243105380 | Basics Turkey 4 lb |
| 859610001460 | Blue Adult 4 oz Sample |
| 859610000098 | Blue Adult Chicken & Brown Rice 15 lb |
| 859610000111 | Blue Adult Chicken & Brown Rice 30 lb |
| 859610005963 | Blue Adult Chicken & Brown Rice 33 lb |
| 859610000074 | Blue Adult Chicken & Brown Rice 6 lb |
| 840243109715 | Blue Adult Chicken 4 oz Sample |
| 859610000302 | Blue Adult Fish & Sweet Potato 15 lb |
| 859610000326 | Blue Adult Fish & Sweet Potato 30 lb |
| 859610005987 | Blue Adult Fish & Sweet Potato 33 lb |
| 859610000289 | Blue Adult Fish & Sweet Potato 6 lb |
| 859610000357 | Blue Adult Lamb And Brown Rice 15 lb |
| 859610000371 | Blue Adult Lamb And Brown Rice 30 lb |
| 859610000333 | Blue Adult Lamb And Brown Rice 6 lb |
| 859610000364 | Blue Adult Large Breed 15 lb |
| 859610000388 | Blue Adult Large Breed 30 lb |
| 840243112944 | Blue Chicken & Brown Rice Adult 33 lb |
| 840243112975 | Blue Fish & Sweet Potato 33 lb |
| 859610000043 | Blue Healthy Weight Chicken & Brown Rice 15 lb |
| 859610000067 | Blue Healthy Weight Chicken & Brown Rice 30 lb |
| 859610000029 | Blue Healthy Weight Chicken & Brown Rice 6 lb |
| 840243112968 | Blue Lamb And Brown Rice Adult 33 lb |
| 840243112951 | Blue Large Breed Adult 33 lb |
| 859610005970 | Blue Large Breed Adult Chicken & Brown Rice 33 lb |
| 859610002566 | Blue Large Breed Adult Fish & Oat 15 lb |
| 859610002573 | Blue Large Breed Adult Fish & Oat 30 lb |
| 840243105236 | Blue Large Breed Adult Fish & Oat 30 lb |
| 840243102709 | Blue Large Breed Adult Lamb 30 lb |
| 859610002603 | Blue Large Breed Healthy Weight Chicken & Brown Rice 15 lb |
| 859610002610 | Blue Large Breed Healthy Weight Chicken & Brown Rice 30 lb |
| 840243105250 | Blue Large Breed Healthy Weight Chicken & Brown Rice 30 lb |
| 859610005994 | Blue Large Breed Puppy Chicken & Brown Rice 33 lb |
| 859610002580 | Blue Large Breed Senior Chicken & Brown Rice 15 lb |
| 859610002597 | Blue Large Breed Senior Chicken & Brown Rice 30 lb |
| 840243105243 | Blue Large Breed Senior Chicken & Brown Rice 30 lb |
| 859610000036 | Blue Puppy Chicken & Brown Rice 15 lb |
| 859610000050 | Blue Puppy Chicken & Brown Rice 30 lb |

| UPC | Product Name |
|---|---|
| 859610000012 | Blue Puppy Chicken & Brown Rice 6 lb |
| 840243109722 | Blue Puppy Chicken 4 oz Sample |
| 859610001996 | Blue Puppy Lamb & Oat 15 lb |
| 840243105151 | Blue Puppy Lamb & Oat 15 lb |
| 859610002993 | Blue Puppy Lamb & Oat 30 lb |
| 840243105526 | Blue Puppy Lamb & Oat 30 lb |
| 859610001989 | Blue Puppy Lamb & Oat 6 lb |
| 840243105144 | Blue Puppy Lamb & Oat 6 lb |
| 859610000296 | Blue Puppy Lamb And Brown Rice 15 lb |
| 859610000272 | Blue Puppy Lamb And Brown Rice 6 lb |
| 859610000425 | Blue Puppy Large Breed 15 lb |
| 859610000449 | Blue Puppy Large Breed 30 lb |
| 859610000159 | Blue Senior Chicken & Brown Rice 15 lb |
| 859610000173 | Blue Senior Chicken & Brown Rice 30 lb |
| 859610000135 | Blue Senior Chicken & Brown Rice 6 lb |
| 840243102655 | Blue Senior Lamb 15 lb |
| 840243102662 | Blue Senior Lamb 30 lb |
| 840243102648 | Blue Senior Lamb 6 lb |
| 859610007448 | Blue Small Bite Adult Chicken & Brown Rice 15 lb |
| 859610007455 | Blue Small Bite Adult Chicken & Brown Rice 30 lb |
| 859610007462 | Blue Small Bite Senior Chicken & Brown Rice 15 lb |
| 859610001248 | Blue Small Breed 15 lb |
| 859610001231 | Blue Small Breed 6 lb |
| 840243105298 | Blue Small Breed Adult Fish & Brown Rice 15 lb |
| 859610002658 | Blue Small Breed Adult Fish & Brown Rice 15 lb |
| 840243105281 | Blue Small Breed Adult Fish & Brown Rice 6 lb |
| 859610002641 | Blue Small Breed Adult Fish & Brown Rice 6 lb |
| 840243105700 | Blue Small Breed Adult Healthy Weight 15 lb |
| 840243105694 | Blue Small Breed Adult Healthy Weight 6 lb |
| 859610003709 | Blue Small Breed Adult Healthy Weight Chicken & Brown Rice 15 lb |
| 859610003693 | Blue Small Breed Adult Healthy Weight Chicken & Brown Rice 6 lb |
| 859610003686 | Blue Small Breed Adult Lamb 15 lb |
| 859610003679 | Blue Small Breed Adult Lamb 6 lb |
| 840243105687 | Blue Small Breed Adult Natural Lamb Recipe 15 lb |
| 840243105670 | Blue Small Breed Adult Natural Lamb Recipe 6 lb |
| 840243104888 | Blue Small Breed Chicken & Brown Rice 15 lb |
| 840243104871 | Blue Small Breed Chicken & Brown Rice 6 lb |
| 840243105274 | Blue Small Breed Puppy Chicken & Oat 15 lb |
| 859610002634 | Blue Small Breed Puppy Chicken & Oat 15 lb |
| 840243105267 | Blue Small Breed Puppy Chicken & Oat 6 lb |
| 859610002627 | Blue Small Breed Puppy Chicken & Oat 6 lb |
| 840243105311 | Blue Small Breed Senior Chicken & Brown Rice 15 lb |
| 859610002672 | Blue Small Breed Senior Chicken & Brown Rice 15 lb |

| UPC | Product Name |
|---|---|
| 840243105304 | Blue Small Breed Senior Chicken & Brown Rice 6 lb |
| 859610002665 | Blue Small Breed Senior Chicken & Brown Rice 6 lb |
| 840243105717 | Blue Toy Breed Adult Chicken 4 lb |
| 859610003716 | Blue Toy Breed Adult Chicken 4 lb |
| 859610006793 | Freedom Adult 11 lb |
| 859610006809 | Freedom Adult 24 lb |
| 859610006779 | Freedom Adult 4 lb |
| 840243105854 | Freedom Adult Beef 11 lb |
| 859610003976 | Freedom Adult Beef 11 lb |
| 840243105861 | Freedom Adult Beef 24 lb |
| 859610003983 | Freedom Adult Beef 24 lb |
| 840243105847 | Freedom Adult Beef 4 lb |
| 859610003952 | Freedom Adult Beef 4 lb |
| 840243100699 | Freedom Adult Healthy Weight Chicken 24 lb |
| 840243100682 | Freedom Adult Healthy Weight Chicken 4 lb |
| 840243100804 | Freedom Adult Lamb 11 lb |
| 840243100811 | Freedom Adult Lamb 24 lb |
| 840243100798 | Freedom Adult Lamb 4 lb |
| 840243100835 | Freedom Adult Large Breed Beef 24 lb |
| 840243100828 | Freedom Adult Large Breed Lamb 24 lb |
| 859610006847 | Freedom Large Breed 24 lb |
| 840243109999 | Freedom Large Breed Senior Chicken 24 lb |
| 859610006755 | Freedom Puppy 11 lb |
| 859610006762 | Freedom Puppy 12 lb |
| 859610006731 | Freedom Puppy 4 lb |
| 840243100767 | Freedom Puppy Beef 11 lb |
| 840243100774 | Freedom Puppy Beef 24 lb |
| 840243100781 | Freedom Puppy Large Breed Chicken 24 lb |
| 840243100712 | Freedom Puppy Small Breed Chicken 11 lb |
| 840243100705 | Freedom Puppy Small Breed Chicken 4 lb |
| 840243100668 | Freedom Senior Chicken 11 lb |
| 840243100675 | Freedom Senior Chicken 24 lb |
| 840243100651 | Freedom Senior Chicken 4 lb |
| 859610006830 | Freedom Small Breed 11 lb |
| 859610006816 | Freedom Small Breed 4 lb |
| 859610001880 | Longevity Adult 20 lb |
| 859610001859 | Longevity Adult 4.5 lb |
| 859610001873 | Longevity Adult 9.5 lb |
| 859610002795 | Longevity Adult Whitefish 24 lb |
| 859610008056 | Longevity Adult Whitefish 24 lb |
| 859610002764 | Longevity Adult Whitefish 4 lb |
| 859610008025 | Longevity Adult Whitefish 4 lb |
| 859610002788 | Longevity Adult Whitefish 9 lb |

| UPC | Product Name |
| --- | --- |
| 859610008049 | Longevity Adult Whitefish 9 lb |
| 859610001897 | Longevity Mature 4 lb |
| 859610008063 | Longevity Mature 4 lb |
| 859610001910 | Longevity Mature 9 lb |
| 859610008087 | Longevity Mature 9 lb |
| 859610002559 | Longevity Mature Whitefish 24 lb |
| 859610008094 | Longevity Mature Whitefish 24 lb |
| 859610001828 | Longevity Puppy 4 lb |
| 859610007981 | Longevity Puppy 4 lb |
| 859610001842 | Longevity Puppy 9 lb |
| 859610008001 | Longevity Puppy 9 lb |
| 859610002986 | Longevity Puppy Whitefish 24 lb |
| 859610008018 | Longevity Puppy Whitefish 24 lb |
| 859610001309 | Organics Chicken & Brown Rice 10 lb |
| 859610001316 | Organics Chicken & Brown Rice 20 lb |
| 859610001293 | Organics Chicken & Brown Rice 5 lb |
| 840243109739 | Wilderness Adult Chicken 4 oz Sample |
| 840243101191 | Wilderness Adult Chicken Small Bite 11 lb |
| 840243101207 | Wilderness Adult Chicken Small Bite 24 lb |
| 840243104093 | Wilderness Adult Large Breed Healthy Weight Chicken 24 lb |
| 840243101184 | Wilderness Adult Large Breed Salmon 24 lb |
| 859610002740 | Wilderness Adult Salmon 11 lb |
| 840243104055 | Wilderness Adult Small Breed Healthy Weight Chicken 11 lb |
| 840243104048 | Wilderness Adult Small Breed Healthy Weight Chicken 4.5 lb |
| 840243105335 | Wilderness Chicken 11 lb |
| 859610002702 | Wilderness Chicken 11 lb |
| 859610002719 | Wilderness Chicken 24 lb |
| 840243105342 | Wilderness Chicken 24 lb |
| 859610002689 | Wilderness Chicken 4.5 lb |
| 840243105328 | Wilderness Chicken 4.5 lb |
| 859610001965 | Wilderness Duck 11 lb |
| 840243105120 | Wilderness Duck 11 lb |
| 859610001972 | Wilderness Duck 24 lb |
| 840243105137 | Wilderness Duck 24 lb |
| 859610001941 | Wilderness Duck 4.5 lb |
| 840243105113 | Wilderness Duck 4.5 lb |
| 859610005710 | Wilderness Healthy Weight 11 lb |
| 859610005727 | Wilderness Healthy Weight 24 lb |
| 859610006328 | Wilderness Healthy Weight 4.5 lb |
| 859610005703 | Wilderness Large Breed 24 lb |
| 859610008872 | Wilderness Large Breed Puppy Chicken 24 lb |
| 840243110032 | Wilderness Large Breed Senior Chicken 24 lb |
| 859610005659 | Wilderness Puppy 11 lb |

| UPC | Product Name |
|---|---|
| 859610005666 | Wilderness Puppy 24 lb |
| 859610005635 | Wilderness Puppy 4.5 lb |
| 859610008858 | Wilderness Rocky Mountain Recipes Adult Bison 10 lb |
| 859610008865 | Wilderness Rocky Mountain Recipes Adult Bison 22 lb |
| 859610008834 | Wilderness Rocky Mountain Recipes Adult Bison 4 lb |
| 840243101078 | Wilderness Rocky Mountain Recipes Adult Boar 10 lb |
| 840243101085 | Wilderness Rocky Mountain Recipes Adult Boar 22 lb |
| 840243101061 | Wilderness Rocky Mountain Recipes Adult Boar 4 lb |
| 840243100958 | Wilderness Rocky Mountain Recipes Adult Healthy Weight Red Meat 22 lb |
| 840243100934 | Wilderness Rocky Mountain Recipes Adult Healthy Weight Red Meat 4 lb |
| 840243101047 | Wilderness Rocky Mountain Recipes Adult Rabbit 10 lb |
| 840243101054 | Wilderness Rocky Mountain Recipes Adult Rabbit 22 lb |
| 840243101030 | Wilderness Rocky Mountain Recipes Adult Rabbit 4 lb |
| 859610008780 | Wilderness Rocky Mountain Recipes Adult Red Meat 10 lb |
| 859610008797 | Wilderness Rocky Mountain Recipes Adult Red Meat 22 lb |
| 859610008766 | Wilderness Rocky Mountain Recipes Adult Red Meat 4 lb |
| 840243100927 | Wilderness Rocky Mountain Recipes Adult Small Breed Red Meat 10 lb |
| 840243102006 | Wilderness Rocky Mountain Recipes Adult Trout 10 lb |
| 840243101023 | Wilderness Rocky Mountain Recipes Adult Trout 22 lb |
| 840243101993 | Wilderness Rocky Mountain Recipes Adult Trout 4 lb |
| 859610008803 | Wilderness Rocky Mountain Recipes Large Breed Red Meat 22 lb |
| 840243102990 | Wilderness Rocky Mountain Recipes Adult Bison 22 lb |
| 840243102976 | Wilderness Rocky Mountain Recipes Puppy Bison 10 lb |
| 840243102983 | Wilderness Rocky Mountain Recipes Puppy Bison 22 lb |
| 840243102969 | Wilderness Rocky Mountain Recipes Puppy Bison 4 lb |
| 840243100989 | Wilderness Rocky Mountain Recipes Puppy Red Meat 22 lb |
| 840243100965 | Wilderness Rocky Mountain Recipes Puppy Red Meat 4 lb |
| 840243101016 | Wilderness Rocky Mountain Recipes Senior Red Meat 22 lb |
| 840243100996 | Wilderness Rocky Mountain Recipes Senior Red Meat 4 lb |
| 859610008810 | Wilderness Rocky Mountain Recipes Small Breed Red Meat 4 lb |
| 840243105366 | Wilderness Salmon 11 lb |
| 859610002757 | Wilderness Salmon 24 lb |
| 840243105373 | Wilderness Salmon 24 lb |
| 859610002726 | Wilderness Salmon 4.5 lb |
| 840243105359 | Wilderness Salmon 4.5 lb |
| 840243104925 | Wilderness Senior Chicken 11 lb |
| 859610001439 | Wilderness Senior Chicken 11 lb |
| 859610005734 | Wilderness Senior Chicken 24 lb |
| 840243105724 | Wilderness Senior Chicken 4.5 lb |
| 859610003730 | Wilderness Senior Chicken 4.5 lb |
| 859610005697 | Wilderness Small Breed Adult 11 lb |
| 859610005673 | Wilderness Small Breed Adult 4.5 lb |
| 840243110025 | Wilderness Toy Breed Adult Chicken 4 lb |

| UPC | Product Name |
|---|---|
| 859610001279 | Wilderness Turkey & Chicken 11 lb |
| 859610001286 | Wilderness Turkey & Chicken 26 lb |
| 859610001262 | Wilderness Turkey & Chicken 4.5 lb |

**Wet Dog Food**

| UPC | Product Name |
|---|---|
| 840243101917 | Basics Grain Free Adult Duck 12.5 oz |
| 840243103799 | Basics Grain Free Adult Lamb 12.5 oz |
| 840243104840 | Basics Grain Free Adult Small Breed Lamb Cups 3 oz |
| 840243104833 | Basics Grain Free Adult Small Breed Salmon Cups 3 oz |
| 840243104826 | Basics Grain Free Adult Small Breed Turkey Cups 3 oz |
| 840243104130 | Basics Grain Free Senior Turkey 12.5 oz |
| 859610005949 | Basics Large Breed Turkey 12.5 oz |
| 859610005925 | Basics Salmon 12.5 oz |
| 859610005901 | Basics Turkey 12.5 oz |
| 840243104956 | Blue Beef Sirloin Dinner With Fresh Carrots & Garden Peas 12.5 oz |
| 840243111008 | Blue Boo Stew Adult 12.5 oz |
| 859610001521 | Blue Chicken & Brown Rice 12.5 oz |
| 859610000708 | Blue Chicken & Brown Rice 12.5 oz |
| 840243104932 | Blue Chicken & Brown Rice Dinner With Garden Vegetables 12.5 oz |
| 840243100125 | Blue Chunky Stew Chicken 12.5 oz |
| 840243100149 | Blue Chunky Stew Lamb 12.5 oz |
| 840243100156 | Blue Chunky Stew Turkey 12.5 oz |
| 840243109951 | Blue Divine Delight Small Breed Beef (Pouch) 3 oz |
| 840243109913 | Blue Divine Delight Small Breed Chicken (Pouch) 3 oz |
| 840243109937 | Blue Divine Delight Small Breed Duck (Pouch) 3 oz |
| 840243109968 | Blue Divine Delight Small Breed Lamb (Pouch) 3 oz |
| 840243109944 | Blue Divine Delight Small Breed Salmon (Pouch) 3 oz |
| 840243109920 | Blue Divine Delight Small Breed Turkey (Pouch) 3 oz |
| 859610008438 | Blue Divine Delights Small Breed Beef 3 oz |
| 859610008452 | Blue Divine Delights Small Breed Chicken 3 oz |
| 859610008476 | Blue Divine Delights Small Breed Duck 3 oz |
| 859610008490 | Blue Divine Delights Small Breed Lamb 3 oz |
| 859610008513 | Blue Divine Delights Small Breed Salmon 3 oz |
| 859610008537 | Blue Divine Delights Small Breed Turkey 3 oz |
| 859610003181 | Blue Family Favorites Backyard Bbq 12.5 oz |
| 840243105540 | Blue Family Favorites Backyard Bbq 12.5 oz |
| 859610003266 | Blue Family Favorites Chicken Pot Pie 12.5 oz |
| 840243105588 | Blue Family Favorites Mom's Chicken Pie 12.5 oz |
| 859610003228 | Blue Family Favorites Shepherd's Pie 12.5 oz |
| 840243105564 | Blue Family Favorites Shepherd's Pie 12.5 oz |
| 859610006854 | Blue Family Favorites Sunday Chicken Dinner 12.5 oz |
| 859610003242 | Blue Family Favorites Thanksgiving Day Feast 12.5 oz |
| 859610003204 | Blue Family Favorites Turducken 12.5 oz |
| 840243105557 | Blue Family Favorites Turducken 12.5 oz |

| UPC | Product Name |
| --- | --- |
| 840243105571 | Blue Family Favorites Turkey Day Feast 12.5 oz |
| 840243102754 | Blue Healthy Starts Beef & Eggs 3 oz Cups |
| 840243102778 | Blue Healthy Starts Chicken & Eggs 3 oz Cups |
| 840243102785 | Blue Healthy Starts Salmon & Eggs 3 oz Cups |
| 840243102761 | Blue Healthy Starts Turkey Hash 3 oz Cups |
| 859610001606 | Blue Hearty Venison Dinner With Sweet Potatoes & Garden Vegetables 12.5 oz |
| 840243105731 | Blue Homestyle Recipe Puppy Chicken Dinner 12.5 oz |
| 859610007479 | Blue Homestyle Recipe Senior Chicken Dinner 12.5 oz |
| 840243105748 | Blue Homestyle Recipe Toy Breed Chicken Dinner 5.5 oz |
| 840243100170 | Blue Homestyle Recipes Adult Healthy Weight Chicken Pate 12.5 oz |
| 859610000951 | Blue Homestyle Recipes Fish & Sweet Potato 12.5 oz |
| 840243105519 | Blue Homestyle Recipes Large Breed Chicken 12.5 oz |
| 859610002962 | Blue Homestyle Recipes Large Breed Chicken 12.5 oz |
| 859610003754 | Blue Homestyle Recipes Puppy Chicken 12.5 oz |
| 859610002948 | Blue Homestyle Recipes Small Breed Chicken 5.5 oz |
| 840243105502 | Blue Homestyle Recipes Small Breed Chicken 5.5 oz |
| 859610005864 | Blue Homestyle Recipes Small Breed Lamb 5.5 oz |
| 859610003778 | Blue Homestyle Recipes Toy Breed Chicken 5.5 oz |
| 859610000722 | Blue Lamb & Brown Rice 12.5 oz |
| 859610001545 | Blue Lamb & Brown Rice 12.5 oz |
| 840243104949 | Blue Lamb & Brown Rice Dinner With Garden Vegetables 12.5 oz |
| 840243106479 | Blue Love You Stew 12.5 oz |
| 840243109807 | Blue Red White & Blue Stew 12.5 oz |
| 859610000760 | Blue Salmon 12.5 oz |
| 859610001583 | Blue Salmon Dinner With Asparagus & Sweet Potatoes 12.5 oz |
| 859610009350 | Blue Santa Stew Holiday Feast 12.5 oz |
| 859610000746 | Blue Sirloin Dinner 12.5 oz |
| 859610001569 | Blue Sirloin Dinner 12.5 oz |
| 859610001040 | Blue Turkey Meatloaf 12.5 oz |
| 859610001620 | Blue Turkey Meatloaf 12.5 oz |
| 840243104963 | Blue Turkey Meatloaf Dinner With Carrots & Idaho Potatoes 12.5 oz |
| 859610001026 | Blue Venison Dinner 12.5 oz |
| 840243105212 | Blue's Stew Beef 12.5 oz |
| 859610002504 | Blue's Stew Beef 12.5 oz |
| 859610002467 | Blue's Stew Chicken 12.5 oz |
| 840243105199 | Blue's Stew Chicken 12.5 oz |
| 859610003082 | Blue's Stew Hunters Stew 12.5 oz |
| 840243105533 | Blue's Stew Hunters Stew 12.5 oz |
| 859610002481 | Blue's Stew Lamb 12.5 oz |
| 840243105205 | Blue's Stew Lamb 12.5 oz |
| 840243105229 | Blue's Stew Turkey 12.5 oz |
| 859610002528 | Blue's Stew Turkey 12.5 oz |
| 840243102921 | Freedom Adult Beef 12.5 oz |

| UPC | Product Name |
|---|---|
| 859610006892 | Freedom Adult Chicken Dinner 12.5 oz |
| 840243102938 | Freedom Adult Lamb 12.5 oz |
| 840243100842 | Freedom Grain Free Grillers Beef 12.5 oz |
| 840243100859 | Freedom Grain Free Grillers Chicken 12.5 oz |
| 840243100866 | Freedom Grain Free Grillers Lamb 12.5 oz |
| 840243100873 | Freedom Grain Free Grillers Turkey 12.5 oz |
| 859610006878 | Freedom Puppy Chicken Dinner 12.5 oz |
| 840243102945 | Freedom Senior Chicken 12.5 oz |
| 859610006915 | Freedom Small Breed Chicken Dinner 5.5 oz |
| 859610002900 | Longevity Adult Whitefish 12.5 oz |
| 859610002924 | Longevity Mature Whitefish 12.5 oz |
| 859610002887 | Longevity Puppy Whitefish 12.5 oz |
| 840243101252 | Wilderness Adult Healthy Weight Turkey & Chicken 12.5 oz |
| 859610005888 | Wilderness Beef & Chicken Grill 12.5 oz |
| 859610001149 | Wilderness Chicken 12.5 oz |
| 840243104864 | Wilderness Duck & Chicken 12.5 oz |
| 859610001163 | Wilderness Duck & Chicken 12.5 oz |
| 840243101238 | Wilderness Puppy Turkey & Chicken 12.5 oz |
| 840243103027 | Wilderness Rocky Mountain Recipes Adult Boar 5.5 oz |
| 840243103034 | Wilderness Rocky Mountain Recipes Adult Rabbit 5.5 oz |
| 840243101153 | Wilderness Rocky Mountain Recipes Adult Red Meat 12.5 oz |
| 840243101177 | Wilderness Rocky Mountain Recipes Adult Trout 12.5 oz |
| 840243103003 | Wilderness Rocky Mountain Recipes Puppy Red Meat 12.5 oz |
| 840243103041 | Wilderness Rocky Mountain Recipes Senior Red Meat 12.5 oz |
| 859610001125 | Wilderness Salmon & Chicken 12.5 oz |
| 840243112920 | Wilderness Salmon & Chicken 12.5 oz |
| 840243101245 | Wilderness Senior Turkey & Chicken 12.5 oz |
| 859610003815 | Wilderness Small Breed Turkey & Chicken 5.5 oz |
| 840243105762 | Wilderness Small Breed Turkey & Chicken Grill 5.5 oz |
| 859610003792 | Wilderness Trout & Chicken 12.5 oz |
| 840243105755 | Wilderness Trout & Chicken Grill 12.5 oz |
| 840243104857 | Wilderness Turkey & Chicken Grill 12.5 oz |
| 840243103072 | Wilderness Wild Cuts Beef 3 oz Pouch |
| 840243103058 | Wilderness Wild Cuts Chicken 3 oz Pouch |
| 840243103065 | Wilderness Wild Cuts Duck 3 oz Pouch |
| 840243103089 | Wilderness Wild Cuts Salmon 3 oz Pouch |
| 840243101283 | Wilderness Wolf Creek Stews Beef 12.5 oz |
| 840243101269 | Wilderness Wolf Creek Stews Chicken 12.5 oz |
| 840243101276 | Wilderness Wolf Creek Stews Duck 12.5 oz |
| 840243101290 | Wilderness Wolf Creek Stews Salmon 12.5 oz |

**Dog Treats**

| | |
|---|---|
| 859610006571 | Basics Salmon & Potato 6 oz |
| 859610006595 | Basics Turkey & Potato 6 oz |

| UPC | Product Name |
|---|---|
| 859610000487 | Blue Apple & Yogurt Biscuits 20 oz |
| 859610005062 | Blue Apple & Yogurt Health Bar 18 oz |
| 859610001675 | Blue Apple & Yogurt Health Bar 20 oz |
| 859610000104 | Blue Bacon Egg & Cheese Biscuit 20 oz |
| 859610005024 | Blue Bacon, Egg And Cheese Health Bar 18 oz |
| 859610001651 | Blue Bacon, Egg And Cheese Health Bar 20 oz |
| 840243106462 | Blue Be Mine Bars 8 oz |
| 859610005222 | Blue Bites Chicken 6 oz |
| 859610005246 | Blue Bites Salmon 6 oz |
| 859610008353 | Blue Bits Beef 4 oz |
| 859610005185 | Blue Bits Chicken 4 oz |
| 859610008339 | Blue Bits Salmon 4 oz |
| 859610005208 | Blue Bits Turkey 4 oz |
| 840243116515 | Blue Bones Large 1 Count |
| 859610006472 | Blue Bones Large 12 oz |
| 840243109784 | Blue Bones Large 36 oz |
| 859610005260 | Blue Bones Mini 12 oz |
| 840243109753 | Blue Bones Mini 36 oz |
| 840243100385 | Blue Bones Puppy Mini 12 oz |
| 840243100408 | Blue Bones Puppy Regular 12 oz |
| 840243100446 | Blue Bones Puppy Regular 27 oz |
| 859610005307 | Blue Bones Regular 12 oz |
| 840243109777 | Blue Bones Regular 36 oz |
| 840243116539 | Blue Bones Small 1 Count |
| 859610005284 | Blue Bones Small 12 oz |
| 840243109760 | Blue Bones Small 36 oz |
| 859610009091 | Blue Bones Value Size Large 27 oz |
| 859610009039 | Blue Bones Value Size Mini 27 oz |
| 859610009077 | Blue Bones Value Size Regular 27 oz |
| 859610009053 | Blue Bones Value Size Small 27 oz |
| 859610006632 | Blue Boo Bars Pumpkin & Cinnamon 8 oz |
| 859610000128 | Blue Cheddar Cheese Biscuit 20 oz |
| 840243116652 | Blue Chicken Bits Value Size 9 oz |
| 859610000463 | Blue Chicken Liver Biscuit 20 oz |
| 859610005048 | Blue Chicken Liver Crunch 18 oz |
| 859610001668 | Blue Chicken Liver Crunch 20 oz |
| 840243100200 | Blue Crunchy Bits Banana & Peanut Butter 3 oz |
| 840243100217 | Blue Crunchy Bits Blueberry & Yogurt 3 oz |
| 859610005345 | Blue Exuberance! Chicken Jerky 3.25 oz |
| 840243105618 | Blue Health Bar Apples & Yogurt 16 oz |
| 840243106332 | Blue Health Bar Bacon Egg & Cheese 16 oz |
| 859610005086 | Blue Health Bar Banana & Yogurt 16 oz |
| 840243105601 | Blue Health Bar Chicken Liver 16 oz |

| UPC | Product Name |
|---|---|
| 859610005123 | Blue Health Bar Fish & Sweet Potato 16 oz |
| 859610005109 | Blue Health Bar Pumpkin & Cinnamon 16 oz |
| 859610003327 | Blue Health Bars Apple & Yogurt 16 oz |
| 859610003280 | Blue Health Bars Bac Egg & Cheese 16 oz |
| 859610003303 | Blue Health Bars Chicken Liver 16 oz |
| 859610008612 | Blue Individually Wrapped Bones Mini |
| 859610008650 | Blue Individually Wrapped Bones Regular |
| 840243100347 | Blue Joint Sticks Regular 10 oz |
| 840243100330 | Blue Joint Sticks Small 10 oz |
| 859610005369 | Blue Jolly Joints Chicken Jerky 3.25 oz |
| 840243102372 | Blue Kitchen Cravings Meatballs Beef 6 oz |
| 840243102389 | Blue Kitchen Cravings Meatballs Chicken 6 oz |
| 840243102419 | Blue Kitchen Cravings Sausage Beef 6 oz |
| 840243102402 | Blue Kitchen Cravings Sausage Chicken 6 oz |
| 840243102808 | Blue Kitchen Cravings Sizzlers Chicken 6 oz |
| 840243102815 | Blue Kitchen Cravings Sizzlers Pork 6 oz |
| 859610006373 | Blue Mini Bars Value Size Bag Apple And Yogurt 20 oz |
| 859610005147 | Blue Mini Bars Bananas & Yogurt 8 oz |
| 859610006618 | Blue Mini Bars Blueberry & Yogurt 8 oz |
| 859610005161 | Blue Mini Bars Chicken & Cheddar 8 oz |
| 859610006359 | Blue Mini Bars Puppy Banana And Yogurt 8 oz |
| 840243100309 | Blue Mini Stix Lamb & Apples |
| 840243100323 | Blue Mini Stix Salmon & Potato 4 oz |
| 859610005000 | Blue Natural Peanut Butter 18 oz |
| 859610001644 | Blue Natural Peanut Butter 20 oz |
| 859610000081 | Blue Peanut Butter Biscuit 20 oz |
| 840243109791 | Blue Red White & Blue Bars 8 oz |
| 859610009404 | Blue Santa Snacks Oatmeal & Cinnamon 8 oz |
| 859610009336 | Blue Santa Snacks Oatmeal & Cinnamon 8 oz |
| 859610006458 | Blue Stix Beef 6 oz |
| 859610008391 | Blue Stix Chicken & Brown Rice 6 oz |
| 840243116676 | Blue Stix Chicken And Brown Rice Value Size 13 oz |
| 859610006434 | Blue Stix Lamb 6 oz |
| 859610008414 | Blue Stix Salmon & Potato 6 oz |
| 859610006397 | Blue Super Bars Blueberry 7 oz |
| 859610006410 | Blue Super Bars Cranberry & Pumpkin 7 oz |
| 859610005321 | Blue Tranquility Chicken Jerky 3.25 oz |
| 840243102471 | Freedom Strips Beef Tenders 7 oz |
| 840243102464 | Freedom Strips Chicken Tenders 7 oz |
| 859610009251 | Wilderness Antler Alpha |
| 859610009275 | Wilderness Antler Alpha Split |
| 859610009176 | Wilderness Antler Cub |
| 859610009190 | Wilderness Antler Cub Split |

| UPC | Product Name |
|---|---|
| 859610009299 | Wilderness Antler King Split |
| 859610009213 | Wilderness Antler Wolf |
| 859610009237 | Wilderness Antler Wolf Split |
| 840243110087 | Wilderness Chews Cub Bone 3" |
| 840243109876 | Wilderness Chews King Beef Tendon 10" 3 Pack |
| 840243103379 | Wilderness Chews King Beef Tendon 10" Individual |
| 840243109890 | Wilderness Chews King Bone 9" |
| 840243103331 | Wilderness Chews King Club Bone |
| 840243103355 | Wilderness Chews King Knuckle |
| 840243109883 | Wilderness Chews King Shin |
| 840243103362 | Wilderness Chews Wolf Beef Tendon 5" 3 Pack |
| 840243103386 | Wilderness Chews Wolf Beef Tendon 5" Individual |
| 840243109906 | Wilderness Chews Wolf Bone 6" |
| 840243103348 | Wilderness Chews Wolf Club Bone |
| 840243110094 | Wilderness Chews Wolf Knuckle |
| 859610005505 | Wilderness Chicken Jerky 3.25 oz |
| 859610005482 | Wilderness Duck & Chicken Biscuit 10 oz |
| 840243116553 | Wilderness Rocky Mountain Recipes Trail Treats Biscuits Bison 8 oz |
| 840243116591 | Wilderness Rocky Mountain Recipes Trail Treats Biscuits Red Meat 8 oz |
| 859610005468 | Wilderness Salmon & Chicken Biscuit 10 oz |
| 840243101498 | Wilderness Stix Chicken 6 oz |
| 840243101481 | Wilderness Stix Salmon 6 oz |
| 859610005444 | Wilderness Turkey & Chicken Biscuit 10 oz |
| 840243116690 | Wilderness Turkey Biscuits Value Size 24 oz |
| 859610005529 | Wilderness Turkey Jerky 3.25 oz |
| 859610006496 | Wilderness Wild Bites Chicken 4 oz |
| 859610006519 | Wilderness Wild Bites Salmon 4 oz |
| 840243101306 | Wilderness Wild Bits Trail Treats Chicken (Soft Moist) 4 oz |
| 840243101337 | Wilderness Wild Bits Trail Treats Duck (Soft Moist) 4 oz |
| 840243101320 | Wilderness Wild Bits Trail Treats Salmon (Soft Moist) 4 oz |
| 840243101535 | Wilderness Wild Bones Large 10 oz |
| 840243101504 | Wilderness Wild Bones Mini 10 oz |
| 840243101528 | Wilderness Wild Bones Regular 10 oz |
| 840243101511 | Wilderness Wild Bones Small 10 oz |
| 840243101924 | Wilderness Wild Chunks Chicken Breast 2.25 oz |
| 840243101931 | Wilderness Wild Chunks Freeze Dried Beef 2.25 oz |

**Dry Cat Food**

| UPC | Product Name |
|---|---|
| 840243109708 | Basics Adult Indoor Grain Free Turkey 4 oz Sample |
| 859610006199 | Basics Duck & Potato 11 lb |
| 859610006175 | Basics Duck & Potato 5 lb |
| 859610006168 | Basics Fish & Potato 11 lb |
| 859610006144 | Basics Fish & Potato 5 lb |
| 840243102051 | Basics Grain Free Adult Indoor Duck 11 lb |

| UPC | Product Name |
|---|---|
| 840243102044 | Basics Grain Free Adult Indoor Duck 5 lb |
| 840243102075 | Basics Grain Free Adult Indoor Fish 11 lb |
| 840243102068 | Basics Grain Free Adult Indoor Fish 5 lb |
| 840243101559 | Basics Grain Free Mature Indoor Turkey 11 lb |
| 840243101542 | Basics Grain Free Mature Indoor Turkey 5 lb |
| 859610007028 | Basics Grain Free Turkey & Potato Recipe 11 lb |
| 859610006984 | Basics Grain Free Turkey & Potato Recipe 2 lb |
| 859610007004 | Basics Grain Free Turkey & Potato Recipe 5 lb |
| 859610003457 | Basics Turkey 11 lb |
| 840243105663 | Basics Turkey 11 lb |
| 859610006939 | Basics Turkey 2 lb |
| 859610003433 | Basics Turkey 5 lb |
| 840243105656 | Basics Turkey 5 lb |
| 859610000517 | Blue Adult Chicken Spa Select Dry 15 lb |
| 859610000197 | Blue Adult Chicken Spa Select Dry 3 lb |
| 859610000210 | Blue Adult Chicken Spa Select Dry 7 lb |
| 859610000142 | Blue Adult Chicken Trial Size 1 lb |
| 859610003488 | Blue Adult Finicky Feast Chicken & Turkey 15 lb |
| 859610003471 | Blue Adult Finicky Feast Chicken & Turkey 7 lb |
| 840243112999 | Blue Adult Formula Dry 17 lb |
| 859610000593 | Blue Adult Hairball Spa Select Dry 15 lb |
| 859610000555 | Blue Adult Hairball Spa Select Dry 3 lb |
| 859610000579 | Blue Adult Hairball Spa Select Dry 7 lb |
| 840243112982 | Blue Adult Indoor 17 lb |
| 840243113019 | Blue Adult Indoor Salmon 17 lb |
| 859610000890 | Blue Adult Indoor Spa Select 1 lb |
| 859610000876 | Blue Adult Indoor Spa Select 15 lb |
| 859610000852 | Blue Adult Indoor Spa Select 3 lb |
| 859610000869 | Blue Adult Indoor Spa Select 7 lb |
| 840243105779 | Blue Adult Multi  Cat  7 lb |
| 840243105786 | Blue Adult Multi Cat 15 lb |
| 859610000883 | Blue Adult Salmon Spa Select 1 lb |
| 859610000265 | Blue Adult Salmon Spa Select 15 lb |
| 859610000227 | Blue Adult Salmon Spa Select 3 lb |
| 859610000241 | Blue Adult Salmon Spa Select 7 lb |
| 840243101986 | Blue Adult Weight Control 15 lb |
| 859610001446 | Blue Indoor 4 oz Sample |
| 840243109678 | Blue Indoor Adult Chicken 4 oz Sample |
| 840243101580 | Blue Indoor Adult Hairball Chicken 15 lb |
| 840243101566 | Blue Indoor Adult Hairball Chicken 3 lb |
| 840243101573 | Blue Indoor Adult Hairball Chicken 7 lb |
| 859610001378 | Blue Indoor Sensitive Skin Chicken & Brown Rice 15 lb |
| 859610001354 | Blue Indoor Sensitive Skin Chicken & Brown Rice 3 lb |

| UPC | Product Name |
|---|---|
| 859610001361 | Blue Indoor Sensitive Skin Chicken & Brown Rice 7 lb |
| 840243109685 | Blue Kitten Chicken 4 oz Sample |
| 840243103515 | Blue Mature Indoor Hairball Chicken 3 lb |
| 840243103522 | Blue Mature Indoor Hairball Chicken 7 lb |
| 859610003846 | Blue Multi Chicken & Turkey 15 lb |
| 859610003839 | Blue Multi Chicken & Turkey 7 lb |
| 859610006014 | Blue Sensitive Stomach 15 lb |
| 840243113002 | Blue Sensitive Stomach 17 lb |
| 859610006007 | Blue Sensitive Stomach 7 lb |
| 859610000456 | Blue Spa Select Kitten Chicken & Brown Rice Recipe Dry 3 lb |
| 859610000470 | Blue Spa Select Kitten Chicken & Brown Rice Recipe Dry 7 lb |
| 859610000630 | Blue Spa Select Kitten Dry 3 lb |
| 859610000647 | Blue Spa Select Kitten Dry 7 lb |
| 859610000234 | Blue Spa Select Lite Dry 3 lb |
| 859610000258 | Blue Spa Select Lite Dry 7 lb |
| 859610000784 | Blue Spa Select Mature 3 lb |
| 859610000791 | Blue Spa Select Mature 7 lb |
| 840243103492 | Blue Weight Control Adult Indoor Hairball Chicken 3 lb |
| 840243103508 | Blue Weight Control Adult Indoor Hairball Chicken 7 lb |
| 859610007073 | Freedom Indoor 11 lb |
| 859610007035 | Freedom Indoor 2 lb |
| 859610007059 | Freedom Indoor 5 lb |
| 859610008735 | Freedom Indoor Adult Whitefish 11 lb |
| 859610008698 | Freedom Indoor Adult Whitefish 2 lb |
| 859610008711 | Freedom Indoor Adult Whitefish 5 lb |
| 840243101702 | Freedom Indoor Kitten Chicken 2 lb |
| 840243101719 | Freedom Indoor Kitten Chicken 5 lb |
| 859610008742 | Freedom Indoor Mature Chicken 11 lb |
| 859610008759 | Freedom Indoor Weight Control Chicken 11 lb |
| 859610002238 | Longevity Adult 2.5 lb |
| 859610008148 | Longevity Adult 2.5 lb |
| 859610002252 | Longevity Adult 5.5 lb |
| 859610008162 | Longevity Adult 5.5 lb |
| 859610002191 | Longevity Kitten 2 lb |
| 859610008100 | Longevity Kitten 2 lb |
| 859610002214 | Longevity Kitten 5 lb |
| 859610008124 | Longevity Kitten 5 lb |
| 859610002276 | Longevity Mature 2 lb |
| 859610002290 | Longevity Mature 5 lb |
| 859610008209 | Longevity Mature 5 lb |
| 859610008186 | Longevity Mature 5 lb |
| 859610001415 | Organics Chicken & Brown Rice 2.5 lb |
| 859610001422 | Organics Chicken & Brown Rice 6 lb |

| UPC | Product Name |
|---|---|
| 840243109692 | Wilderness Adult Chicken 4 oz Sample |
| 859610003938 | Wilderness Adult Indoor Chicken 11 lb |
| 859610003891 | Wilderness Adult Indoor Chicken 2 lb |
| 859610003914 | Wilderness Adult Indoor Chicken 5 lb |
| 859610003402 | Wilderness Adult Salmon 11 lb |
| 859610003389 | Wilderness Adult Salmon 5 lb |
| 859610001408 | Wilderness Chicken 12 lb |
| 859610001385 | Wilderness Chicken 2.5 lb |
| 859610001392 | Wilderness Chicken 6 lb |
| 859610002375 | Wilderness Duck 11 lb |
| 840243105182 | Wilderness Duck 11 lb |
| 859610002337 | Wilderness Duck 2 lb |
| 840243105168 | Wilderness Duck 2 lb |
| 859610002351 | Wilderness Duck 5 lb |
| 840243105175 | Wilderness Duck 5 lb |
| 840243105830 | Wilderness Indoor 11 lb |
| 840243105816 | Wilderness Indoor 2 lb |
| 840243105823 | Wilderness Indoor 5 lb |
| 840243101832 | Wilderness Indoor Adult Hairball Chicken 11 lb |
| 840243101825 | Wilderness Indoor Adult Hairball Chicken 5 lb |
| 859610006083 | Wilderness Kitten 11 lb |
| 859610006045 | Wilderness Kitten 2 lb |
| 859610006069 | Wilderness Kitten 5 lb |
| 840243105793 | Wilderness Mature 2 lb |
| 840243105809 | Wilderness Mature 5 lb |
| 859610003853 | Wilderness Mature Chicken 2 lb |
| 859610003877 | Wilderness Mature Chicken 5 lb |
| 840243109630 | Wilderness Rocky Mountain Recipes Adult Rabbit 10 lb |
| 840243109623 | Wilderness Rocky Mountain Recipes Adult Rabbit 4 lb |
| 840243101771 | Wilderness Rocky Mountain Recipes Adult Red Meat 10 lb |
| 840243101764 | Wilderness Rocky Mountain Recipes Adult Red Meat 4 lb |
| 840243101801 | Wilderness Rocky Mountain Recipes Adult Trout 10 lb |
| 840243101795 | Wilderness Rocky Mountain Recipes Adult Trout 4 lb |
| 840243105649 | Wilderness Salmon 11 lb |
| 859610003365 | Wilderness Salmon 2 lb |
| 840243105632 | Wilderness Salmon 5 lb |
| 840243104918 | Wilderness Turkey & Chicken 12 lb |
| 859610001365 | Wilderness Turkey & Chicken 2.5 lb |
| 840243104895 | Wilderness Turkey & Chicken 2.5 lb |
| 840243104901 | Wilderness Turkey & Chicken 6 lb |
| 859610006137 | Wilderness Weight Control 11 lb |
| 859610006090 | Wilderness Weight Control 2 lb |
| 859610006113 | Wilderness Weight Control 5 lb |

| UPC | Product Name |
|---|---|
| 840243103713 | Wilderness Weight Control Adult Indoor Hairball Chicken 11 lb |
| 840243103706 | Wilderness Weight Control Adult Indoor Hairball Chicken 5 lb |

**Wet Cat Food**

| UPC | Product Name |
|---|---|
| 859610006243 | Basics Duck & Potato 3 oz |
| 859610007301 | Basics Fish & Potato Entrée 3 oz |
| 840243109548 | Basics Grain Free Adult Indoor Turkey 5.5 oz |
| 840243103485 | Basics Grain Free Mature Indoor Turkey 3 oz |
| 859610007745 | Basics Grain Free Turkey & Potato Entrée 3 oz |
| 859610007288 | Basics Kitten Turkey & Potato Entrée 3 oz |
| 859610006229 | Basics Turkey & Potato 3 oz |
| 859610006304 | Blue Bistro Beef 3 oz |
| 859610006267 | Blue Bistro Chicken 3 oz |
| 859610006281 | Blue Bistro Turkey 3 oz |
| 859610008889 | Blue Classic Indoor Chicken Entrée 5.5 oz |
| 859610007400 | Blue Feline Feast Chicken & Beef Entrée 3 oz |
| 859610007363 | Blue Feline Feast Chicken & Duck Entrée 3 oz |
| 859610007387 | Blue Feline Feast Chicken & Salmon Entrée 3 oz |
| 859610007349 | Blue Feline Feast Chicken & Turkey Entrée 3 oz |
| 840243102211 | Blue Flaked Chicken 3 oz |
| 840243102334 | Blue Flaked Chicken 5.5 oz |
| 840243102204 | Blue Flaked Fish And Shrimp 3 oz |
| 840243102358 | Blue Flaked Fish And Shrimp 5.5 oz |
| 840243102228 | Blue Flaked Tuna 3 oz |
| 840243102341 | Blue Flaked Tuna 5.5 oz |
| 840243102235 | Blue Grilled Chicken Filets 3 oz |
| 840243102242 | Blue Grilled Salmon Filets 3 oz |
| 859610001774 | Blue Healthy Gourmet Flaked Chicken Entrée 3 oz |
| 859610007721 | Blue Healthy Gourmet Flaked Chicken Entrée 5.5 oz |
| 859610001712 | Blue Healthy Gourmet Flaked Salmon Entrée 3 oz |
| 859610008902 | Blue Healthy Gourmet Flaked Salmon Entrée 5.5 oz |
| 859610001767 | Blue Healthy Gourmet Flaked Tuna Entrée 3 oz |
| 859610007707 | Blue Healthy Gourmet Flaked Tuna Entrée 5.5 oz |
| 859610001750 | Blue Healthy Gourmet Flaked Turkey Entrée 3 oz |
| 859610008926 | Blue Healthy Gourmet Flaked Turkey Entrée 5.5 oz |
| 859610007240 | Blue Healthy Gourmet Grilled Beef Entrée 3 oz |
| 840243109975 | Blue Healthy Gourmet Grilled Chicken 5.5 oz |
| 859610007226 | Blue Healthy Gourmet Grilled Chicken Entrée 3 oz |
| 859610007264 | Blue Healthy Gourmet Grilled Turkey Entrée 3 oz |
| 840243109586 | Blue Healthy Gourmet Mature Indoor Chicken Pate 3 oz |
| 840243102198 | Blue Healthy Gourmet Pate Adult Beef 3 oz |
| 840243102310 | Blue Healthy Gourmet Pate Adult Beef 5.5 oz |
| 859610002429 | Blue Healthy Gourmet Sliced Chicken 3 oz |
| 859610002382 | Blue Healthy Gourmet Sliced Salmon Entrée 3 oz |

| UPC | Product Name |
| --- | --- |
| 859610002405 | Blue Healthy Gourmet Sliced Tuna Entrée 3 oz |
| 859610002443 | Blue Healthy Gourmet Sliced Turkey 3 oz |
| 85961000244 | Blue Healthy Gourmet Sliced Turkey 3 oz |
| 859610000616 | Blue Kitten 3 oz |
| 859610000548 | Blue Lite 3 oz |
| 840243102273 | Blue Meaty Morsels Chicken 3 oz |
| 840243109562 | Blue Meaty Morsels Chicken 5.5 oz |
| 840243102266 | Blue Meaty Morsels Tuna 3 oz |
| 840243102136 | Blue Pate Adult Indoor Chicken Entrée 3 oz |
| 840243102303 | Blue Pate Adult Indoor Chicken Entrée 5.5 oz |
| 840243102143 | Blue Pate Adult Indoor Salmon Entrée 3 oz |
| 840243102297 | Blue Pate Adult Indoor Salmon Entrée 5.5 oz |
| 840243102167 | Blue Pate Adult Ocean Fish And Tuna Entrée 3 oz |
| 840243102327 | Blue Pate Adult Ocean Fish And Tuna Entrée 5.5 oz |
| 840243102150 | Blue Pate Adult Turkey & Chicken Entrée 3 oz |
| 840243102280 | Blue Pate Adult Turkey & Chicken Entrée 5.5 oz |
| 840243102129 | Blue Pate Kitten Chicken Entrée 3 oz |
| 859610000500 | Blue Salmon Lentil 3 oz |
| 859610001811 | Blue Sea Stew 5.5 oz |
| 859610001804 | Blue Spa Select Braised Beef And Liver Entrée 3 oz |
| 859610007165 | Blue Spa Select Classic Indoor Adult Chicken Entrée 3 oz |
| 859610007141 | Blue Spa Select Classic Kitten Chicken Entrée 3 oz |
| 859610000586 | Blue Spa Select Hairball 3 oz |
| 859610001743 | Blue Spa Select Salmon 5.5 oz |
| 859610001927 | Blue Spa Select Savory Salmon Entrée 3 oz |
| 859610001729 | Blue Spa Select Tempting Tuna Grill 3 oz |
| 859610001736 | Blue Spa Select Tender Turkey & Chicken Entrée 3 oz |
| 859610000654 | Blue Tuna 3 oz |
| 859610001781 | Blue Tuna Spa Select 5.5 oz |
| 859610000678 | Blue Turkey & Chicken 3 oz |
| 859610001798 | Blue Turkey & Chicken Spa Select 5.5 oz |
| 840243103591 | Freedom Flaked Indoor Adult Chicken 3 oz |
| 840243103607 | Freedom Flaked Indoor Adult Chicken 5.5 oz |
| 840243103614 | Freedom Flaked Indoor Adult Fish 3 oz |
| 840243103621 | Freedom Flaked Indoor Adult Fish 5.5 oz |
| 859610008940 | Freedom Indoor 5.5 oz |
| 840243101733 | Freedom Indoor Adult Fish 3 oz |
| 840243101740 | Freedom Indoor Adult Fish 5.5 oz |
| 859610007424 | Freedom Indoor Chicken Entrée 3 oz |
| 840243101726 | Freedom Indoor Kitten Chicken 3 oz |
| 840243103638 | Freedom Mature Indoor Chicken 3 oz |
| 840243103645 | Freedom Mature Indoor Chicken 5.5 oz |
| 859610007783 | Longevity Adult Whitefish Entrée 3 oz |

| UPC | Product Name |
| --- | --- |
| 859610007769 | Longevity Kitten Whitefish Entrée 3 oz |
| 859610007806 | Longevity Mature Whitefish Entrée 3 oz |
| 859610001699 | Wilderness Chicken 3 oz |
| 840243104987 | Wilderness Chicken 3 oz |
| 859610007646 | Wilderness Chicken 5.5 oz |
| 859610003341 | Wilderness Duck 3 oz |
| 840243105625 | Wilderness Duck 3 oz |
| 859610006205 | Wilderness Kitten 3 oz |
| 840243101849 | Wilderness Kitten Salmon 3 oz |
| 859610008964 | Wilderness Mature Chicken 3 oz |
| 840243101856 | Wilderness Mature Chicken 5.5 oz |
| 840243101948 | Wilderness Rocky Mountain Recipes Adult Red Meat 3 oz |
| 840243101955 | Wilderness Rocky Mountain Recipes Adult Red Meat 5.5 oz |
| 840243101962 | Wilderness Rocky Mountain Recipes Adult Trout 3 oz |
| 840243101979 | Wilderness Rocky Mountain Recipes Adult Trout 5.5 oz |
| 840243103652 | Wilderness Rocky Mountain Recipes Flaked Adult Red Meat 3 oz |
| 840243103669 | Wilderness Rocky Mountain Recipes Flaked Adult Red Meat 5.5 oz |
| 840243103676 | Wilderness Rocky Mountain Recipes Flaked Adult Trout 3 oz |
| 840243103683 | Wilderness Rocky Mountain Recipes Flaked Adult Trout 5.5 oz |
| 859610001705 | Wilderness Salmon 3 oz |
| 840243104994 | Wilderness Salmon 3 oz |
| 859610007660 | Wilderness Salmon 5.5 oz |
| 859610001682 | Wilderness Turkey 3 oz |
| 840243104970 | Wilderness Turkey 3 oz |
| 859610007684 | Wilderness Turkey 5.5 oz |
| 840243110049 | Wilderness Wild Cuts Beef 3 oz Pouch |
| 840243110056 | Wilderness Wild Cuts Chicken 3 oz Pouch |
| 840243110063 | Wilderness Wild Cuts Duck 3 oz Pouch |
| 840243110070 | Wilderness Wild Cuts Salmon 3 oz Pouch |
| 859610007103 | Wilderness Wild Delights Chicken & Salmon Entrée 3 oz |
| 859610007080 | Wilderness Wild Delights Chicken & Trout Entrée 3 oz |
| 859610007127 | Wilderness Wild Delights Chicken & Turkey Entrée 3 oz |
| 840243101863 | Wilderness Wild Delights Flaked Adult Chicken & Trout 5.5 oz |
| 840243101870 | Wilderness Wild Delights Flaked Adult Chicken & Turkey 5.5 oz |
| 859610008988 | Wilderness Wild Delights Flaked Chicken And Trout 3 oz |
| 859610009008 | Wilderness Wild Delights Flaked Chicken And Turkey 3 oz |
| 840243109982 | Wilderness Wild Delights Flaked Kitten Chicken & Trout 3 oz |
| 840243103737 | Wilderness Wild Delights Minced Adult Chicken & Trout 5.5 oz |
| 840243103720 | Wilderness Wild Delights Minced Adult Chicken & Turkey 5.5 oz |

**Cat Treats**

| UPC | Product Name |
| --- | --- |
| 840243101634 | Blue Kitty Yums Beef 2 oz |
| 859610007820 | Blue Kitty Yums Chicken 2 oz |
| 859610007844 | Blue Kitty Yums Salmon 2 oz |

| UPC | Product Name |
| --- | --- |
| 859610007868 | Blue Kitty Yums Sea 2 oz |
| 859610007882 | Blue Kitty Yums Tuna 2 oz |
| 840243101641 | Blue Kitty Yums Turkey 2 oz |
| 8596100001484 | Blue Spa Select Chicken Treat 3 oz Pouch |
| 859610001507 | Blue Spa Select Savory Salmon Treats 3 oz |
| 859610001484 | Blue Spa Select Tempting Chicken Treats 3 oz |
| 859610008315 | Wilderness Soft Moist Chicken And Duck 2 oz |
| 859610007943 | Wilderness Soft Moist Chicken And Salmon 2 oz |
| 859610007967 | Wilderness Treats Chicken & Trout 2 oz |
| 859610007905 | Wilderness Treats Chicken & Turkey 2 oz |

**EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| IN RE BLUE BUFFALO COMPANY, LTD. MARKETING AND SALES PRACTICES LITIGATION | Case No. 14-md-02562-RWS **DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING PROPOSED CLASS MEMBER NOTICE PROGRAM** |

**DECLARATION OF JEANNE C. FINEGAN, APR, CONCERNING PROPOSED
CLASS MEMBER NOTIFICATION PROGRAM**

I, JEANNE C. FINEGAN, declare as follows:

**INTRODUCTION**

1.    I am President and Chief Media Officer of HF Media, LLC, Inc. ("HF") a division of Heffler Claims Group ("HCG").

2.    This Declaration is based upon my personal knowledge, as well as on information provided to me by Class and Defense Counsel, and my staff, as well as information reasonably relied upon in the fields of advertising, media and communications.

3.    Pursuant to the Settlement Agreement, section 1, paragraph 1.23, Heffler Claims Group LLC ("Heffler") and HF Media LLC ("HF Media") have been engaged by the Parties as the Settlement Administrator to develop and implement a proposed legal notice program ("Notice Program").  The Notice Program is designed with an appropriate and relevant approach to notice, which takes into consideration, both traditional and new media: online and mobile media and is estimated to reach an estimated 74 percent of targeted class members. This Notice Program also compares favorably to similar Court-approved notice programs in actions, which were well-designed to give the best notice practicable under the circumstances.

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of  Class Action Settlement – Case No. 14-md-02562-RWS

1

8396597v.1

4.      Our targeted approach leverages sophisticated data technologies to identify our audience and to optimize impression delivery to websites where users are currently browsing. This limits wasted impressions. Nationally syndicated media research data report that online, social and mobile media are heavily used by the target population in this matter. This affords the parties a tremendous amount of flexibility to quickly increase visibility if Phase II is implemented.  A more detailed discussion of the potential options that may be employed as part of the Claims Stimulation program is found below in paragraphs 31 to 33.

5.      The Notice Program is designed to inform class members of the proposed class action Settlement between Plaintiffs and Defendant as described in the Settlement Agreement, section 1, paragraph 1.25, the Class ("Class"), the class is defined as follows:

> All residents of the United States of America who, from May 7,
> 2008 through the Preliminary Approval Date, purchased any of the
> Blue Buffalo Products.  Excluded from this definition are the
> Released Persons, the Court, and its personnel.  Settlement Class
> Members who exclude themselves from the Settlement, pursuant to
> the procedures set forth in Section V of the Settlement Agreement,
> shall no longer thereafter be Settlement Class Members and shall
> not be bound by this Settlement Agreement and shall not be
> eligible to make a claim for any benefit under the terms of this
> Settlement Agreement.

6.      This Declaration describes and details the proposed Notice Program.  In addition, it will address why this sophisticated notice program is consistent with other Court Approved best practicable notice efforts, and is reasonably calculated to reach an estimated 74 percent of the target audience, that is, affected members of the Settlement Class ("Class Members") with an average frequency of 1.8 times.

## QUALIFICATIONS

7.   The credentials that qualify me to provide an expert opinion include more than 30 years of communications and advertising experience. I am the only Notice Expert accredited in Public Relations (APR) by the Universal Accreditation Board, a program administered by the Public Relations Society of America. Further, I have provided

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of Class Action Settlement – Case No. 14-md-02562-RWS

2

8396597v.1

testimony before Congress on issues of notice. I have also lectured, published and been cited extensively on various aspects of legal noticing, product recall and crisis communications. I have planned and implemented some of the most high-profile government enforcement actions for the Federal Trade Commission and the Securities and Exchange Commission. In addition, I have served as an expert to the Consumer Product Safety Commission (CPSC) to determine ways in which the CPSC can increase the effectiveness of its product recall campaigns.

8. I have served as an expert directly responsible for the design and implementation of hundreds of class action notice programs, some of which are the largest and most complex programs ever implemented in both the United States and in Canada. My work includes a wide range of class actions and regulatory and consumer matters that include product liability, construction defect, antitrust, asbestos, medical pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

9. Further, I have been at the forefront of modern notice, integrating new media and social media into court approved legal notice programs such as *In re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA), and *In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. KY.).

10. As detailed below, courts have repeatedly recognized my work as an expert:

> a. For example, in his order granting the Motion for Settlement in ***In re: Skechers Toning Shoes Products Liability Litigation***, No. 3:11-MD-2308-TBR (W.D. KY 2012), the Honorable Thomas B. Russell stated:
>
>> … The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.
>
> b. ***Quinn v. Walgreen Co***., 12 Civ 8187- VB (SDNY 2015) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti praised Ms. Finegan, noting:

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of Class Action Settlement – Case No. 14-md-02562-RWS

3

8396597v.1

"The notice plan was the best practicable under the circumstances. … [and] the proof is in the pudding." This settlement has resulted in more than 45,000 claims which is 10,000 more than the Pearson case and more than 40,000 more than in a glucosamine case pending in the Southern District of California I've been advised about. So the notice has reached a lot of people and a lot of people have made claims.

    c. ***Brody v. Merck & Co., Inc., et al.,*** No. 3:12-cv-04774-PGS-DEA (NJ) (Jt. Hearing for Prelim. App., Sept. 27, 2012, transcript page 34). During the Hearing on the Joint Application for Preliminary Approval of Class Action, the Honorable Peter G. Sheridan praised my work, noting:

> Ms. Finegan did a great job in testifying as to what the class administrator will do. So, I'm certain that all the class members or as many that can be found, will be given some very adequate notice in which they can perfect their claim.

    d. ***DeHoyos, et al. v. Allstate Ins. Co***., No. 01-CA-1010 (W.D. TX). Similarly, in the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> [T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members. Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts.

    11.    Additionally, I have published extensively on various aspects of legal noticing, and I have lectured or presented extensively on various aspects of legal noticing.

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of Class Action Settlement – Case No. 14-md-02562-RWS

4

8396597v.1

12. A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of class action notice programs is attached as Exhibit A.

## NOTICE PROGRAM METHODOLOGY

13. In order to provide an expert opinion and analysis, HF Media uses a scientific methodology (discussed herein) that is used throughout the advertising industry, and one that has been embraced by courts throughout the United States. See *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993) (experts must: apply a technique that may be tested by peers and use industry accepted methodology); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) (same).

14. In formulating our media suggestions, we have studied data provided by nationally syndicated media research bureaus, including GfK Mediamark Research and Intelligence, LLC[1] ("MRI") and comScore[2].

15. MRI and online measurement company comScore, among others, provide media consumption habits and audience delivery verification of targeted populations. These data are used by advertising agencies nationwide as the basis to select the most appropriate media to reach specific target audiences. The resulting key findings are instrumental in our selection of media channels and outlets in order to determine the estimated net audience reached[3] through this legal Notice Program.

---

[1] GfK MRI is a nationally syndicated research tool. It is the leading supplier of multi-media audience research, and provides comprehensive reports on demographic, lifestyle, product usage and media exposure. MRI conducts more than 26,000 personal interviews annually to gather their information, and is used by more than 450 advertising agencies as the basis for the majority of media and marketing campaigns.

[2] comScore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing.

[3] Based on these research tools, we are able to measure and report to the Court the percentage of a class that will be reached by the notice publication component and how many times the target audience had the opportunity to see the message. In advertising, this is commonly referred to as a "Reach and Frequency" analysis, where "Reach" refers to the estimated percentage of the unduplicated audience exposed to the

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of Class Action Settlement – Case No. 14-md-02562-RWS

5

8396597v.1

16.     Specifically, this research identifies which media channels are favored by the target audience (*i.e.*, the potential class members), including, for example, browsing behaviors on the internet, on social media channels, and in magazines.

17.     While traditional media [4] is typically purchased based on both demographic (*i.e.*, age, gender, ethnicity, income, education) and psychographic characteristics (*i.e.*, lifestyle, product and brand preference, media usage, and media definition), online media, including Internet and mobile, may be purchased through more granular target audience characteristics such as shopping behavior.

18.     Here, HF Media will employ specific online audience targeting [5] and contextual targeting [6] to reach potential class members with a focus on purchasers of Natural Pet Food, Dog and Cat Owners, and those who have specifically expressed an interest in Blue Buffalo.

19.     For the purpose of appropriately selecting media best suited to reach members of this class who may be current and former purchasers of Blue Buffalo, we are calculating the overall media delivery against the broader media target definition, *Dog and Cat Owners"*

**DIRECT MAIL**

20.     Counsel believes based on best estimates that the Class consists of approximately 3.5 million households. Therefore, as a conservative measure when calculating the overall net reach of this program, we are using a range for the estimated

---

campaign, and "Frequency" refers to how many times, on average, the target audience had the opportunity to see the message.  The calculations are used by advertising and communications firms worldwide, and have become a critical element to help provide the basis for determining adequacy of notice in class actions.

[4] Traditional media is a reference to pre-internet media: e.g., magazines and newspapers.

[5] Audience targeting and contextual targeting are now used by major brands such as AT&T, Proctor & Gamble and Toyota, among many others. Audience targeting means that online banners are served based on specific target audience criteria and browsing behaviors.

[6] Contextual targeting means that banner ads will be served to websites with surrounding content that is specific to the audience characteristics of the class such as visiting certain fashion shopping websites.

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of  Class Action Settlement – Case No. 14-md-02562-RWS                6

8396597v.1

reach of the direct mail/email outreach, while taking into account a potential undeliverable rate of six percent to project media delivery.

21.     Further, I have been informed that Blue Buffalo has loyalty name and address records for approximately 1,800,000, potential class members. Therefore, based on this information, and taking into consideration potential undeliverable mail, we estimate that direct mail/email will reach an estimated 45 percent of this Class.

22.     Pursuant to the terms of the Settlement Agreement section 4, paragraph 4.4 Heffler shall send the Class Notice by E-Mail. As directed under the terms of the Settlement Agreement, the E-mailed Notice will be sent within 30 days of the Preliminary Approval Order to Settlement Class Members. For those class members whose E-Mailed Notice was not deliverable, a Post-Card Notice will be mailed by U.S. First Class Mail within 50 days of the Preliminary Approval Order.

23.     Pursuant to the Settlement Agreement, section 4, paragraphs 4.1 to 4.3, the proposed Class Notice, claim form and summary notice will be written in a clear, plain and concise style appropriate for the target audience.  Both notices will comport with the plain language standards for legal noticing.   The Class Notice shall contain a description of the nature of the Action, including information on the identity of Class Members, how the proposed Settlement would provide relief to the Class, their rights as well as important dates and deadlines.  Additionally, the notices will include the website address, which will be prominently positioned in the Class Notice.

## CAFA NOTICE

24.     At Defendant's direction, Heffler will provide notice of the proposed Settlement under CAFA 28 U.S.C. §1715(b) to appropriate state and federal government officials.

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of Class Action Settlement – Case No. 14-md-02562-RWS                                    7

8396597v.1

**NOTICE PUBLICATION**

**METHODOLOGY**

25.     To appropriately design and target the notice publication component of the Notice Program, we have used a scientific methodology that is used throughout the advertising industry and that has been embraced by courts in the United States.   See *Daubert v. Merrell Dow Pharmaceuticals* 509 U.S. 579 (1993) (experts must apply a technique that may be tested by peers and use industry accepted methodology); and, *Kumho Tire Co. v. Carmichael* 526 U.S. 137 (1999), (same).  The methodology, which is discussed in this declaration has been accepted by numerous courts, including those listed in paragraphs 3 and 4 above.

26.     Media is typically purchased based on both demographic (i.e., age, gender, ethnicity, income, education) and qualitative (i.e., lifestyle, product and brand preference, media use) characteristics.  Based on these characteristics, populations will tend to use media in differing ways.

27.     In order to determine the most appropriate media to employ in this notice publication program, my staff and I have studied data provided by nationally syndicated media research bureaus, including GfK Mediamark Research and Intelligence, LLC ("GfK MRI") and comScore.

28.     Specifically, this research identifies which media channels are favored by the target audience (*i.e.*, the potential class members), including, for example, browsing behaviors on the internet, on social media channels, and in magazines.

**MAGAZINE**

29.     *People Magazine* is a widely circulated weekly publication.  *People* reaches an estimated 18.6  percent of dog or cat owners, and more specifically 21.2 percent of Blue Buffalo purchasers. Importantly, Blue Buffalo pet food purchasers are 20

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of  Class Action Settlement – Case No. 14-md-02562-RWS

8

8396597v.1

percent more likely than the average person to read this title. *People Magazine* reports a circulation 3,537,318, with over 42,058,000 readers.[7] Specifically, published notice will appear in *People Magazine* once as a ½-page black and white ad.

## DIGITAL MEDIA

30.     To further enhance the notice effort, HF Media will incorporate a highly targeted, online and mobile media, approach. Unlike traditional media, digital media, may be purchased through more granular target audience characteristics such as shopping behavior.

31.     Here, HF Media will employ online audience targeting and contextual targeting to reach potential class members with a focus on past purchasers and in-market Natural Pet Food purchasers. By combining the most sophisticated data targeting (offline purchase Data and behavioral Data) and contextual targeting we will be specifically reaching dog and cat owners with additional targeting focusing on users with interests in Premium Pet Products and Food and interests in the Blue Buffalo brand. By combining these various layers of targeting we are able to cast an appropriately wide net of dog and cat owners who may be past and present purchasers of Blue Buffalo Pet Food, thereby minimizing wasted impressions.

32.     The program will deliver impressions across two premium online display networks, comprised of hundreds of premium individual web sites, Google AdWords (keyword search) and a highly targeted mobile and App network.

33.     Online, and mobile banner ads will allow users to self identify themselves as potential Class Members, where they may then "click" on the banner and then link directly to the official website for more information.

---

[7] Readers are defined as those who read a magazine in addition to the subscriber. Readers are calculated based on a pass along factor. *People Magazine's* pass along factor is 11.89. Source: GfK MRI 2015 Doublebase.

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of Class Action Settlement – Case No. 14-md-02562-RWS

9

8396597v.1

## PRESS RELEASE

34.      Further, the program will include a neutral press release that will be issued through PR News Wire's USA 1 network. The US1 Newsline distributes broadly to thousands of media outlets including newspapers, national wire services, television and radio station media websites.

## MONITORING FOR MEDIA MENTIONS

35.      HF Media will monitor the various media for resulting mentions of the settlement and provide a detailed report to the Court upon completion of the notice program.

## OFFICIAL SETTLEMENT WEBSITE

36.      Importantly, the Notice Program includes an official website, www.petfoodsettlement.com, which will be maintained pursuant to the Settlement Agreement, section 4, paragraph 4.5 by Heffler. This website will serve as a "landing page" for the banner advertising, where Class Members may obtain further information about the class action, their rights, dates and deadlines and related claim information. The website will be prominently displayed in the publication notice along with the toll-free number. The website established and maintained by Heffler will be accessible 24-hours a day, 7-days a week.

## TOLL-FREE TELEPHONE INFORMATION LINE

37.      Further, Heffler will establish and will maintain a 24-hour toll-free telephone line where callers may obtain information about the class action.

## CONCLUSION

38.      Based on my broad experience, planning and implementing class action notice programs, in my opinion, the outreach efforts described in the Agreement and

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of Class Action Settlement – Case No. 14-md-02562-RWS

10

8396597v.1

above reflect a particularly appropriate, highly targeted and modern way to provide notice to this class. The notice program includes a multi-channel approach to notice, which combines traditional, online, social, and mobile notice. The combined measured outreach, inclusive of magazine and online media, is estimated to reach an estimated 74 percent of targeted potential class members with an average frequency of 1.8 times. In my opinion, the efforts used in this Notice Program have been reasonably calculated to provide notice that is consistent with best practicable court approved notice programs in similar matters, and which are consistent with the Federal Judicial Center's guidelines concerning appropriate reach.

39.     I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of December 2015 in Tigard, Oregon

Jeanne C. Finegan

Declaration of Jeanne C. Finegan, APR in Support of Plaintiffs' Motion for Preliminary Approval
of Class Action Settlement – Case No. 14-md-02562-RWS                                   11

8396597v.1

**Exhibit A**



# JEANNE C. FINEGAN, APR

### BIOGRAPHY



Jeanne Finegan, APR, is President and Chief Media Officer of HF Media, LLC. (a division of Heffler Claims Group), named by *Diversity Journal* as one of the "Top 100 Women Worth Watching," has more than 30 years of communications and advertising experience and is a distinguished legal notice and communications expert. During her tenure, she has planned and implemented hundreds of high profile, complex legal notice communication programs. She is a recognized notice expert in both the United States and in Canada, with extensive international notice experience spanning more than 140 countries and over 40 languages.

Ms. Finegan has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications. She has served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns. Further, she has planned and implemented large-scale government enforcement notice programs for the Federal Trade Commission (FTC) and the Securities and Exchange Commission (SEC).

Ms. Finegan is accredited in Public Relations (APR) by the Universal Accreditation Board, which is a program administered by the Public Relations Society of America (PRSA), and has served on examination panels for APR candidates. Additionally, she has served as a judge for prestigious PRSA awards.

Ms. Finegan has provided expert testimony before Congress on issues of notice, and expert testimony in both state and federal courts regarding notification campaigns. She has conducted numerous media audits of proposed notice programs to assess the adequacy of those programs under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.

She was an early pioneer of plain language in notice (as noted in a RAND study,[1]) and continues to set the standard for modern outreach as the first notice expert to integrate social and mobile media into court approved legal notice programs.

In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans. She has designed legal notices for a wide range of class actions and consumer matters that include product liability, construction defect, antitrust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, government enforcement actions, securities, banking, insurance, mass tort, restructuring and product recall.

---

1 Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN. RAND (2000).



<u>**JUDICIAL COMMENTS AND LEGAL NOTICE CASES**</u>

In evaluating the adequacy and effectiveness of Ms. Finegan's notice campaigns, courts have repeatedly recognized her excellent work. The following excerpts provide some examples of such judicial approval.

***In re: Skechers Toning Shoes Products Liability Litigation***, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgement granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

> … ***The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.***

***Brody v. Merck & Co., Inc., et al,*** No. 3:12-cv-04774-PGS-DEA (N.J.) (Jt Hearing for Prelim App, Sept. 27, 2012, transcript page 34). During the Hearing on Joint Application for Preliminary Approval of Class Action, the Honorable Peter G. Sheridan praised Ms. Finegan, noting:

> ***Ms. Finegan did a great job in testifying as to what the class administrator will do. So, I'm certain that all the class members or as many that can be found, will be given some very adequate notice in which they can perfect their claim.***

***Quinn v. Walgreen Co., Wal-Mart Stores Inc.,*** 7:12 CV-8187-VB (NYSD) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti gave accolades to Ms. Finegan, noting:

> ***"The notice plan was the best practicable under the circumstances. … [and] "the proof is in the pudding. This settlement has resulted in more than 45,000 claims which is 10,000 more than the Pearson case and more than 40,000 more than in a glucosamine case pending in the Southern District of California I've been advised about. So the notice has reached a lot of people and a lot of people have made claims."***

***In Re: TracFone Unlimited Service Plan Litigation,*** *No. C-13-3440 EMC (ND Ca).* In the Final Order and Judgment Granting Class Settlement, July 2, 2015, the Honorable Edward M. Chen noted:

> ***"…[D]epending on the extent of the overlap between those class members who will automatically receive a payment and those who filed claims, the total claims rate is estimated to be approximately 25-30%. This is an excellent result...***

***DeHoyos, et al. v. Allstate Ins. Co.***, No. SA-01-CA-1010 (W.D.Tx. 2001). In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:



*[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members. Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts. Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish.*

***In re: Reebok Easytone Litigation***, No. 10-CV-11977 (D. MA.). The Honorable F. Dennis Saylor IV stated in the Final Approval Order:

*The Court finds that the dissemination of the Class Notice, the publication of the Summary Settlement Notice, the establishment of a website containing settlement-related materials, the establishment of a toll-free telephone number, and all other notice methods set forth in the Settlement Agreement and [Ms. Finegan's] Declaration and the notice dissemination methodology implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order… constituted the best practicable notice to Class Members under the circumstances of the Actions.*

**Bezdek v. Vibram USA and Vibram FiveFingers** LLC, No 12-10513 (D. MA) The Honorable Douglas P. Woodlock stated in the Final Memorandum and Order:

*…[O]n independent review I find that the notice program was robust, particularly in its online presence, and implemented as directed in my Order authorizing notice. …I find that notice was given to the Settlement class members by the best means "practicable under the circumstances." Fed.R.Civ.P. 23(c)(2).*

***Gemelas v. The Dannon Company Inc.,*** No. 08-cv-00236-DAP (N.D. Ohio). In granting final approval for the settlement, the Honorable Dan A. Polster stated:

*In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, [Ms. Finegan] caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members. … The distribution of Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.*

***Pashmova v. New Balance Athletic Shoes, Inc.***, 1:11-cv-10001-LTS (D. Mass.). The Honorable Leo T. Sorokin stated in the Final Approval Order:

*The Class Notice, the Summary Settlement Notice, the web site, and all other notices in the Settlement Agreement and the Declaration of [Ms Finegan], and the notice*



*methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Actions, the terms of the Settlement and their rights under the settlement … met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Hartless v. Clorox Company**, No. 06-CV-2705 (CAB) (S.D.Cal.). In the Final Order Approving Settlement, the Honorable Cathy N. Bencivengo found:

*The Class Notice advised Class members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Class. The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

**McDonough et al v. Toys 'R' Us et al,** No. 09:-cv-06151-AB (E.D. Pa.). In the Final Order and Judgment Approving Settlement, the Honorable Anita Brody stated:

*The Court finds that the Notice provided constituted the best notice practicable under the circumstances and constituted valid, due and sufficient notice to all persons entitled thereto.*

**In re: Pre-Filled Propane Tank Marketing & Sales Practices Litigation,** No. 4:09-md-02086-GAF (W.D. Mo.) In granting final approval to the settlement, the Honorable Gary A. Fenner stated:

*The notice program included individual notice to class members who could be identified by Ferrellgas, publication notices, and notices affixed to Blue Rhino propane tank cylinders sold by Ferrellgas through various retailers. … The Court finds the notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process and provided to the Class the best notice practicable under the circumstances.*

**Stern v. AT&T Mobility Wireless**, No. 09-cv-1112 CAS-AGR (C.D.Cal. 2009). In the Final Approval Order, the Honorable Christina A. Snyder stated:

*[T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.*



*In re: Processed Egg Prods. Antitrust Litig.*, MDL No. 08-md-02002 (E.D.P.A.). In the Order Granting Final Approval of Settlement , Judge Gene E.K. Pratter stated:

> *The Notice appropriately detailed the nature of the action, the Class claims, the definition of the Class and Subclasses, the terms of the proposed settlement agreement, and the class members' right to object or request exclusion from the settlement and the timing and manner for doing so.… Accordingly, the Court determines that the notice provided to the putative Class Members constitutes adequate notice in satisfaction of the demands of Rule 23.*

*In re Polyurethane Foam Antitrust Litigation*, 10- MD-2196 (N.D. OH). In the Order Granting Final Approval of Voluntary Dismissal and Settlement of Defendant Domfoam and Others, the Honorable Jack Zouhary stated:

> *The notice program included individual notice to members of the Class who could be identified through reasonable effort, as well as extensive publication of a summary notice. The Notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreements, and constituted due and sufficient notice for all other purposes to all persons and entities entitled to receive notice.*

*Rojas v Career Education Corporation*, No. 10-cv-05260 (N.D.E.D. IL) In the Final Approval Order dated October 25, 2012, the Honorable Virgina M. Kendall stated:

> *The Court Approved notice to the Settlement Class as the best notice practicable under the circumstance including individual notice via U.S. Mail and by email to the class members whose addresses were obtained from each Class Member's wireless carrier or from a commercially reasonable reverse cell phone number look-up service, nationwide magazine publication, website publication, targeted on-line advertising, and a press release. Notice has been successfully implemented and satisfies the requirements of the Federal Rule of Civil Procedure 23 and Due Process.*

*Golloher v Todd Christopher International, Inc. DBA Vogue International (Organix),* No. C 1206002 N.D CA. In the Final Order and Judgment Approving Settlement, the Honorable Richard Seeborg stated:

> *The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

*Stefanyshyn v. Consolidated Industries*, No. 79 D 01-9712-CT-59 (Tippecanoe County Sup. Ct., Ind.). In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:



*The long and short form notices provided a neutral, informative, and clear explanation of the Settlement. … The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements. … The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.*

*McGee v. Continental Tire North America, Inc. et al*, No. 06-6234-(GEB) (D.N.J.).

*The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices,*

*Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al*., No. 04-2702 (JLL) (D.N.J.).  The Court stated that:

*[A]ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices. … By working with a nationally syndicated media research firm, [Finegan's firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members.  (Preliminary Approval Order at p. 9).  .  .  .  The Court agrees with Class Counsel that this was more than adequate.  (Id. at § 5.2).*

*In re: Nortel Network Corp., Sec. Litig.*, No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.).  Ms. Finegan designed and implemented the extensive United States and Canadian notice programs in this case.  The Canadian program was published in both French and English, and targeted virtually all investors of stock in Canada.  *See* www.nortelsecuritieslitigation.com.  Of the U.S. notice program, the Honorable Loretta A. Preska stated:



> *The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

Regarding the B.C. Canadian Notice effort: *Jeffrey v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:

> *The efforts to give notice to potential class members in this case have been thorough. There has been a broad media campaign to publicize the proposed settlement and the court processes. There has also been a direct mail campaign directed at probable investors. I am advised that over 1.2 million claim packages were mailed to persons around the world. In addition, packages have been available through the worldwide web site nortelsecuritieslitigation.com on the Internet. Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement.*

***Mayo v. Walmart Stores and Sam's Club***, No. 5:06 CV-93-R (W.D.Ky.). In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated:

> *According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail.*
> *The Settlement Administrator … has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.*

***Fishbein v. All Market Inc***., (d/b/a **Vita Coco**) No. 11-cv-05580 (S.D.N.Y.). In granting final approval of the settlement, the Honorable J. Paul Oetken stated:

> *"The Court finds that the dissemination of Class Notice pursuant to the Notice Program…constituted the best practicable notice to Settlement Class Members under the circumstances of this Litigation … and was reasonable and constituted due, adequate and sufficient notice to all persons entitled to such notice, and fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rules 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable laws."*



*Lucas, et al. v. Kmart Corp.*, No. 99-cv-01923 (D.Colo.), wherein the Court recognized Jeanne Finegan as an expert in the design of notice programs, and stated:

> *The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).*

*In re: Johns-Manville Corp.* **(Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)**, No 82-11656, 57, 660, 661, 665-73, 75 and 76 (BRL) (Bankr. S.D.N.Y.). The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company. In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, slip op. at 47-48 (Aug. 17, 2004), the Honorable Burton R. Lifland, Chief Justice, stated:

> *As demonstrated by Findings of Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such program did apprise the overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . . The results simply speak for themselves.*

*Pigford v. Glickman and U.S. Department of Agriculture*, No. 97-1978. 98-1693 (PLF) (D.D.C.). This matter was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination. In his Opinion, the Honorable Paul L. Friedman commended the parties with respect to the notice program, stating;

> *The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations. . . . The Court concludes that class members have received more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree.*

*In re: Louisiana-Pacific Inner-Seal Siding Litig.*, Nos. 879-JE, and 1453-JE (D.Or.). Under the terms of the Settlement, three separate notice programs were to be implemented at three-year intervals over a period of six years. In the first notice campaign, Ms. Finegan implemented the print advertising and Internet components of the Notice program. In approving the legal notice communication plan, the Honorable Robert E. Jones stated:



*The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign.*

Additionally, with regard to the third-year notice program for Louisiana-Pacific, the Honorable Richard Unis, Special Master, commented that the notice was:

*…well formulated to conform to the definition set by the court as adequate and reasonable notice.  Indeed, I believe the record should also reflect the Court's appreciation to Ms. Finegan for all the work she's done, ensuring that noticing was done correctly and professionally, while paying careful attention to overall costs.  Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2).*

*In re: Expedia Hotel Taxes and Fees Litigation*, No. 05-2-02060-1 (SEA) (Sup. Ct. of Wash. in and for King County).  In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

*The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances.  All of these forms of Notice directed Class Members to a Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement.  The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.*

*Rene Rosales v. Fortune Ins. Co.*, No. 99-04588 CA (41) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).  Ms. Finegan provided expert testimony in this matter.  She conducted an audit on behalf of intervening attorneys for the proposed notification to individuals insured with personal injury insurance.
Based upon the audit, Ms. Finegan testified that the proposed notice program was inadequate.  The Court agreed and signed an Order Granting Intervenors' Objections to Class Action Settlement, stating:

*The Court finds that Ms. Finegan is qualified as an expert on class notice and effective media campaigns.  The Court finds that her testimony is credible and reliable.*

*Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation*, No. 95-151-M (Cir. Ct., Choctaw County, Ala.).  This litigation focused on past and present owners of structures sided with Abitibi-Price siding.  The notice program that Ms. Finegan designed and implemented was national in scope and received the following praise from the Honorable J. Lee McPhearson:



*The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action.  This finding is based on the overwhelming evidence of the adequacy of the notice program. … The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.*

**Wilson v. Massachusetts Mut. Life Ins. Co.**, No. D-101-CV 98-02814 (First Judicial Dist. Ct., County of Santa Fe, N.M.). This was a nationwide notification program that included all persons in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis. The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com.  In granting preliminary approval to the settlement, the Honorable Art Encinias found:

*[T]he Notice Plan [is] the best practicable notice that is reasonably calculated, under the circumstances of the action.  …[and] meets or exceeds all applicable requirements of the law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.*

**Sparks v. AT&T Corp.**, No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.). The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Ms. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States.
In granting final approval to the settlement, the Court found:

*The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.*

**In re: Georgia-Pacific Toxic Explosion Litig.**, No. 98 CVC05-3535 (Ct. of Common Pleas, Franklin County, Ohio).  Ms. Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper.  The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement.  In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner stated:



> *[N]otice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C).*

*In re: American Cyanamid*, No. CV-97-0581-BH-M (S.D.Al.). The media program targeted Farmers who had purchased crop protection chemicals manufactured by American Cyanamid. In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote:

> *The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential members of the Temporary Class Settlement.*

*In re: First Alert Smoke Alarm Litig.*, No. CV-98-C-1546-W (UWC) (N.D.Al.). Ms. Finegan designed and implemented a nationwide legal notice and public information program. The public information program ran over a two-year period to inform those with smoke alarms of the performance characteristics between photoelectric and ionization detection. The media program included network and cable television, magazine and specialty trade publications. In the Findings and Order Preliminarily Certifying the Class for Settlement Purposes, Preliminarily Approving Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, and Scheduling a Fairness Hearing, the Honorable C.W. Clemon wrote that the notice plan:

> *…constitutes due, adequate and sufficient notice to all Class Members; and (v) meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.*

*In re: James Hardie Roofing Litig.,* No. 00-2-17945-65SEA (Sup. Ct. of Wash., King County). The nationwide legal notice program included advertising on television, in print and on the Internet. The program was designed to reach all persons who own any structure with JHBP roofing products. In the Final Order and Judgment, the Honorable Steven Scott stated:

> *The notice program required by the Preliminary Order has been fully carried out… [and was] extensive. The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law.*

*Barden v. Hurd Millwork Co. Inc., et al,* No. 2:6-cv-00046 (LA) (E.D.Wis.) (*"The Court approves, as to form and content, the notice plan and finds that such notice is the best practicable under*



*the circumstances under Federal Rule of Civil Procedure 23(c)(2)(B) and constitutes notice in a reasonable manner under Rule 23(e)(1)."*)

*Altieri v. Reebok*, No. 4:10-cv-11977 (FDS) (D.C.Mass.) (*"The Court finds that the notices … constitute the best practicable notice….. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices."*)

*Marenco v. Visa Inc.,* No. CV 10-08022 (DMG) (C.D.Cal.) (*"[T]he Court finds that the notice plan…meets the requirements of due process, California law, and other applicable precedent. The Court finds that the proposed notice program is designed to provide the Class with the best notice practicable, under the circumstances of this action, of the pendency of this litigation and of the proposed Settlement's terms, conditions, and procedures, and shall constitute due and sufficient notice to all persons entitled thereto under California law, the United States Constitution, and any other applicable law."*)

*Palmer v. Sprint Solutions, Inc.,* No. 09-cv-01211 (JLR) (W.D.Wa.) (*"The means of notice were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to be provide3d with notice."*)

*In re: Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. 1:08-md-01982 RDB (D. Md. N. Div.) (*"The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement."*)

*Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation*, No. 01043771 (Sup. Ct. Cal., County of Santa Barbara) (*"Notice provided was the best practicable under the circumstances."*).

*Deke, et al. v. Cardservice Internat'l,* Case No. BC 271679, slip op. at 3 (Sup. Ct. Cal., County of Los Angeles) (*"The Class Notice satisfied the requirements of California Rules of Court 1856 and 1859 and due process and constituted the best notice practicable under the circumstances."*).

*Levine, et al. v. Dr. Philip C. McGraw, et al*., Case No. BC 312830 (Los Angeles County Super. Ct., Cal.) (*"[T]he plan for notice to the Settlement Class … constitutes the best notice practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class … and satisfies the requirements of California law and federal due process of law."*).

*In re: Canadian Air Cargo Shipping Class Actions*, Court File No. 50389CP, Ontario Superior Court of Justice, Supreme Court of British Columbia, Quebec Superior Court (*"I am satisfied the*



*proposed form of notice meets the requirements of s. 17(6) of the CPA  and the proposed method of notice is appropriate."*).

*Fischer et al v. IG Investment Management, Ltd. et al*, Court File No. 06-CV-307599CP, Ontario Superior Court of Justice.

*In re: Vivendi Universal, S.A. Securities Litigation*, No. 02-cv-5571 (RJH)(HBP) (S.D.N.Y.).

*In re: Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).

*Berger, et al., v. Property ID Corporation, et al.*, No. CV 05-5373-GHK (CWx) (C.D.Cal.).

*Lozano v. AT&T Mobility Wireless*, No. 02-cv-0090 CAS (AJWx) (C.D.Cal.).

*Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Co., Philip Morris, Inc., Brown & Williamson Tobacco Corp.,* No. 94-08273 CA (22) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Royal Dutch/Shell Transport Securities Litigation,* No. 04 Civ. 374 (JAP) (Consolidated Cases) (D. N.J.).

*In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding*, No. 4347 (Sup. Ct. of Cal., County of Los Angeles).

*UAW v. General Motors Corporation*, No: 05-73991 (E.D.MI).

*Wicon, Inc. v. Cardservice Intern'l, Inc.*, BC 320215 (Sup. Ct. of Cal., County of Los Angeles).

*In re: SmithKline Beecham Clinical Billing Litig.*, No. CV. No. 97-L-1230 (Third Judicial Cir., Madison County, Ill.).  Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.

*MacGregor v. Schering-Plough Corp.,* No. EC248041 (Sup. Ct. Cal., County of Los Angeles).  This nationwide notification program was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough.  Because no mailing list was available, notice was accomplished entirely through the media program.

*In re: Swiss Banks Holocaust Victim Asset Litig.*, No. CV-96-4849 (E.D.N.Y.).  Ms. Finegan managed the design and implementation of the Internet site on this historic case.  The site was developed in 21 native languages.  It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors. www.swissbankclaims.com.



***In re: Exxon Valdez Oil Spill Litig.***, No. A89-095-CV (HRH) (Consolidated) (D. Alaska). Ms. Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.

***In re: Johns-Manville Phenolic Foam Litig.***, No. CV 96-10069 (D. Mass). The nationwide multi-media legal notice program was designed to reach all Persons who owned any structure, including an industrial building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.

***Bristow v Fleetwood Enters Litig.***, No Civ 00-0082-S-EJL (D. Id). Ms. Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood's housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

***In re: New Orleans Tank Car Leakage Fire Litig.***, No 87-16374 (Civil Dist. Ct., Parish of Orleans, LA) (2000). This case resulted in one of the largest settlements in U.S. history. This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.

***Garria Spencer v. Shell Oil Co.***, No. CV 94-074(Dist. Ct., Harris County, Tex.). The nationwide notification program was designed to reach individuals who owned real property or structures in the United States which contained polybutylene plumbing with acetyl insert or metal insert fittings.

***In re: Hurd Millwork Heat Mirror™ Litig.***, No. CV-772488 (Sup. Ct. of Cal., County of Santa Clara). This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

***Laborers Dist. Counsel of Alabama Health and Welfare Fund v. Clinical Lab. Servs., Inc***, No. CV–97-C-629-W (N.D. Ala.). Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

***In re: StarLink Corn Prods. Liab. Litig.***, No. 01-C-1181 (N.D. Ill).. Ms. Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

***In re: MCI Non-Subscriber RatePayers Litig.***, MDL Docket No. 1275, 3:99-cv-01275 (S.D.Ill.). The advertising and media notice program, found to be "more than adequate" by the Court, was designed with the understanding that the litigation affected all persons or entities who were



customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.

*In re: Albertson's Back Pay Litig.*, No. 97-0159-S-BLW (D.Id.).  Ms. Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

*In re: Georgia Pacific Hardboard Siding Recovering Program*, No. CV-95-3330-RG (Cir. Ct., Mobile County, Ala.).  Ms. Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of the pending matter. Notice was provided through advertisements, which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., Nos. 1203, 99-20593.   Ms. Finegan worked as a consultant to the National Diet Drug Settlement Committee on notification issues.   The resulting notice program was described and complimented at length in the Court's Memorandum and Pretrial Order 1415, approving the settlement,

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., 2000 WL 1222042, Nos. 1203, 99-20593 (E.D.Pa. Aug. 28, 2002).

Ms. Finegan designed the Notice programs for multiple state antitrust cases filed against the Microsoft Corporation.  In those cases, it was generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs designed by Jeanne Finegan and listed below targeted both individual users and business users of this software.  The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

*In re: Florida Microsoft Antitrust Litig. Settlement*, No.  99-27340 CA 11 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Montana Microsoft Antitrust Litig. Settlement*, No. DCV 2000 219 (First Judicial Dist. Ct., Lewis & Clark Co., Mt.).

*In re: South Dakota Microsoft Antitrust Litig. Settlement*, No. 00-235(Sixth Judicial Cir., County of Hughes, S.D.).

*In re: Kansas Microsoft Antitrust Litig. Settlement*, No. 99C17089 Division No. 15 Consolidated Cases (Dist. Ct., Johnson County, Kan.) ("The Class Notice provided was the best notice



practicable under the circumstances and fully complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3.").

***In re: North Carolina Microsoft Antitrust Litig. Settlement***, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln) (General Court of Justice Sup. Ct., Wake and Lincoln Counties, N.C.).

***In re: ABS II Pipes Litig.***, No. 3126 (Sup. Ct. of Cal., Contra Costa County). The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe.

***In re: Avenue A Inc. Internet Privacy Litig.***, No: C00-1964C (W.D. Wash.).

***In re: Lorazepam and Clorazepate Antitrust Litig.***, No. 1290 (TFH) (D.C.C.).

***In re: Providian Fin. Corp. ERISA Litig.***, No C-01-5027 (N.D. Cal.).

***In re: H & R Block., et al Tax Refund Litig.***, No. 97195023/CC4111 (MD Cir. Ct., Baltimore City).

***In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.***, No. 06C01-9912 (Cir. Ct., Boone County, Ind.).

***In re: Sprint Corp. Optical Fiber Litig.***, No: 9907 CV 284 (Dist. Ct., Leavenworth County, Kan).

***In re: Shelter Mutual Ins. Co. Litig.***, No. CJ-2002-263 (Dist.Ct., Canadian County. Ok).

***In re: Conseco, Inc. Sec. Litig.***, No: IP-00-0585-C Y/S CA (S.D. Ind.).

***In re: Nat'l Treasury Employees Union, et al.***, 54 Fed. Cl. 791 (2002).

***In re: City of Miami Parking Litig.***, Nos. 99-21456 CA-10, 99-23765 – CA-10 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

***In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Comm.***, No. L 1:01CV658 (E.D. Tx.).

***Alsea Veneer v. State of Oregon A.A***., No. 88C-11289-88C-11300.


## SEC ENFORCEMENT NOTICE PROGRAM EXPERIENCE

***SEC v. Vivendi Universal, S.A., et al.,*** Case No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y.).
The Notice program included publication in 11 different countries and eight different languages.

***SEC v. Royal Dutch Petroleum Company***, No.04-3359 (S.D. Tex.)



## FEDERAL TRADE COMMISSION NOTICE PROGRAM EXPERIENCE

**FTC v. TracFone Wireless, Inc**., Case No. 15-cv-00392-EMC.

**FTC v. Skechers U.S.A., Inc.,** No. 1:12-cv-01214-JG (N.D. Ohio).

**FTC  v. Reebok International Ltd.**,  No. 11-cv-02046 (N.D. Ohio)

**FTC v. Chanery and RTC Research and Development LLC [Nutraquest]**, No :05-cv-03460 (D.N.J.)

## BANKRUPTCY EXPERIENCE

Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:

**In re AMR Corporation [American Airlines], et al.**, No. 11-15463 (SHL) (Bankr. S.D.N.Y.) **("***due and proper notice [was] provided, and … no other or further notice need be provided."*)

**In re Jackson Hewitt Tax Service Inc**., et al., No 11-11587 (Bankr. D.Del.) (2011). The debtors sought to provide notice of their filing as well as the hearing to approve their disclosure statement and confirm their plan to a large group of current and former customers, many of whom current and viable addresses promised to be a difficult (if not impossible) and costly undertaking. The court approved a publication notice program designed and implemented by Finegan and the administrator, that included more than 350 local newspaper and television websites, two national online networks (24/7 Real Media, Inc. and Microsoft Media Network), a website notice linked to a press release and notice on eight major websites, including CNN and Yahoo. These online efforts supplemented the print publication and direct-mail notice provided to known claimants and their attorneys, as well as to the state attorneys general of all 50 states. The *Jackson Hewitt* notice program constituted one of the first large chapter 11 cases to incorporate online advertising.

**In re: Nutraquest Inc.**, No. 03-44147 (Bankr. D.N.J.)

**In re: General Motors Corp. et al**, No. 09-50026 (Bankr. S.D.N.Y.).  This case is the 4th largest bankruptcy in U.S. history.   Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.

**In re: ACandS, Inc**.*,* No. 0212687 (Bankr. D.Del.) (2007) (**"***Adequate notice of the Motion and of the hearing on the Motion was given."***).

**In re: United Airlines**, No. 02-B-48191 (Bankr. N.D Ill.).  Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs.  The notice was



published in 11 countries and translated into 6 languages. Ms. Finegan worked closely with legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

*In re: Enron*, No. 01-16034 (Bankr. S.D.N.Y.).   Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*In re: Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.).   Ms. Finegan originally designed the information website.  This Internet site is a major information hub that has various forms in 15 languages.

*In re: Harnischfeger Inds.*, No. 99-2171 (RJW) Jointly Administered (Bankr. D. Del.).  Ms. Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.

*In re: Keene Corp.*, No. 93B 46090 (SMB), (Bankr. E.D. MO.).  Ms. Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

*In re: Lamonts*, No. 00-00045 (Bankr. W.D. Wash.).  Ms. Finegan designed an implemented multiple bankruptcy notice programs.

*In re: Monet Group Holdings*, Nos. 00-1936 (MFW) (Bankr. D. Del.).  Ms. Finegan designed and implemented a bar date notice.

*In re: Laclede Steel Co.*, No. 98-53121-399 (Bankr. E.D. MO.).   Ms. Finegan designed and implemented multiple bankruptcy notice programs.

*In re: Columbia Gas Transmission Corp.*, No. 91-804 (Bankr. S.D.N.Y.).  Ms. Finegan developed multiple nationwide legal notice notification programs for this case.

*In re: U.S.H. Corp. of New York, et al*. (Bankr. S.D.N.Y.)  Ms. Finegan designed and implemented a bar date advertising notification campaign.

*In re: Best Prods. Co., Inc.,* No. 96-35267-T, (Bankr. E.D. Va.).  Ms. Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan confirmation.

*In re: Lodgian, Inc., et al.*, No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA) (Bankr. S.D.N.Y).

*In re: Internat'l Total Servs, Inc., et al.*, Nos. 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y.).



***In re: Decora Inds., Inc. and Decora, Incorp.***, Nos. 00-4459 and 00-4460 (JJF) (Bankr. D. Del.).

***In re: Genesis Health Ventures, Inc., et al***, No. 002692 (PJW) (Bankr. D. Del.).

***In re: Tel. Warehouse, Inc., et al***, No. 00-2105 through 00-2110 (MFW) (Bankr. D. Del.).

***In re: United Cos. Fin. Corp., et al***, No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. Del.).

***In re: Caldor, Inc. New York, The Caldor Corp., Caldor, Inc. CT, et al.***, No. 95-B44080 (JLG) (Bankr. S.D.N.Y).

***In re: Physicians Health Corp., et al.***, No. 00-4482 (MFW) (Bankr. D. Del.).

***In re: GC Cos., et al.***, Nos. 00-3897 through 00-3927 (MFW) (Bankr. D. Del.).

***In re: Heilig-Meyers Co., et al.***, Nos. 00-34533 through 00-34538 (Bankr. E.D. Va.).

## PRODUCT RECALL AND CRISIS COMMUNICATION EXPERIENCE

***Reser's Fine Foods.*** Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart. Ms. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols.  Ms. Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

***Gulf Coast Claims Facility Notice Campaign.*** Finegan coordinated a massive outreach effort throughout the Gulf Coast region to notify those who have claims as a result of damages caused by the Deep Water Horizon Oil spill.  The notice campaign includes extensive advertising in newspapers throughout the region, Internet notice through local newspaper, television and radio websites and media relations. The Gulf Coast Claims Facility (GCCF) is an independent claims facility, funded by BP, for the resolution of claims by individuals and businesses for damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010.

***City of New Orleans Tax Revisions, Post-Hurricane Katrina.***  In 2007, the City of New Orleans revised property tax assessments for property owners.  As part of this process, it received numerous appeals to the assessments.  An administration firm served as liaison between the city and property owners, coordinating the hearing schedule and providing important information to property owners on the status of their appeal.  Central to this effort was the comprehensive outreach program designed by Ms. Finegan, which included a website and a



heavy schedule of television, radio and newspaper advertising, along with the coordination of key news interviews about the project picked up by local media.

## ARTICLES

Author, Why Class Members Should See An Online Ad More Than Once – Law360.com, New York (December 3, 2015, 2:52 PM ET).

Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, November 2011.

Quoted Expert, "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review, (2011), 53 S.C.L.R. (2d).

Co-Author, with Hon. Dickran Tevrizian – "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, 5/27/11.

Co-Author, with Hon. Dickran Tevrizian, Your Insight, "Expert Opinion: It's More Than Just a Report -Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," TXLR, Vol. 26, No. 21, 5/26/2011.

Quoted Expert, "Analysis of the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Guide:  A New Roadmap to Adequate Notice and Beyond," BNA Class Action Litigation Report, 12 CLASS 165, 2/25/11.

Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, 4/9/10 Vol. 11, No. 7 p. 343.

Quoted Expert, "Communication Technology Trends Pose Novel Notification Issues for Class Litigators," BNA Electronic Commerce and Law, 15 ECLR 109 1/27/2010.

Author, "Legal Notice: R U ready 2 adapt?" BNA Class Action Report, Vol. 10 Class 702, 7/24/2009.

Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Report, Vol. 9, No. 7, 4/11/2008, pp. 307-310.



Quoted Expert, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.

Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9 September, 2002.

Author, "Legal Notice, What You Need To Know and Why," Monograph, July 2002.

Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers," - International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.

Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," - International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.

Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, winter edition 1999.



**SPEAKER/EXPERT PANELIST/PRESENTER**

| | |
|---|---|
| SF Banking Attorney Assc. | Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA May 2015. |
| Perrin Class Action Conf. | Faculty Panelist, "Being Media Relevant, What It Means and Why It Matters – The Social Media Evolution: Trends, Challenges and Opportunities," Chicago, IL May 2015. |
| Bridgeport Continuing Ed. | Speaker, Webinar "Media Relevant in the Class Notice Context." July, 2014. |
| Bridgeport Continuing Ed. | Faculty Panelist, "Media Relevant in the Class Notice Context." Los Angeles, California, April 2014. |
| CASD 5th Annual | Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012. |
| Law Seminars International | Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media."  Chicago, IL, October 2011. ***Voted by attendees as one of the best presentations given.*** |
| CASD 4th Annual | Faculty Panelist, "Reasonable Notice - Insight for practitioners on the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, October 2011. |
| CLE International | Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011. |
| CASD | Faculty Panelist, "21st Century Class Notice and Outreach." 3nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010. |
| CASD | Faculty Panelist, "The Future of Notice." 2nd Annual Class Action Symposium CASD Symposium, San Diego California, October 2009. |
| American Bar Association | Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and |



Internationally – Meeting the Best Practicable Standard."

Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

Women Lawyers Assn.          Faculty Panelist, Women Lawyers Association of Los Angeles of Los Angeles, 2008.

(WLALA) CLE Presentation,    "The Anatomy of a Class Action."  Los Angeles, CA, February, 2008.

Warranty Chain Mgmt.         Faculty Panelist, Presentation Product Recall Simulation.  Tampa, Florida, March 2007.

Practicing Law Institute (PLI)  Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures – Evolving Notice Standards in the Internet Age.  New York/Boston (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco, CA, May 2006.

U.S. Consumer Product        Ms. Finegan participated as an expert panelist to the Consumer Product
Safety Commission            Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process. As a panelist, Ms Finegan discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts.  Bethesda MD, September 2003.

Weil, Gotshal & Manges       Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003.

Sidley & Austin              Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003.

Kirkland & Ellis             Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002.

Georgetown University Law    Faculty, CLE White Paper: "What are the best practicable methods to Center Mass Tort Litigation give notice? Dispelling the communications myth – A notice Institute disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C., November, 2001.



| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |
| --- | --- |
| McCutchin, Doyle, Brown | Speaker to litigation group in San Francisco and simulcast to four other & Enerson McCutchin locations, addressing the definition of effective notice and barriers to communication that affect due process in legal notice.  San Francisco, CA, June 2001. |
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |
| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice.  San Francisco and Los Angeles, CA, June 2000. |
| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |

## BACKGROUND

Ms Finegan's past experience includes working in senior management for leading Class Action Administration firms including The Garden City Group ("GCG") and Poorman-Douglas Corp., ("EPIQ"). Ms. Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications.  After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.

Prior to that, Ms. Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm).  As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs.  During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.



     Prior to Huntington Advertising, Ms. Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

     Additionally, Ms. Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem, Oregon. Ms. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming.  She was also the program/promotion manager at KECH-22 television.

     Ms. Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.

### MEMBERSHIPS, PROFESSIONAL CREDENTIALS

**APR -** The Universal Board of Accreditation Public Relations Society of America – Accredited.
**Member of the Public Relations Society of America**
**Member Canadian Public Relations Society**

**Also see *LinkedIn* page.**

**EXHIBIT 3**

# <u>LEGAL NOTICE</u>

## **If you purchased Blue Buffalo pet foods, you may be entitled to a Cash Refund from a class action settlement.**

A proposed settlement has been reached in a class action lawsuit claiming Blue Buffalo Company, Ltd. ("Blue Buffalo") pet foods (the "Products") labeling was false and deceptive and that it breached its 'True Blue Promise' that the Products do not include chicken/poultry by-product meals, corn, wheat or soy, or artificial preservatives. Blue Buffalo stands by its labeling and denies it did anything wrong. However, Blue Buffalo has settled to avoid the cost and distraction of litigation.

**Who is a Class Member?** You're a Class Member if you purchased any of the Blue Buffalo Products in the United States from May 7, 2008 through [Date of Preliminary Approval]. A complete list of eligible Blue Buffalo Products is found on the website below.

**What does the settlement provide?** Settlement funds of up to $32,000,000 will be made available to partially reimburse Class Members for the Products they purchased and to pay legal fees of not more than $8,000,000, and expenses and administrative costs of not more than $1,400,000. Blue Buffalo has also agreed to review specifications for all Blue Buffalo Products to ensure that they are consistent with all packaging claims found on the product and representations regarding the products found on the Blue Buffalo Website, and to review its supplier relationships and institute practices designed to ensure that all materials provided by its suppliers comply with the applicable product specifications.

**Class Members may choose one of the following options**:

**Option 1:** Settlement Class Members must complete a Claim Form. If you do not have valid Proof of Purchase you must (i) confirm under penalty of perjury that you purchased one or more Blue Buffalo Products during the Settlement Class Period and (ii) state the total amount of money that you spent on Blue Buffalo Products during the Settlement Class Period. For each $50 in purchases, eligible Class Members will receive $5.00 in the form of a cash payment up to a total of $10. A Settlement Class Member who confirms that they purchased one or more Blue Buffalo Products but did not spend at least $50 will be entitled to receive a $5.00 cash payment;

**Option 2:** Settlement Class Members who complete the Claim Form and provide valid Proof of Purchase, shall receive $5.00 in the form of a cash payment for each $50 in purchases of the Blue Buffalo Products up to a total of $200.

If the total value of claims submitted exceeds or falls short of the balance remaining in the Settlement Fund, then the compensation provided to each Settlement Class Member shall be reduced or increased pro rata.

**Class members *must mail or submit a completed claim form online* www.petfoodsettlement.com*. by (Month, Day, 2016).**

**What are my Options?**

**Do nothing:** you will not receive money but you **will** be bound by the decisions of the court regarding these claims, including certain releases of Blue Buffalo. **Exclude yourself:** you will maintain your right to sue Blue Buffalo about the legal claims in this case. To exclude yourself, you must do so in writing by [Month, Day 2016]. If you exclude yourself **you will not receive money from this settlement**. **Object:** you may write to the court and say why you don't like the Settlement. The objection deadline is [Month, day 2016].

The Court will hold a fairness hearing at [_____] **on Month, Day, 2016**, in the United States District Court for the Eastern District of Missouri, 111 South 10th Street, St. Louis, Missouri 63102 in Courtroom 16 South to determine the fairness, adequacy, and reasonableness of the settlement, to

consider whether to approve the settlement, and to consider a request by Class Counsel for payment of attorneys' fees and costs and class representative incentive awards. The motion for attorneys' fees and costs and plaintiff incentive awards will be posted on the website after they are filed. You may appear at the hearing, but you don't have to.

This is only a summary.  For complete details, including a list of affected products, a claim form, and detailed court documents and other information, call toll-free _____, visit *online* www.petfoodsettlement.com *by (Month, Day, 2016)*, or write to _____ Settlement Administrator c/o Heffler Claims Group, P.O. Box _____, Philadelphia, PA _____.

**EXHIBIT 4**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

## If you purchased Blue Buffalo products in the United States, you may be entitled to a cash refund from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

This Notice advises you of a proposed class action settlement. The settlement resolves a lawsuit over whether, after May 7, 2008, Blue Buffalo Company, Ltd. ("Blue Buffalo") breached its True Blue Promise, which states that Blue Buffalo Products contain no chicken/poultry by-product meals, no corn, wheat or soy, and no artificial preservatives. You should read this entire Notice carefully because your legal rights are affected whether you act or not.

| Your Legal Rights and Options as a Settlement Class Member | |
|---|---|
| **Submit a Claim Form by [Month Day, Year]** | This is the only way to receive a payment. |
| **Opt Out by [Month Day, Year]** | Get no payment. This is the only option that allows you to ever be a part of any future lawsuit against Blue Buffalo with respect to the legal claims in this case. |
| **Object by [Month Day, Year]** | Write to the Court if you don't like the settlement and tell the Court why you think it shouldn't be approved. |
| **Go to the Hearing on [Month Day, Year]** | Ask to speak in Court about the fairness of the settlement. |
| **Do Nothing** | Do not receive a payment. Give up your legal rights to sue Blue Buffalo about the claims in this case. |

Your rights and options are explained in this notice.

**Questions? Visit www.petfoodsettlement.com**
**Or Call (xxx) xxx-xxxx**
**DO NOT CALL BLUE BUFFALO OR THE COURT**

## What is this Notice and why is it important?

The Court sent you this Notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows.

This Notice explains the Lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

A class action is a lawsuit in which one or more individuals sue an individual(s), company or other entity on behalf of all other people who are in a similar position. Collectively, these people are referred to as a "Class" or "Class Members." In a class action, the court resolves certain legal issues, legal claims and defenses for all Class Members in one lawsuit, except for those who ask to be excluded from the Class. (See below for more information about excluding yourself from the Class.)

## What is this Lawsuit about?

The Lawsuit claimed that labeling for Blue Buffalo pet foods (the "Products") was false and deceptive in that it breached the True Blue Promise, which states that the Products contain no chicken/poultry by-product meals, no corn, wheat or soy, and no artificial preservatives. Blue Buffalo stands by its labeling and denies it did anything wrong.

## Why is there a settlement?

The Court did not decide who was right. Instead, both sides agreed to a settlement. By agreeing to a settlement, the Parties avoid the costs and risk of a trial and the Class will get compensation. The Class Representatives and their attorneys believe that the settlement is in the best interests of the Class Members.

## How do I know if I am in the Settlement Class?

To receive money from the settlement, you first have to determine if you are a Class Member. Class Members are those persons who purchased Blue Buffalo Products in the United States on and/or after May 7, 2008, up until the date this Notice was preliminarily approved. Excluded from the Class are officers, directors and employees of Blue Buffalo and its parent and/or subsidiaries, as well as judicial officers and employees of the Court.

## What Blue Buffalo products are covered in this settlement?

For a complete list of Blue Buffalo Products that are covered in this settlement, please visit the settlement website at www.petfoodsettlement.com. If you bought any of these Products during the Class Period and do not exclude yourself, you are a member of the Settlement Class and cannot sue again if the Court approves the Settlement.

## What cash payments does the settlement provide?

Class Members may elect a single option:

**Option 1:** Settlement Class Members who do not provide valid Proof of Purchase, and complete the Claim Form confirming under penalty of perjury (i) that they purchased one or more Blue Buffalo Products during the Settlement Class Period and (ii) the total sum of money spent by them on Blue Buffalo Products during the Settlement Class Period, shall receive, for each $50 in purchases, $5.00 in the form of a cash payment; provided, however, that recovery under this Option 1 may not exceed $10, and provided further that a Settlement Class Member who confirms that they purchased one or more Blue Buffalo Products but did not spend at least $50 on such purchases will nonetheless be entitled to a minimum recovery of a $5.00 cash payment; or

**Questions? Visit www.petfoodsettlement.com**
**DO NOT CALL BLUE BUFFALO OR THE COURT**

**Option 2:** Settlement Class Members who complete the Claim Form and provide valid Proof of Purchase showing their actual purchase(s) of Blue Buffalo Products during the Settlement Class Period shall receive, for each $50 in purchases, $5.00 in the form of a cash payment; provided, however, that recovery under this Option 2 may not exceed $200. To receive payment, a Claim Form MUST be completed and either be submitted online (www.petfoodsettlement) or postmarked by _____, 2016.

Class members are eligible for one claim submission per household. The actual amount a Class Member receives will depend on the amount of money available from the Settlement Fund described below and the number of claims made. If the total value of valid claims is less than the amount of money available to pay them, then Class Members submitting valid claims will receive the full amount of recovery they sought, and each award will be increased pro rata. If the total of valid claims exceeds the amount of money available to pay them, then each award will be reduced pro rata.

You may request a Claim Form online or by calling xxx-xxx-xxxx.

## The Settlement Value

Blue Buffalo has agreed to fund a settlement of up to $32,000,000. This fund will be used to pay valid claims submitted by Class Members, the costs to notify the Class about this Lawsuit and the settlement, the costs to administer the settlement, and payment of the attorneys representing the Class and related litigation expenses.

## When will I get my cash payment?

Cash payments will be made if the Court gives final approval to the proposed settlement and after the final approval is no longer subject to appeal.

A Settlement Hearing is scheduled for _____, 2016. If the Court approves the settlement and there are no appeals, the cash will be distributed approximately 45 days after the Settlement Hearing. If the Court does not approve the settlement, or if the settlement is overturned on appeal, no cash payments will be made.

## How will Blue Buffalo revise its practices?

Under the settlement, Blue Buffalo has agreed to ensure that it no longer represents to the public that the Blue Buffalo Products do not include chicken or poultry by-product meal unless or until: (i) all specifications for Blue Buffalo Products have been reviewed for the purpose of ensuring that they are consistent with all packaging claims found on the product and representations regarding the products found on the Blue Buffalo website; and
(ii) Blue Buffalo has reviewed its supplier relationships and has instituted practices designed to ensure that all materials provided by its suppliers comply with the applicable product specifications.

## Who represents my interests in the settlement?

The Court has appointed the Plaintiffs who brought the Lawsuit as the class representatives and **KamberLaw, LLC** as the lawyers for the class, sometimes referred to in this Notice as Class Counsel. The class representatives and Class Counsel will act as your representatives for this settlement if you do not exclude yourself from the Class.

The Court has appointed Alexia Keil, Nick Hutchison, Rachael D. Stone, Maja Mackenzie, Jonathan Fisher, David Delre, Beth Cox, Lori Canale, and Derek McCusker to represent you.

## Do I have to pay money to participate in the Class?

No. You will not be responsible for any cost or attorneys' fees incurred in this Lawsuit. If the Court approves the proposed settlement, Class Counsel will request that the Court award attorneys' fees in an amount not to exceed $8,000,000. In addition, incurred costs, expenses and settlement administration fees may also be awarded by the Court from the proposed settlement fund in an amount not to exceed $1,400,000.

**Questions? Visit www.petfoodsettlement.com**
**DO NOT CALL BLUE BUFFALO OR THE COURT**

## Can I exclude myself from the settlement?

You have the right not to be part of the Lawsuit by excluding yourself or "opting out" of the Class. If you wish to exclude yourself, you must send a letter or postcard, postmarked no later than _____, 2016 to Blue Buffalo Class Action Settlement Administrator, [administrator address]. Your letter must request exclusion from the Class and must be signed by you. You must include your full name, address and telephone number. If you do not include the required information or submit your request for exclusion on time, you will remain a Class Member and be bound by the settlement and Final Judgment and Order. If you exclude yourself from the Class, you give up your right to receive any money from the settlement, you will not be bound by the settlement or Final Judgment and Order, and you will not be barred from pursuing any individual claim you may otherwise have relating to the subject matter of the Lawsuit.

## I wish to object to the Settlement. What do I do?

If there is something about the settlement that you do not like, you may file an objection and may appear with an attorney at your own cost. You will still be in the settlement class, remain a Class Member, and will receive benefits if the settlement is approved and you timely submit your Claim Form. *Even if you object, you may return the Claim Form to receive a cash payment.* If you want to object, you must submit your objection in writing to the Court, Class Counsel, and Blue Buffalo's Counsel. Your objection must include:

    (1) Your name, address, telephone number, and, if available, your e-mail address;

    (2) Your signature;

    (3) The reasons why you object;

    (4) Whether you intend to appear at the Final Approval Hearing;

    (5) The case name and number of this lawsuit, which is IN RE BLUE BUFFALO COMPANY, LTD. MARKETING AND SALES PRACTICES LITIGATION, Case No. 14-md-02562-RWS; and

    (6) If you are represented by a lawyer, the name, address and telephone number of that lawyer.

**You must file your written objection with the Court no later than _____, 2016,** by mail or in person with the Clerk of Court, United States District Court for the Eastern District of Missouri, 111 South 10th Street, St. Louis, Missouri 63102. You **must** also send a copy of your objection to Class Counsel and Blue Buffalo's Counsel at:

Counsel for Plaintiff:
Scott A. Kamber
KamberLaw, LLC
P.O. Box _____
_____, MO  63____

Counsel for Defendant:
Steven A. Zalesin
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

All objections must be received by the attorneys for the parties and by the Court by _____, 2016 or your objection will not be considered.

## When and where will the Court decide whether to approve the settlement?

The Court has scheduled a Fairness Hearing on _____, 2016, before Judge Rodney W. Sippel in the United States District Court for the Eastern District of Missouri, 111 South 10th Street, St. Louis, Missouri 63102 in Courtroom 16 South. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may also decide how much to pay the attorneys for the Class. After the hearing the Court will decide whether to grant final approval of the settlement. We do not know how long these decisions will take.

**Questions? Visit www.petfoodsettlement.com**
**DO NOT CALL BLUE BUFFALO OR THE COURT**

| Where do I get more information? |
|---|

Complete copies of the pleadings and other documents filed in this Litigation may be examined and copied during regular office hours at the Clerk of the Court, United States District for the Eastern District of Missouri, 111 South 10th Street, St. Louis, Missouri 63102.

The Settlement Agreement, Claim Form and other information are also available at www.petfoodsettlement.com.

**PLEASE DO NOT CALL OR WRITE BLUE BUFFALO OR THE COURT**

**FOR ADDITIONAL INFORMATION OR ADVICE**

**EXHIBIT 5**

## In Re Blue Buffalo Company, Ltd. Marketing and Sales Practices Litigation
## CLAIM FORM

### You can also submit online at www.petfoodsettlement.com.

If you purchased a Blue Buffalo product in the United States, you may be entitled to a cash refund from a class action settlement. You may submit only one Claim Form per household. **All Claim Forms must be postmarked or submitted online by [month day, 2016].** If mailing, please return this form to:

Settlement Administrator
[Address]
[City, State, Zip Code]

### CLASS MEMBER INFORMATION

NAME: _____  TELEPHONE_____ EMAIL: _____

ADDRESS: _____

CITY: _____  STATE: _____  ZIP CODE: _____

### CLAIM OPTION

**You may choose Option 1 or Option 2, but not both.**

**Option 1: NO VALID PROOF OF PURCHASE. Complete the Claim Form, answer the following question, and confirm under penalty of perjury to receive a minimum cash payment of $5 or a maximum cash payment of $10, subject to a pro rata adjustment.**

- **How much did you spend on Blue Buffalo Products?**    $_____

**Option 2: VALID PROOF OF PURCHASE ATTACHED. Complete the Claim Form to receive a minimum cash payment of $5 or a maximum cash payment of $200, subject to a pro rata adjustment.**

- **What is the amount of Proof of Purchases you are submitting?**    $_____

### AFFIRMATION FOR OPTION 1

I UNDERSTAND THAT THE DECISION OF THE SETTLEMENT ADMINISTRATOR IS FINAL AND BINDING ON ME AND ON BLUE BUFFALO COMPANY, LTD.

UNDER PENALTY OF PERJURY, I AFFIRM THAT I PURCHASED THE BLUE BUFFALO PRODUCT(S) AND THAT THE INFORMATION ON THIS CLAIM FORM IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

SIGNATURE: _____  DATE:_____

### CLAIM FORMS MUST BE POSTMARKED OR SUBMITTED ONLY BY [MONTH DAY, 2016].
### QUESTIONS? VISIT WWW.PETFOODSETTLEMENT.COM OR CALL 1-800-XXX-XXXX.

### You can also submit online at www.petfoodsettlement.com.

If you purchased a Blue Buffalo product in the United States, you may be entitled to a cash refund from a class action settlement. You may submit only one Claim Form per household. **All Claim Forms must be postmarked or submitted online by [month day, 2016].** If mailing, please return this form to:

Settlement Administrator
[Address]
[City, State, Zip Code]

## CLASS MEMBER INFORMATION

NAME: _____  TELEPHONE_____ EMAIL: _____

ADDRESS: _____

CITY: _____ STATE: _____ ZIP CODE: _____

## CLAIM OPTION

**You may choose Option 1 or Option 2, but not both.**

**Option 1: NO VALID PROOF OF PURCHASE. Complete the Claim Form, answer the following question, and confirm under penalty of perjury to receive a minimum cash payment of $5 or a maximum cash payment of $10, subject to a pro rata adjustment.**

- **How much did you spend on Blue Buffalo Products?**        $_____

**Option 2: VALID PROOF OF PURCHASE ATTACHED. Complete the Claim Form to receive a minimum cash payment of $5 or a maximum cash payment of $200, subject to a pro rata adjustment.**

- **What is the amount of Proof of Purchases you are submitting?**        $_____

## AFFIRMATION FOR OPTION 1

I UNDERSTAND THAT THE DECISION OF THE SETTLEMENT ADMINISTRATOR IS FINAL AND BINDING ON ME AND ON BLUE BUFFALO COMPANY, LTD.

UNDER PENALTY OF PERJURY, I AFFIRM THAT I PURCHASED THE BLUE BUFFALO PRODUCT(S) AND THAT THE INFORMATION ON THIS CLAIM FORM IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

SIGNATURE: _____  DATE:_____

**CLAIM FORMS MUST BE POSTMARKED OR SUBMITTED ONLY BY [MONTH DAY, 2016].**
**QUESTIONS?  VISIT WWW.PETFOODSETTLEMENT.COM OR CALL 1-800-XXX-XXXX.**