IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE BLUE BUFFALO COMPANY, | ) | |
| LTD. MARKETING AND SALES | ) | Case No. 14-md-02562-RWS |
| PRACTICES LITIGATION | ) | |
| | ) | |
| RELATES TO:  ALL CASES | ) | |

_____

**MEMORANDUM IN SUPPORT OF MOTION FOR APPEAL BOND**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

PROCEDURAL & FACTUAL BACKGROUND ............................................................ 2

    A.   The Settlement ........................................................................................... 2

    B.   The Objectors ............................................................................................. 5

        1.   Pamela Sweeney ................................................................................ 5

        2.   Pamela McCoy ................................................................................. 7

        3.   Paul Lopez and his counsel Christopher Bandas ............................. 8

        4.   Gary Sibley .................................................................................... 12

        5.   Caroline Nadola ............................................................................. 12

ARGUMENT .................................................................................................................. 13

I. THE COURT SHOULD ENTER AN ORDER REQUIRING AN APPEAL BOND ............. 13

    A.   Ability to Post a Bond and Risk of Non-Payment ........................................ 14

    B.   The Appeals Lack Merit .............................................................................. 15

        1.   Objections to fairness of the settlement. ....................................... 16

        2.   Objections to the fee award ........................................................... 19

    C.   Vexatious Conduct ..................................................................................... 21

II. THE BOND SHOULD BE SET AT A MINIMUM OF $150,309.00. ................................ 22

    A.   Costs Taxable Under FRAP 39 And 28 U.S.C. § 1920 ................................ 22

    B.   Additional Administrative Costs .................................................................. 23

    C.   Delay Costs / Interest ................................................................................. 23

    D.   Reasonable Attorneys' Fees ......................................................................... 25

CONCLUSION .............................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**

*9-M Corp. v. Sprint Commc'ns Co. L.P.*,
  2012 WL 5495905 (D. Minn. Nov. 12, 2012) ........................................................ 20

*Adele Ferrara et al. v. Snyder's-Lance, Inc. et al*,
  Case No. 0:13-cv-62496-JAL (S.D. Fla., Miami Div.) .............................................. 6

*Adsani v. Miller*,
  139 F.3d 67 (2d Cir. 1998) ....................................................................................... 13

*Allapattah Servs., Inc. v. Exxon Corp.*,
  No. 91–0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ..................................... 13

*Baggett v. Hewlett-Packard Company*,
  07-cv-00667 (C.D. Cal.) ............................................................................................ 12

*Barfield v. Sho-Me Power Elec. Co-op.*,
  2:11-CV-4321NKL, 2015 WL 3460346 (W.D. Mo. June 1, 2015) ........................ 20

*Barnes v. Fleetboston Fin. Corp.*,
  CA 01-10395-NG, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) ..................... 21, 24

*Bezdek v. Vibram USA, Inc.*,
  809 F.3d 78 (1st Cir. 2015) ....................................................................................... 17

*Brandewie v. Wal-Mart Stores, Inc.*,
  1:14-CV-965, 2016 WL 698110 (N.D. Ohio Feb. 22, 2016) .................................... 23

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) .................................................................................... 16

*Dennings v. Clearwire Corp.*,
  Case No. c10-1859-JLR, (W.D. Wa. Aug. 20, 2013) ............................................... 11

*Douglas v. The Western Union Company*,
  Case No.: 1:14-cv-01741, Dkt. No.70 (N.D. Ill.) ...................................................... 6

*Garber v. Office of the Comm'r of Baseball, Major League Baseball Enters., Inc.*,
  No. 12 CV 3704 (S.D.N.Y. July 14, 2016) ............................................................... 12

*Gemelas v. Dannon Co., Inc.*,
  1:08 CV 236, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) ....................... 8, 23, 25

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
  525 F. App'x  94 (3d Cir. 2013) ................................................................................ 19

*Heekin v. Anthem, Inc.*,
 1:05-CV-01908-TWP, 2013 WL 752637 (S.D. Ind. Feb. 27, 2013) ........................................ 14

*Hill v. State St. Corp.*,
 CIV.A. 09-12146-GAO, 2015 WL 1734996 (D. Mass. Apr. 16, 2015) ...................... 14, 21, 25

*In re Apple Inc. Securities Litigation*,
 Case No. 06-cv-05208 (N.D. Cal.) ........................................................................................ 12

*In re Capital One Telephone Consumer Protection Act Litigation*,
 Case No. 12-cv-10064 (N.D. Ill.) ...................................................................................... 6, 7, 8

*In re Cardizem CD Antitrust Litig.*,
 391 F.3d 812 (6th Cir. 2004) .......................................................................................... 13, 25

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 281 F.R.D. 531 (N.D. Cal. 2012).......................................................................................... 11

*In re Checking Account Overdraft Litig.*,
 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................... 5, 13, 14, 21, 24

*In re Gen. Elec. Co. Sec. Litig.*,
 998 F. Supp. 2d 145 (S.D.N.Y. 2014)................................................................................. 14

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
 09CV1088 BTM KSC, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013)............................ 8, 11

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011 ....................................................................... 4

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
 MDL No. 08–1999, 2010 WL 4630846 (E.D. Wis. Nov.2, 2010) ........................................ 15

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
 2016 WL 305380 (N.D. Ill. Jan. 26, 2016) .......................................................................... 19

*In re Nutella Mktg. & Sales Practices Litig.*,
 589 Fed. Appx. 53 (3d Cir. 2014)........................................................................................ 17

*In re Nutella Mktg. & Sales Practices*,
 CIV.A. 11-1086 FLW, 2012 WL 6013276 (D.N.J. Nov. 20, 2012)...................................... 17

*In re Oil Spill*,
 MDL 2179, 2013 WL 144042, (E.D. La. Jan. 11, 2013)........................................................ 5

*In re Polyurethane Foam Antitrust Litig.*,
   1:10 MD 2196, 2016 WL 1452005 (N.D. Ohio Apr. 13, 2016) .............................. 5, 22, 23, 25

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   MDL142522PAMJJK, 2016 WL 259676 (D. Minn. Jan. 21, 2016) ....................................... 23

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) .................................................................................... 20

*In re Uponor, Inc., F1807 Plumbing FittingsProducts Liab. Litig.*,
   11-MD-2247 ADM/JJK, 2012 WL 3984542 (D. Minn. Sept. 11, 2012) 5, 13, 14, 15, 21, 22, 23

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
   2:06CV00225-PMPPAL, 2010 WL 786513 (D. Nev. Mar. 8, 2010) ...................................... 23

*In re Xcel Energy, Inc., Sec., Derivative & '"ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................................. 4

*In Re: Checking Account Overdraft Litigation*,
   Case No. 09-md-02036 (S.D. Fla.) .............................................................................. 6

*Kolinek v. Walgreen Co.*,
   Case No. 13-cv-04806 (N.D. Ill.) .......................................................................... 6, 12

*Larsen et al v. Trader Joe's Company*,
   Case, No. 11-cv-05188 (N.D. Cal.) ......................................................................... 5, 6

*Marshall v. Nat'l Football League*,
   787 F.3d 502 (8th Cir. 2015) ....................................................................... 17, 18, 19

*Pedraza v. United Guar. Corp.*,
   313 F.3d 1323 (11th Cir. 2002) ................................................................................ 14

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ................................................................................. 19

*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...................................................................... 19

*Roberts v. Electrolux Home Prods., Inc.*,
   Case No.: 8:12-cv-01644-CAS, 2014 WL 4568632 (C.D. Cal. Sept. 11, 2014) ...................... 6

*Sckolnick v. Harlow*,
   820 F.2d 13 (1st Cir. 1987) ..................................................................................... 25

*Simon v. Toshiba Am.*,
   C 07-06202 MHP, 2010 WL 1757956 (N.D. Cal. Apr. 30, 2010) ........................................... 17

*Tenille v. W. Union Co.*,
   968 F. Supp. 2d 1107 (D. Colo. 2013) .................................................................................. 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................................... 15

*Wilson v. Airborne, Inc.*,
   EDCV 07-770 VAP(OPX), 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ........................... 17

**Statutes**
28 U.S.C. § 1920 ......................................................................................................................... 22

28 U.S.C. § 1961 ......................................................................................................................... 23

Fla. Stat. Ann. § 501.2105(1) ..................................................................................................... 25

N.J. Stat. Ann. § 56:8-19 ............................................................................................................ 25

O.R.C. § 1345.09(F)(2) ............................................................................................................... 25

**Rules**
Fed. R. App. P. 39 ....................................................................................................................... 22

Fed. R. App. P. 7 ................................................................................................................... 13, 22

## INTRODUCTION

Objectors Pamela Sweeney, Pamela McCoy, Paul Lopez, Gary Sibley, and Caroline Nadola have filed notices of appeal from this Court's final orders approving the settlement and awarding attorneys' fees and expenses in this action.  Mrs. Sweeney, Mr. Lopez, Ms. McCoy, and Mr. Sibley all have histories of objecting to class action settlements, often appealing therefrom only to dismiss their appeals months later without effecting any positive changes to the settlements.  Mrs. Sweeney, herself a serial objector, is married to attorney Patrick Sweeney, who has been recognized as a serial objector.[1]  Both also have been represented by Darrell Palmer, another professional objector criticized by numerous courts.  Mr. Lopez is represented by Christopher Bandas, an attorney repeatedly chastised for his strategy of holding up settlements by filing frivolous appeals.  Mr. Sibley, himself an attorney, also is a serial objector for himself and as attorney to others.

Plaintiffs respectfully move this Court for an Order requiring the objectors and their attorneys to post an appeal bond pursuant to Federal Rule of Appellate Procedure 7 in the amount of at least $150,309.00.  This amount includes tangible costs associated with the appeals and each of the cost components have been approved by courts addressing similar circumstances.

The facts of this case closely align with the factors considered in determining whether to impose a bond requirement.  It is the objectors' burden to demonstrate financial inability to post a bond.  All objectors present risk of non-payment.  Their objections clearly lack merit. Sweeney, McCoy, Lopez, and Sibley all are repeat objectors.  And, while not entering an appearance in this action, Mr. Lopez's attorney is a serial objector with little to no regard for the class.  It cannot be doubted that the appeals are meritless.  As such, a bond should be required.

---

[1]  Their daughter, Kerry Ann Sweeney, also has objected in multiple cases.  *See* Serial Objector Index, https://www.serialobjector.com/persons/155 (last visited July 20, 2016).

1

## PROCEDURAL & FACTUAL BACKGROUND

### A.    The Settlement

On June 16, 2016, after a fairness hearing (which none of the objectors attended), this Court entered its Final Order and Judgment (Dkt. No. 214) approving a class settlement that provides valuable economic restitution and injunctive relief.  In addition, the Court entered its Findings of Fact, Conclusions of Law, and Order Awarding Fees and Costs.  Dkt. No. 215.

Under the terms of the settlement, Blue Buffalo has paid $32 million in cash into a Settlement Account available for class members. *See* Stipulation of Settlement (Dkt. No. 160-1) at §§1.27, 2.4- 2.5.  The $32 million is exclusive of Incentive Awards to Class Representatives, which Blue Buffalo will pay separate from, and in addition to, the fund amount. *Id*. There is no potential reversion of funds to Blue Buffalo. After payment of fees and costs, the Settlement contemplates that all available funds will be distributed to Settlement Class Members.  Subject to potential adjustment as described in the Settlement, monies will be distributed to Settlement Class Members pro rata based on the amounts apportioned to each Settlement Class Member by the claims process detailed in the Preliminary Approval Order and Notice. In short, the claims process provides for a cash payment of up to ten percent of purchases for all class members. Option one provides that class members with no valid proof of purchase may receive ten percent for up to $100 in eligible purchases. Option two provides that class members with valid proof of purchase may receive ten percent for up to $2,000 in eligible purchases. These payments are subject to pro rata adjustment to ensure that all available funds are paid to class members filing a claim. Stipulation of Settlement (Dkt. No. 160-1) at §§2.7, 2.8.  Based on the number of actual claims submitted, Class Members will in fact receive a pro rata increase to the cash payments contemplated by the Stipulation of Settlement.  *See* Memorandum in Support of Motion For Final Approval Of Class Settlement (Dkt. No. 198) ("Mem. in Supp.") at 6 (citing Ex. 2,

Declaration of Jeanne C. Finegan, APR Concerning Implementation and Adequacy of Class member Notice Program ("Finegan Decl."), at ¶¶45-46).  As a result, class members will receive no less than their entire purchase price back, subject to the valid eligible purchase amounts set forth in Options one and two.  *Id*.

The Settlement also provides meaningful injunctive relief. This component of the Settlement requires Blue Buffalo to ensure that it no longer represents to the public that the Blue Buffalo Products do not include chicken or poultry by-product meal unless or until: "(i) All specifications for Blue Buffalo Products have been reviewed for the purpose of ensuring that they are consistent with all packaging claims found on the product and representations regarding the products found on the Blue Buffalo website; and (ii) Blue Buffalo has reviewed its supplier relationships and has instituted practices designed to ensure that all materials provided by its suppliers comply with the applicable product specifications." Stipulation of Settlement (Dkt. No. 160-1) at §2.1.

An extensive notice campaign was executed in conformance with the terms of the Preliminary Approval Order.  That campaign included direct notice, publication notice, and online and mobile advertising.  The approved Settlement Administrator, Heffler Claims Group ("Heffler"), sent out nearly two million direct notices by e-mail or postcard.  *See* Mem. in Supp. at 7. In addition, a black and white ½ page advertisement was published in People Magazine, online banner advertisements were placed on highly targeted Internet networks, and additional notice was placed through media including Facebook and Twitter. As of April 14, 2016, the Settlement was mentioned in more than 182 news publications and was shared more than 100,000 times on social media.  *Id.* at 7-8. Only 16 timely objections to the Settlement were received (including 5 from "serial objectors"), and only 8 opt-outs sought exclusion. *See*

Amended Exclusion List, Dkt. No. 213-1.  Thus, less than 00.02% of responding class members have objected and almost 14,000 times more class members submitted a claim than opted out.

A fairness hearing was held on May 19, 2016.  This Court thereafter took the cautionary step of directing the Claims Administrator to attempt to contact class members appearing *pro se* in conjunction with Final Approval to determine his or her intention whether to opt out, or to maintain an objection.   *See* Order Regarding *Pro Se* Objectors And Opt-Outs And Administration of Claims, Dkt. No. 201.  This was accomplished.  *See* Notice Regarding Filing Of Amended Exclusion List, Dkt. No. 213 & 213-1.  This Court entered its Final Order and Judgment approving the Settlement, along with its Findings of Fact, Conclusions of Law, and Order Awarding Fees and Costs on June 16, 2016. *See* Dkt. Nos. 214, 215.  The Court considered each factor required for certification of the Settlement Class and approved the settlement as fair, reasonable, and adequate.  *See* Dkt. No. 214 at 2-6.  The Court also considered the objections, which were extensively and separately briefed.  *See* Plaintiffs' Omnibus Response to Objections to the Final Approval of the Settlement, Dkt. No. 203; Dkt. No. 214 at 7.  The Court approved attorneys' fees of 25% of the settlement amount, recognizing that "courts in this circuit . . . have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund."  Dkt. No. 215 at 2 (citing *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *1 (N.D. Iowa Nov. 9, 2011) (quoting *In re Xcel Energy, Inc., Sec., Derivative & '"ERISA" Litig.*, 364 F.  Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases)). Higher awards of one-third are common.  Dkt. No. 215 at 3. (citing cases).  Although not required to do so, the Court also conducted a lodestar cross check.  *Id*. at 3.

With final approval, over 100,000 claimants stand to collectively receive over $22 Million in cash benefits from the settlement fund.

### B.      The Objectors

As detailed more fully below, objectors Sweeney, McCoy, Lopez, and Sibley all have histories of objecting to, and often appealing from, class settlements.  Courts and commentators alike recognize the drain on settlements subject to professional objectors seeking simply to extract money.  "[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) (quotations omitted, alteration in original).  Worse yet, such vexatious conduct actually hurts class members by delaying payment of settlement funds.

### 1.      Pamela Sweeney

Mrs. Sweeney has been an objector in at least six prior class actions.  She is married to Patrick Sweeney.  *See* Deposition of Pamela Sweeney, attached as Ex. A ("Sweeney Dep.")  at 9.  In *Larsen et al v. Trader Joe's Company*, Case, No. 11-cv-05188 (N.D. Cal.), the Sweeneys were objectors represented by Darrell Palmer.  *Id*. at Dkt. No. 99.  Patrick Sweeney went to law school, and has since worked together, with attorney Palmer.  Sweeney Dep. at 16.  Palmer has been criticized as a well-known serial objector,[2] as has Mr. Sweeney himself.[3]   In addition to *Larsen*, Mrs. Sweeney also was an objector in:

---

[2] *See, e.g., In re Oil Spill*, MDL 2179, 2013 WL 144042, at *48 n.40 (E.D. La. Jan. 11, 2013) (noting "Mr. Palmer has been deemed a 'serial objector' by several courts" and citing to a transcript in that case involving "Mr. Palmer admitting it was 'regrettable' that he had been found to have engaged in 'bad faith and vexatious conduct'"); *In re Uponor, Inc., F1807 Plumbing FittingsProducts Liab. Litig*., 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *3 (D. Minn. Sept. 11, 2012) (noting "the Palmer Objectors appear to be represented by an attorney who has not entered an appearance in this case and who is believed to be a serial objector to other class-action settlements").

[3] *See, e.g., In re Polyurethane Foam Antitrust Litig.,* 1:10 MD 2196, 2016 WL 1452005, at *2-3 (N.D. Ohio Apr. 13, 2016) (Sweeney and his counsel have "a known history of acting as a 'professional, or serial objector' . . . objections amounted "to pure boilerplate language, wholly untethered from the actual terms of the settlement. They neither sought to argue nor appeared at the fairness hearing. Their behavior

> *In re Capital One Telephone Consumer Protection Act Litigation*, Case No. 12-cv-10064 (N.D. Ill.)  (objection stricken as untimely) (Dkt. No. 338)
>
> *Kolinek v. Walgreen Co*., Case No. 13-cv-04806 (N.D. Ill.)
>
> *Douglas v. The Western Union Company*, Case No.: 1:14-cv-01741, Dkt. No.70 (N.D. Ill.) (2/25/2016) (objector with Patrick Sweeney)
>
> *In Re: Checking Account Overdraft Litigation*, Case No. 09-md-02036 (S.D. Fla.) (represented by Patrick Sweeney; objection withdrawn)
>
> *Adele Ferrara et al. v. Snyder's-Lance, Inc. et al*, Case No. 0:13-cv-62496-JAL (S.D. Fla., Miami Div.) (represented by Patrick Sweeney)

Mrs. Sweeney has appealed at least twice.  *Adele Ferrara et al. v. Snyder's-Lance, Inc. et al*, Case No. 0:13-cv-62496-JAL, Dkt. No. 215 (7/7/2016 notice of appeal);  *Kolinek v. Walgreen Co*., Case No. 13-cv-04806, Dkt. No. 217 (N.D. Ill.) (12/21/2105 notice of appeal).  The appeal in *Kolinek* was dismissed on January 27, 2016 for failure to comply with Circuit Rule 3(c) requiring the filing of a docketing statement.  *See* Seventh Circuit Order of Dismissal, Appeal No. 15-3853, attached as Ex. B.  When asked at her deposition in this case whether she filed appeals in regard to prior objections, Mrs. Sweeney responded:  "I'm not at liberty to discuss that . . . I signed a nondisclosure."  Sweeney Dep. at 68.  When asked whether she has ever been paid to withdraw an objection to a class action settlement, she responded:  "I'm not at liberty to discuss anything of that nature."  *Id.* at 72.

Mrs. Sweeney did not appear at the fairness hearing.  Her objections were three.  First, she objected that attorneys' fees are "almost 30% of the settlement amount" (which is incorrect).

---

needlessly increased the burdens on Class Counsel and this Court. Conduct of this sort falls squarely within the definition of vexatious conduct."); *Roberts v. Electrolux Home Prods., Inc.*, Case No.: 8:12-cv-01644-CAS, 2014 WL 4568632, at *11-15 (C.D. Cal. Sept. 11, 2014) (overruling Sweeney objections, finding that they "are not made for the purpose of benefitting the Class," were "meritless in all respects," and "appear to be made for the improper purpose of delaying the Settlement to extract a fee,"  and recognizing both Sweeney and Palmer as serial objectors); *Larsen v. Trader Joe's Co.*, 11-CV-05188-WHO, 2014 WL 3404531, at *7 n.4 (N.D. Cal. July 11, 2014) ("Like Darrell Palmer, attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings. Lison Decl. 6. While not formally appearing for his wife and daughter here, Patrick Sweeney has previously represented them as objectors.").

Dkt. No. 184.  Mrs. Sweeney believes that attorneys' fees should be limited to 15% although she could give no principled reason for that belief, stating only: "I think 30 percent is . . . it's just too high.  Sweeney Dep. at 48-49.  Next, she objected to a "cap of $200 dollars" for Option 2 class members providing proofs of purchase.  *Id.*  Mrs. Sweeney is not in that category of class members, and the Option 2 cap she asserts does not affect her personally.  Sweeney Dep. at 57 (Q.  Does the $200 cap affect you in this case?  A.  It does not affect me personally, no.).[4]  Third, she objected to "differences between the terms of the Settlement Stipulation and the Notice," in terms of requesting information pertaining to other objections made to settlements in the last five years.  Dkt. No. 184.  Mrs. Sweeney herself did not provide information on all her prior objections, *see* Sweeney Dep. at 65-66, and of course, none of this prevented her from either making a claim or voicing her objection.

### 2.     Pamela McCoy

Ms. McCoy was an objector in *In re Capital One Telephone*, Case No. 1:12-cv-10064. (N.D. Ill.).  She appealed to the Seventh Circuit, Appeal No. 15-1586.  The appeal was docketed on March 18, 2015.  By June 2015, Ms. McCoy had dismissed her appeal.  *See* Seventh Circuit Docket Sheet, attached as Ex. C. Ms. McCoy's objections here were limited to: (1) an (incorrect) assertion that class members "without receipts [are limited] to $10 maximum recovery" as compared to those with receipts; and (2) attorneys' fees at 25% of the settlement.  *See* Dkt. No. 180.  According to that objection, Ms. McCoy anticipated "hiring a lawyer to represent me," and further assumed that "he'll want to come to the hearing next month."  *Id.*  Neither McCoy nor any counsel appeared on her behalf at the fairness hearing.  Ms. McCoy purports to have filed her notice of appeal *pro se*.  Except for the signature block and slight modification to the

---

[4] Mrs. Sweeney, who did not save receipts, made no attempt to contact her retailers to determine if they have records of her purchases.  *Id.* at 41 ("Q. Have you inquired with either Mounds or Pet World whether they have records of your purchases?  A. No.  Q. Did it cross your mind to do that?  A. No.").

certificate of service, however, it is identical to Mr. Lopez's notice.  *Compare* Dkt No. 216 to

Dkt. No. 218.  *See also Gemelas v. Dannon Co., Inc.*, 1:08 CV 236, 2010 WL 3703811, at *2

(N.D. Ohio Aug. 31, 2010) (serial objector's appeal appeared to be a "form appeal").[5]

### 3.     Paul Lopez and his counsel Christopher Bandas

Mr. Lopez personally has objected to class settlements on two prior occasions.  *See*

Deposition of Paul Lopez ("Lopez Dep."), attached as Ex. E, at 35-36.  For example, Mr. Lopez

was an objector in *Wolf v. Red Bull GMBH*, No. 1:13-CV-08008-KPF (S.D.N.Y. filed Nov. 12,

2013).  In *Wolf*, Lopez filed a notice of appeal following the trial court's final settlement

approval.  *Id.* at Dkt. No. 83.  He then dismissed his appeal several months later, without

obtaining settlement changes or any additional benefits for the class.  *Id.* at Dkt. No. 105.

Mr. Lopez filed his objection, and his notice of appeal, in this case listing Timothy Belz

and J. Matthew Belz as his attorneys.  *See* Dkt No. 182, 216.  Lopez is, however, actually

represented by Christopher Bandas of the Bandas Law Firm.  *See* Dkt. No. 182 at 2.  Mr.

Lopez's wife works for the Bandas Law Firm, and on each occasion in which Lopez has been an

objector, she came to him asking about whether he used the product at issue, and Christopher

Bandas represented him in regard to the objection.  Lopez Dep. at 36.  Mr. Lopez never spoke to

---

[5]  Although McCoy filed an opening brief in the *In re Capital One Telephone* appeal *pro se*, the brief
discloses that it was written by an unidentified attorney.  *See* McCoy Appellants' Brief, attached as
Exhibit D, at 1 n.1 ("Although my personal counsel assisted in the preparation of this brief, he is not
representing me in this appeal.").  Another objector in that action, Antonia Carrasco, dismissed her appeal
the day after McCoy.  *See* Ex. C, Seventh Circuit Docket, Entry Nos. 59, 66.  Her motion to dismiss was
substantially the same as the one filed by McCoy.  The two objectors also filed responses to a motion of
non-involvement in appeal on the same day.  *Id.* at Dkt. Nos. 22, 24.  Like Carrasco, McCoy filed a non-
opposition, and interestingly, McCoy's response refers to herself in the third person, although she
purported to file it *pro se*. *See* McCoy's Response to United Recovery System's Motion of Non-
Involvement in Appeal, attached as Ex. F at 1 ("Her appeal is limited to Rule 23(h) issues and does not
affect any defendants").  Carrasco was represented by Christopher Bandas and Darrell Palmer, known
serial objectors.  *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 09CV1088 BTM KSC, 2013 WL
5275618, at *5 & n.3 (S.D. Cal. Sept. 17, 2013).

the Belz attorneys, and while assuming that Bandas had an affiliate in St. Louis, "didn't know who it was."   *Id.* at 38; *see also* Class Action Objector Power of Attorney and Contingent Fee Agreement, attached as Exhibit G.

Mr. Lopez's deposition further reveals that he has little to no understanding of the basic allegations of the complaint.  *See* Lopez Dep. at 20; *see also id* at 53 ("Q. Do you know what allegations were made against Blue Buffalo regarding its misrepresentation of the ingredients in its pet food? A. Exactly, no.").  Mr. Lopez testified that he learned about the settlement from his wife (who works for Mr. Bandas), that she helped him fill out the claim form, and that she prepared his objection.  *Id.* at 15, 31, 50.  Mr. Lopez did not visit the settlement website and has never looked at the settlement notices.   *Id.* at 59-60.  He did not review those sources of information, but "went off what [his] wife was discussing with [him]."  *Id.* at 60.  Mr. Lopez's wife simply presented to him the objections to sign. *See id.* at 50-51 ("Q. How did it get presented to you to sign?  A. My wife.").

As with Ms. McCoy, one of Mr. Lopez's objections is to Option 1 and 2 for persons with and without proof of purchase.  *See* Dkt. No. 182, at 4-5, 8*; see also* Lopez Dep. at 55.  While Mr. Lopez complained about the proof of purchase requirement, he made no effort to look for or obtain receipts despite being a member of loyalty programs.[6]  Lopez Dep. at 66; *see also id*. at 24-25 ("Q: Did you make any effort to obtain receipts showing Blue Buffalo purchases through the loyalty programs at either -- A: No, I did not. Q: You did not? . . . A: No, I did not.").  Lopez disclaimed that any difference between recoveries for persons with and without proof of purchase affects him personally.  *Id.* at 56.  Like Ms. McCoy, Mr. Lopez also stated an objection

---

[6]  Between 70-75% of the products at issue that were sold in the past three years were sold through big box retailers that have loyalty programs, which maintain consumer purchase records.  Dkt No. 203 at 4-5 (citing Blue Buffalo Pet Products, Inc. 10-K Report at 42.  The settlement website clearly informed class members that such information was provided by certain retailers, and provided information on how such proof could be obtained from retailers, including screen shots from certain retailers.  *Id.*

to the percentage attorney fee.  In the objection he filed, Lopez stated the view that the percentage should have been applied after reduction of administration costs.  *See* Dkt. No. 182 at 6, 9.  At his deposition, Lopez stated that his objection to fees is based on the (flawed) notion that it was only "for about nine months' work on a $32 million lawsuit."  Lopez Dep. at 45-47. Lopez admitted that he had no information about the number of hours, expenses, or investment involved in the lawsuit, but felt that a fee amounting to 25% of a settlement just seemed like too much.  *Id.* at 57.

Like the other objectors, neither Mr. Lopez nor any attorney on his behalf appeared at the fairness hearing.  Indeed, his retention agreement with the Bandas Law Firm stated that no such appearance would be made. *See* Ex. G, Class Action Objector Power of Attorney and Contingent Fee Agreement at ¶1.4 ("Although we will craft the legal arguments used in your objection, and handle the logistics of filing the objection, Bandas Law Firm will not make an appearance in the district court and your objection will be submitted without oral argument at the fairness hearing. You understand and agree that this might affect the chances that the district court will approve a settlement or fee request over your objection.").

Mr. Bandas has a significant and sordid history of filing objections to class action settlements followed by appeals, which are then dismissed, abandoned, or withdrawn without obtaining any settlement changes or additional benefits to the class.  *See* Declaration of Kaitlin A. Bridges, attached as Ex. H at ¶2 (compiling chart).  Like Messrs. Palmer and Sweeney, he has been recognized, and roundly criticized, as a professional objector.[7]  As stated by one court:

---

[7] *See, e.g.*, *In re Gen. Elec. Co. Securities Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014) (recognizing that Bandas "has been repeatedly admonished for pursuing frivolous appeals of objections to class action settlements"); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013) (describing Bandas' "scheme" of "attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away" by "using the threat of questionable litigation to tie up the settlement unless the payment was made"); *Herfert v. Crayola LLC*,No. 2:11-CV-01301-JCC (W.D. Wash. Sept. 17, 2012) (order denying motion to stay the posting of an appeal bond, and noting that appeal of settlement by Bandas "appears to be vexatious and frivolous").

> [A]ttorney Christopher Bandas, a 'professional' or 'serial' objector [is] located in Corpus Christi, Texas . . . Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (footnote omitted).   At least one court has revoked Mr. Bandas' authorization to practice in its district. "Finding clear and convincing evidence that Bandas had disobeyed the bond order [in *Dennings v. Clearwire Corp.*] the Court then took the extraordinary step of barring Bandas from practicing in the Western District of Washington as sanction for what it described as "'vexations' and 'deplorable' conduct." Anna C. Haac, *Ninth Circuit Grants Summary Affirmance In Objectors' Appeal From Class Action Settlement: A Case Study In Dealing With Serial Objectors*, NATIONAL LAW REVIEW (Dec. 12, 2013); *Dennings v. Clearwire Corp.*, Case No. c10-1859-JLR, Minute Entry at Docket Number 166, (W.D. Wa. Aug. 20, 2013).   A few months later, the Court in the Southern District of California also had occasion to address Mr. Bandas's conduct.  In *In re Hydroxycut*, the Court heard testimony from an attorney who contacted Bandas about objections that had been made in that case.  Bandas advised that he did not "care about the settlement agreement or changing the settlement agreement" and did not want "to change one line, a word, or anything about the agreement."  Rather, Bandas was banking on an appeal "to "hold up this process for two to three years" and demanded $400,000 "for you guys to pay us to go away."  *In re Hydroxycut*, Tr. of Motion Hearing, Vol. II, July 16, 2013, attached as Ex. I, at 76, 80-81, 84-86.  Bandas said "there were no real objections, that he just wanted to be paid off." *Id.* at 85.  "In light of Mr. Bandas's scheme, the Court [found] that Ms. McBean's objections were filed for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections."  *In re Hydroxycut,* 2013 WL 5275618, at *5.  Very recently, in another case in which Bandas drafted objections without appearance, the Court remarked that Bandas's conduct

is "a pattern, it is a strategy that is designed to throw monkey wrenches into class settlements so that you can get money to go away from the plaintiffs' lawyer."  Hearing Tr., *Garber v. Office of the Comm'r of Baseball, Major League Baseball Enters., Inc.,* No. 12 CV 3704, at 60 (S.D.N.Y. July 14, 2016), attached as Ex. J.

### 4.    Gary Sibley

Mr. Sibley also is a serial objector.   He has been the objector, or counsel for an objector, in at least five prior class actions.  Deposition of Gary Sibley ("Sibley Dep."), attached as Ex. K, at 5-6.  In one of those cases, the objection was withdrawn. *In re Apple Inc. Securities Litigation*, Case No. 06-cv-05208, Dkt No. 164 (N.D. Cal.) (3/01/2011).   In at least two other cases, Mr. Sibley appealed from the final approval order, only to voluntarily dismiss it, without effecting any positive change on the settlement.  *See Baggett v. Hewlett-Packard Company*, 07-cv-00667, Dkt. No. 263 (C.D. Cal.) (11/21/2011) (Order from 9th Circuit granting motion of voluntary dismissal); *Kolinek v. Walgreen Co*., Case No. 13-cv-04806, Dkt. No 238 (N.D. Ill.) (motion to voluntarily dismiss appeal).

### 5.    Caroline Nadola

Caroline Nadola's objection is that the "allocation of the settlement fund equally among consumers of all states is unfair because it does not account for differences in the strengths of varying states' unfair trade practices statutes."  Nadola Objection, Dkt. No. 188.  Her notice of appeal also is the same as that of Mr. Lopez.  *Compare* Dkt. No. 188 to Dkt. No. 216.

The objections of Ms. Nadola, as with the other objectors, are wholly meritless as discussed below.  For that reason, and because all four of the five remaining objectors are further subject to significant concern given their serial objector histories, imposition of a bond is necessary and appropriate.

# ARGUMENT

## I.     THE COURT SHOULD ENTER AN ORDER REQUIRING AN APPEAL BOND

Rule 7 of the Federal Rules of Appellate Procedure authorizes an order requiring the posting of an appeal bond.  Rule 7 provides that:

> In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal. Rule 8(b) applies to a surety on a bond given under this rule.

Fed. R. App. P. 7.  This rule is intended to protect the appellees' rights by "provid[ing] some level of security to Lead Plaintiffs who have no assurances that Appellants have the ability to pay the costs and fees associated with opposing their appeals." *In re Uponor,* 2012 WL 3984542, at *2.  Authority to craft a bond is "indicative of the expected outcome on appeal" and lies within the discretion of district court. *Id.* (citing *Adsani v. Miller,* 139 F.3d 67, 79 (2d Cir. 1998)).[8] Bonds are particularly appropriate, and "often required," for appeals of class settlements because "the appeal effectively stays the entry of final judgment, the claims process, and payment to all class members."  *Id.* at *2 (citing *Adsani,* 139 F.3d at 79;  *Allapattah Servs., Inc. v. Exxon Corp.,* No. 91–0986, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006)); *see also In re Checking Account Overdraft Litig.*, MDL 2036, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012) ("[A]n appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond . . . prior to filing the appeal.  Courts therefore commonly impose Rule 7 appeal bonds in the class action context where necessary to protect class members from the burdens that stem from being forced to defend frivolous lawsuits.") (citation omitted); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004) (affirming trial court's appeal bond order as objections had "practical

---

[8]  Although an appeal typically divests a district court of jurisdiction over a case, the court retains jurisdiction to impose a cost bond for appeal.  *Id.* at *1 (citing *Venen v. Sweet,* 758 F.2d 117, 121 n. 2 (3d Cir.1985)).

effect of prejudicing the other injured parties by increasing transaction costs and delaying disbursement of settlement funds").  And courts "commonly impose Rule 7 appeal bonds in the class action context where necessary to protect class members "from the burdens that stem from being forced to defend frivolous lawsuits."  *In re Checking Account Overdraft Litig.*, 2012 WL 456691, at *2 (quoting *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002)).

In determining whether an appeal bond is necessary, courts consider several factors "including: (1) the appellant's financial ability to post a bond; (2) the risk of nonpayment of appellee's costs if the appeal is unsuccessful; (3) the merits of the appeal; and (4) bad faith or vexatious conduct on the part of the appellants." *In re Uponor,* 2012 WL 3984542, at *2.  Each factor favors imposing an appeal bond here.

### A.     Ability to Post a Bond and Risk of Non-Payment

It is the objectors' burden to show the lack of ability to post a bond.  *See, e.g.*, *Hill v. State St. Corp.*, CIV.A. 09-12146-GAO, 2015 WL 1734996, at *3 (D. Mass. Apr. 16, 2015) (plaintiff movants did not bear burden of establishing another party's financial condition) (citing *In re Gen. Elec. Co. Sec. Litig.,* 998 F. Supp. 2d 145, 153 (S.D.N.Y. 2014) (imposing bond where appellant "has provided no evidence suggesting that he would be financially unable to post $54,700 for an appeal bond").  Here, there is no evidence that the objectors are unable to pay the cost of a bond.  Mr. Lopez testified that he has available resources.  *See* Lopez Dep. at 37 (would have resources to pay costs of $20,000).  Mrs. Sweeney disclaimed having knowledge as to whether she would be able to post a bond, but not an actual ability to do so.  *See* Sweeney Dep. at 69-70.  Mr. Sibley testified that he has the ability to pay a bond, having "[d]one it many times before," although he refused to answer when asked the amount he was able to pay.  Sibley Dep. at 93-94.  All objectors present risk of non-payment.  In assessing this factor, courts recognize that objectors geographically disbursed would present additional expense should

14

collection actions be required.  *Heekin v. Anthem, Inc.,* 1:05-CV-01908-TWP, 2013 WL 752637, at *2 (S.D. Ind. Feb. 27, 2013).  Mrs. Sweeney lives in Wisconsin.  Dkt. No. 184 at 1. Ms. McCoy lives in Ohio. Dkt. 180 at 1.  Ms. Nadola lives in Pennsylvania.  Dkt. No. 220 at 1.  Mr. Lopez lives in Texas. Dkt. No. 182 at 2.  Mr. Lopez also has at least two civil judgments against him (in the collective amount of $14,784) that remained unpaid at the time of his deposition. Lopez Dep. at 13-14, 39.  Mr. Sibley, who also lives in Texas, Dkt. No. 186 at ¶2, refused rather stridently to answer whether he would be prepared to pay court-ordered attorneys' fees on appeal in the event it is unsuccessful, as such an order "would be stupid."  Sibley Dep. at 94-95.

Sweeney, McCoy, Lopez, and Sibley all are repeat objectors and at least two of them are, or have been, represented by known professional objectors who have been criticized across the country for their vexatious tactics.  The merits of an appeal also are relevant to the risk of nonpayment, "in that if the appellant is pursuing a clearly frivolous appeal one might infer that the appellant is abusing the judicial process and thus has no intention of paying any costs taxed on appeal."  *Id.* at *2 (quoting  *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,* MDL No. 08–1999, 2010 WL 4630846, at *1 (E.D. Wis. Nov.2, 2010)).   Here, the objections have no merit as discussed below, and these factors support a bond.

### B.     The Appeals Lack Merit

The objectors are limited on appeal to their objections before this Court.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124, n. 29 (2d Cir. 2005). Their objections are entirely lacking in merit and support imposition of a bond.  *See In re Uponor,* 2012 WL 3984542, at *2 (merit of appeal is a factor to consider in issuing a bond).  No objector contends that the settlement class was inappropriately certified. Sweeney objects to a "cap" on class members with proof of purchase, even though she did not make a claim under that Option. McCoy and Lopez object to the amount a class member will receive without proof of purchase as

opposed to with proof of purchase.  Sweeney, McCoy, Lopez, and Sibley object to attorneys'
fees.  Nadola objects only to what she considers unfairness in not taking into account differences
between state consumer protection laws.  Sibley raises other purported objections with no basis.

### 1.  Objections to fairness of the settlement.

On appeal from this Court's finding that the settlement is fair and reasonable, the
objectors bear the considerable burden of "clearly" demonstrating an abuse of discretion.
*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176-77 (8th Cir. 1995).  They cannot.

Mrs. Sweeney's objection to the Option 2 "cap" of $200 for those with proofs of
purchase is factually wrong.  There is in fact no "cap" of $200 since the referenced $200 arises
from the 10% price premium applied to the maximum valid purchase amount of $2,000. After
application of the pro rata increase, each claimant will actually receive more than the amount of
his or her valid/normalized purchases.  *See* Omnibus Response to Objections, Dkt. No. 203 at 13
(citing Pakter Aff. ¶ 13(l); Finegan Decl. ¶ 46).  Moreover, Mrs. Sweeney lacks standing to even
raise this objection because, as an Option 1 claimant, this issue does not actually affect her.
Sweeney Dep. at 57.  She otherwise testified that she believes that the settlement is fair and
reasonable.  *Id*. at 48.

Similarly, McCoy and Lopez both assume that persons without proofs of purchase are
limited to a recovery of $10.00, which they are not.  *See* Lopez Objection, Dkt No. 182 at 6;
McCoy Objection, Dkt. No. 180 at 1.  As explained, because there is no reversion of settlement
funds to Blue Buffalo, valid Option 1 claims "will result in a payment of at least 100% of the
purchase price for up to $100.00 of purchases for Settlement Class members who do not have a
valid proof of purchase."  Omnibus Response to Objections, Dkt. No. 203 at 5 (citing Pakter
Aff., Dkt. No. 198-3 at ¶13(l); Finegan Decl., Dkt. No. 198-2, at ¶46).  Second, and in regard to
their complaint about the potential higher recovery of persons with proof of purchase, there is no

16

requirement that all class members be treated identically. Rather, and as made clear by the Eighth Circuit, fairness is assessed as to the class as a whole. *Marshall v. Nat'l Football League*, 787 F.3d 502, 519-20 (8th Cir. 2015). Moreover, settlements in cases such as this frequently provide an enhanced recovery for persons with proofs of purchase.[9]  In addition, and as noted, not only are proofs of purchase readily available in this action, the settlement website clearly informed class members that such information was provided by certain retailers, and provided information on how such proof could be obtained. Mr. Lopez, who did not review the website, did not even attempt to obtain proof of purchase. Lopez's expressed concern over the scope of the release, Dkt No. 182 at 7, is unsupported by the actual terms of the Settlement. *See* Omnibus Response to Objections at 15-16 n. 13. Of course, Mr. Lopez did not look at documents for his objections, which were simply presented to him for signature. Lopez Dep. at 50-51; *see also id.* at 60 ("Q. What documents did you use to learn what was in the settlement or the proposed settlement for Blue Buffalo? A. I didn't. I went off what my wife was discussing with me.").

Likewise, Mr. Sibley's objections lack merit. In *In re Nutella Mktg. & Sales Practices*, CIV.A. 11-1086 FLW, 2012 WL 6013276 (D.N.J. Nov. 20, 2012), *aff'd sub nom. In re Nutella Mktg. & Sales Practices Litig.*, 589 Fed. Appx. 53 (3d Cir. 2014), Mr. Sibley, along with other objectors, was ordered to provide an appeal bond because, among other things, they failed to

---

[9] *E.g., Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 81 (1st Cir. 2015) (affirming final approval of settlement which allowed "[r]efunds for up to two pairs of shoes could be obtained by submitting only a valid Claim Form. Class members seeking a refund for more than two pairs of shoes would be required to submit a Claim Form plus proof of purchase."); *Wilson v. Airborne, Inc.*, EDCV 07-770 VAP(OPX), 2008 WL 3854963, at *3 (C.D. Cal. Aug. 13, 2008) ("Eligible class members who submit claims can be reimbursed for the purchase price of any Airborne product with a proof of purchase . . . . Class members who do not have proofs of purchase can be reimbursed for the purchase price of up to six packages of Airborne."); *Simon v. Toshiba Am.*, C 07-06202 MHP, 2010 WL 1757956, at *1 (N.D. Cal. Apr. 30, 2010) ("Class members 'with proof sufficient to establish that they incurred out-of-pocket expenses' may be entitled to reimbursement for their reasonable costs incurred . . . ."). The reason for this is that, absent a stop-gap such as a proof of purchase, enhanced recoveries would encourage consumer fraud. *See generally Wilson*, 2008 WL 3854963, at *8 (requiring proofs of purchase for claims filed for more than 6 boxes of product; and resolving an objector's concern that fraudulent claims may be filed for less than 6 boxes, which do not require a purchase receipt).

"provide[] any substantial basis for their appeal. Put differently, the Objectors have not put forth any cogent argument that the Court abused its discretion when it issued a detailed decision settling the case and awarding fees." *Id*. at *2.  That is the case here as well.  Rather than address any specific finding of the Court in granting preliminary approval or any element of this case, Mr. Sibley objected in the most generic terms possible, and did so without basis.  For example, he objected that "[t]he value of the injunctive relief is minimal."  Dkt. No. 186 at ¶3. He holds this belief based upon the nonsensical viewpoint that "it's only enjoining them to do what they're supposed to do anyway."  Sibley Dep. at 67.   His opinion is admittedly only that, and he could point to no basis or grounds setting out what he believes the value of the injunctive relief actually is.  *Id.* at 70.   Mr. Sibley also objected that the settlement "is not fair, reasonable or adequate to the class members who are giving up much and receiving little."   Dkt. No. 186 at 3.   Oddly, Mr. Sibley was of the opinion that class members were "giving up" every dollar they paid for Blue Buffalo products, and doing so without considering whether they would prevail at trial, win on appeal, and actually recover that amount.  Sibley Dep.  at 79-80.   Sibley did nothing to determine if $32 million – or any other amount – was fair.  *See id.* at 81  ("Q: Did you do anything to analyze what amount of settlement consideration for the class would be fair for a resolution of this case? A: The answer is: No.").   Mr. Sibley's objection to the amount of the settlement is based, in part, on what he himself spent on Blue Buffalo products, which he believes to be a likely individual recovery.  *See id.* at 91.  That is inimical to the Court's task in evaluating the fairness of a settlement to the class as a whole.  *Marshall*, 787 F.3d at 519-20.[10]

Ms. Nadola's objection is limited to the idea that the settlement "does not account for differences in the strengths of varying states' unfair trade practices statutes."  Dkt. 188.   This

---

[10] Even if proper to consider, Mr. Sibley did not even know what amount that he believed would be an adequate settlement for himself individually.  Sibley Dep. at 92.

objection also is entirely generic, with no effort to provide a comparison of consumer protection statutes alleged *in this case*. Beyond that, Ms. Nadola is a resident of Pennsylvania. *Id.* She is not among the subclass members asserting a consumer protection act claim. In addition, the class certified was a settlement class, not a litigation class. As made clear by the Eighth Circuit, the district court's obligation in considering a settlement is to evaluate "the plaintiffs' *case* in its entirety rather than on a claim-by-claim basis." *Marshall*, 787 F.3d at 517. "[A]lthough variations in state laws can present difficulties in certifying a litigation class under Rule 23(a), those variations are irrelevant to [the] certification of a settlement class." *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 102 (3d Cir. 2013) (quotations and citation omitted); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 2016 WL 305380, at *14 (N.D. Ill. Jan. 26, 2016) ("variations in state laws are not obstacles to certification in the settlement context."). Ms. Nadola's objection is meritless as well.

### 2.     Objections to the fee award

Attorneys' fee awards also are committed to the court's sound discretion. *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1147 (8th Cir. 1999). An award of 25% is well within, and indeed lower than, awards commonly made in similar cases in this circuit. *See* 12/15/16 Preliminary Approval Tr. at 13:14-16 ("THE COURT: . . . I'm not generally offended by 25 percent. We all know that that's less than a lot of cases."); Mem. in Supp., Dkt. No. 201, at 7-8 (collecting cases awarding attorneys' fees amounting to 25% and more of the common fund).[11] No objector has any reasoned basis for an objection to this very reasonable percentage award – and certainly no basis to argue that it was an abuse of discretion. McCoy has only her own unsupported rhetoric. *See* McCoy Objection, Dkt. No. 180 at 1, ¶2. Sweeney is again incorrect

---

[11] "In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients . . . These percentages are the prevailing market rates throughout the United States for contingent representation." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007).

in her belief that the fee requested was 30% of the settlement amount, *see* Dkt. No. 184 at 1, and has no basis for her objection other than her own unsupported opinion, which is based on an incorrect percentage.  Sweeney Dep. at 48-50.  Lopez has only a vague feeling that 25% "just doesn't seem to be a fair ratio." Lopez Dep. at 54; *see also id.* at 57.  Lopez's additional objection that administrative costs should be deducted before application of a percentage likewise has no basis as the percentage is applied to the gross amount.  *Barfield v. Sho-Me Power Elec. Co-op.*, 2:11-CV-4321NKL, 2015 WL 3460346, at *4 (W.D. Mo. June 1, 2015); *9-M Corp. v. Sprint Commc'ns Co. L.P.*, 2012 WL 5495905, at *2 (D. Minn. Nov. 12, 2012).

Mr. Sibley also objected to attorneys' fees.  Dkt. No. 186 at ¶4.  He recognizes that a 25% award is customary.  *See* Sibley Dep. at 81 ("Q. Now, you acknowledge that 25 percent is a benchmark for the actual recovery in general in class action lawsuits, right?  A. Right.").  He believes, however, that a 20% award is better "[b]ecause I like that number," *id.* at 82, no matter how much time and effort was involved.  *Id.* at 85.  Mr. Sibley also opined that an award of 25% would amount to "unjust enrichment," Dkt. No. 186 at ¶4, but could not name the elements of unjust enrichment, and has himself charged 33.3% contingency fees to his clients.  Sibley Dep. at 88-89.  When asked to explain his basis for his assertion that expenses should be included in a percentage fee and not added above the fee, Mr. Sibley cited nothing and refused to answer, invoking the attorney-client privilege on behalf of himself.  *Id.* at 90-91.  Mr. Sibley otherwise opined that the Court "should cross check the fee request" under a lodestar method, which, of course, it did.  Dkt. No. 186 at ¶4.

In determining the fee award, this Court: (1) used a time-honored methodology approved in this circuit for awarding attorneys' fees; (2) did perform a lodestar cross check; and (3) clearly stated its reasoning.  There certainly was no abuse of discretion.  *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (no abuse of discretion in award of 36% to class counsel).

20

### C.     Vexatious Conduct

A factor weighing heavily in favor of a substantial appeal bond is that these appeals reflect vexatious conduct in litigation.  The objectors raise no legitimate arguments, and four of them have a history of objections that add nothing of value to the class.  McCoy and Sibley both are repeat objectors who have appealed only to dismiss the appeal.  Sweeney, herself a serial objector, has teamed with her husband (as co-objector or counsel), who is a known professional objector, as is counsel for Mr. Lopez.  Such objectors burden the civil justice system with failed objections and needless litigation, and harm class members by holding up distribution of settlement funds. These appeals, which respectfully, have no true chance of success, are no more than extortionist tactics that federal courts have denounced:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can lay what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Hill*, 2015 WL 1734996, at *2-3 (quoting *Barnes v. Fleetboston Fin. Corp.*, CA 01-10395-NG, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006).  Courts repeatedly have recognized that such tactics support imposing a bond.  *See In re Uponor,*  2012 WL 3984542, at *5 ("Courts treat with particular disapproval the objections and appeals of 'professional objectors,' whose objections amount to a 'tax that has no benefit to anyone other than to the objectors' but serves to 'tie up the

execution of [a] Settlement and further delay payment to the members of the Settlement Class . .

. .'") (quoting *In re Checking Account Overdraft Litig.*, 2012 WL 456691, at *2).[12]

## II.    THE BOND SHOULD BE SET AT A MINIMUM OF $150,309.00.

The amount of a bond is within this Court's discretion.  *See* Fed. R. App. P. 7, Notes of

Advisory Committee for 1979 Amendment.  Objectors may be made jointly and severally liable

for the bond payment.  *In re Uponor*, 2012 WL 39844542, at *2.  Courts routinely do so, and this

arrangement has the benefit of allowing objectors "to pool their resources, making the bond less

onerous for any given appellant."  *In re Polyurethane Foam Antitrust Litig.*, 1:10 MD 2196,

2016 WL 1452005, at *7 (N.D. Ohio Apr. 13, 2016).  Plaintiffs request a bond in the minimum

amount of $150,309.00.    In calculating this amount, Plaintiffs have included direct costs of

appeal (*see* Fed. R. App. P. 39), increased administrative costs, cost of delay, and attorneys fees.

*See In re Uponor,* 2012 WL 3984542.

### A.    Costs Taxable Under FRAP 39 And 28 U.S.C. § 1920

Direct appeal costs include the costs of preparing and transmitting the record, court

reporters' transcripts, and copy costs.  *See* Fed. R. App. P. 39(c), (e); *see also* 28 U.S.C. § 1920.

Plaintiffs request $25,000 for such costs. "Courts routinely approve bonds for appeal-related

costs of $25,000."  *In re Uponor,* 2012 WL 3984542, at *3 (citing cases);[13] *see also In re*

---

[12] Legal commentators have spoken against these types of objections, calling them "warts on the class action process."  Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 409 (2003). This stems from the feeling that professional objectors attract "lawyers more interested in coercing a fee than in correcting a wrong."  William B. Rubenstein, *The Fairness Hearing: Adversarial and Regulatory Approaches*, 53 UCLA L. REV. 1435, 1459 (2006) (citations omitted).

[13] The *Uponor* Court ordered a $170,000 bond.  Objectors appealed the bond order and the Eighth Circuit stayed a requirement that they post a bond in excess of $25,000.  *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1062 (8th Cir. 2013).  On appeal, the objectors argued that the district court abused its discretion in imposing an excessive appeal bond, but indicated that they were satisfied with the Court's previous ruling on the stay, and thus, the Court did not consider their argument. *Id.* at 1062 n.3.

*Polyurethane Foam Antitrust Litig.*, 1:10 MD 2196, 2016 WL 1452005, at *6 (N.D. Ohio Apr. 13, 2016) (including $10,000 requested direct appeal costs, and noting that "district courts regularly estimate taxable costs at more than twice the amount requested here.") (citing cases); *Tenille v. W. Union Co.,* 968 F. Supp. 2d 1107, 1108 (D. Colo. 2013) (including $25,000 for direct appeal costs); *Brandewie v. Wal-Mart Stores, Inc.,* 1:14-CV-965, 2016 WL 698110, at *3 (N.D. Ohio Feb. 22, 2016) ("The Court agrees . . . that imposition of $25,000 for costs on appeal is appropriate"); *Gemelas v. Dannon Co., Inc.*, 1:08 CV 236, 2010 WL 3703811, at *1 (N.D. Ohio Aug. 31, 2010) (indicating approval of $25,000 direct appeal cost for inclusion in bond). This amount is reasonable in consideration of the record and multiple appeals.

### B.    Additional Administrative Costs

In addition to the costs enumerated in Rule 39, courts frequently award costs incurred by delays caused by appeals of objectors, especially serial objectors, of class action settlements. "Costs incurred as a result of delay of a settlement caused by an appeal are recoverable under Rule 7." *In re Uponor*, 2012 WL 3984542, at *4 (citing cases). Such costs commonly are included in the bond amount. *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig.,* MDL142522PAMJJK, 2016 WL 259676, at *1 (D. Minn. Jan. 21, 2016) (including $46,872 in administrative costs) (collecting cases); *In re Polyurethane Foam Antitrust Litig*., 2016 WL 1452005, at *7 (including $15,000 for administrative cost) (collecting cases). Plaintiffs request that $60,000-80,000 be included in the bond amount for additional administrative cost occasioned by an appeal. *See* Declaration of James Prutsman, attached as Ex. L.

### C.    Delay Costs / Interest

Courts also have included interest under a number of rationales, including citation to 28 U.S.C. § 1961, providing for post-judgment interest, *Brandewie v. Wal-Mart Stores, Inc.,* 1:14-

CV-965, 2016 WL 698110, at *3 (N.D. Ohio Feb. 22, 2016), and FRAP 8 (supersedes bond), as a meritless appeal is tantamount to a stay of the judgment, which it plainly is.  *See, e.g.*, *In re Wal-Mart Wage & Hour Employment Practices Litig.,* 2:06CV00225-PMPPAL, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) (finding that objections were frivolous and "tantamount to a stay of" the final judgment approving class settlement).  Courts calculate this bond component by estimating the length of an appeal and applying a rate of interest to the amount available for distribution to the class.  *See, e.g., In re Checking Account Overdraft Litig.,* 1:08-CV-23323-JLK, 2012 WL 456691, at *3 & n.6 (S.D. Fla. Feb. 14, 2012) (ordering bond in the amount of $616,338.00 "to ensure payment of costs to the class plaintiffs for defending the appeal and the resulting delay of distribution of funds to the class;" amount representing two years' compounded interest on $280 million, or $616,338, or, amount of the settlement minus attorneys' fees, in addition to $5,000 costs); *Barnes v. Fleetboston Fin. Corp*., CA 01-10395-NG, 2006 WL 6916834, at *3 (D. Mass. Aug. 22, 2006) (calculating bond including 5.15% interest on a settlement of $12.5 million, dating from the date of judgment for one year, totaling $643,750.00).[14]

It is not unusual that resolution of appeals takes over a year, meaning that the settlement will needlessly be idle before distribution, which will diminish the total value of the settlement due to the time value of money.  Estimating appeal time to be at least one year, interest on the $22.6 million fund amount (exclusive of attorney fees and administrative expense), is approximately $13,334. Plaintiffs respectfully request this Court to include this amount.

---

[14] Section 1961 calculates post-judgment interest from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.  The weekly average one-year constant maturity Treasury yield published on June 10 (the week prior to the entry of judgment on June 16, 2016) was .59 percent.  *See* Board of Governors of the Federal Reserve System Selected Interest Rates (Weekly) (http://www.federalreserve.gov/releases/h15/20160613/) (last visited July 20, 2016).

D.      **Reasonable Attorneys' Fees**

Plaintiffs also request that attorneys' fees expected to be incurred in respect to these appeals should be accounted for in the bond the Court sets.   Attorneys' fees also have been included in the amount of bonds under varying rationales. Some courts hold that reasonable attorneys' fees may be included based on their inherent power to require the posting of bonds and to provide for fees.  *See, e.g., In re Polyurethane Foam Antitrust Litig*., 2016 WL 1452005, at *7 ("This Court has the "inherent power to require the posting of cost bonds and to provide for the award of attorneys' fees;"  "[n]otably, courts possess these powers 'even if procedural rules exist which [govern] the same conduct.") (internal quotations and citation omitted); *see also id*. at *8 (collecting cases imposing bond including amounts for attorney fees).  In addition, the First Circuit has indicated that attorneys' fees may be included in a bond amount when an appeal is frivolous.  *Sckolnick v. Harlow,* 820 F.2d 13, 15 (1st Cir. 1987) (per curiam) (affirming bond order noting "the district court's decision to set the amount at $5,000 implied a view that the appeal might be frivolous and that an award of sanctions against plaintiff on appeal was a real possibility"); *see also Hill* 2015 WL 1734996, at *3 (concluding that objector's arguments were without merit, setting bond at $75,300, which included $35,000 in attorneys' fees and expenses); *Gemelas* 2010 WL 3703811 at *2 (including attorneys' fees in bond amount not only because consumer protection statute allowed for award, but also because "courts have discretion to impose appeal bonds to prevent frivolous, unreasonable or groundless litigation.").[15]

---

[15] Additionally, some courts, like the Sixth Circuit, justify the inclusion of attorneys' fees in the bond if an underlying statute provides for an award of fees.  *See In re Cardizem CD Antitrust Litig*., 391 F.3d at 817. The court in *Gemelas* 2010 WL 3703811, for example, looked to O.R.C. § 1345.09(F)(2), in determining that attorneys' fees were appropriately included in the bond.  *Id*. at *2.  The Ohio consumer protection statute at issue there is one under which claims are brought here.  In addition, the New Jersey statute, also alleged here, provides for attorneys' fees to a prevailing party, N.J. Stat. Ann. § 56:8-19, as does the Florida statute.  Fla. Stat. Ann. § 501.2105(1).

Plaintiffs estimate that attorney time needed to respond to the five objectors' appeals (including tasks such as: prepare required filings, prepare joint appendices or review the record submitted by appellants and prepare needed supplements; analyze appellants' briefs, research and prepare appellees' briefs; and prepare for and present oral argument) will be approximately eighty-five (85) hours.  Applying the billing rates of those attorneys anticipated to work on the appeals, at the billing rates shown in Dkt. No. 201-1, a reasonable estimate of attorney fees necessitated by the appeals is $51,975.00.  *See* Declaration of Gretchen Garrison, attached hereto as Exhibit M.

## CONCLUSION

The settlement fund ultimately approved in this case represented hard-fought, arms-length negotiations that will provide substantial valuable relief to the class.  The objectors, four of whom routinely appeal without achieving any benefits whatsoever for the class, vexatiously impede that relief.   This Court should not countenance such behavior, but review the objections for what they are.  Imposing a bond in this case will provide necessary security to the class as a result of the meritless appeals working their way to the Eighth Circuit. Plaintiffs request that the bond be posted within 14 days of entry of the Court's order and that it be made joint and several. Plaintiffs further request all such other relief that the Court deems necessary and appropriate.

Dated:  July 29, 2016

Respectfully submitted,

*/s/ John G. Simon*
John G. Simon, #35231MO
The Simon Law Firm, P.C.
800 Market Street, 17th FL
St. Louis, Missouri 63101
P. (314) 241-2929
F. (314) 241-2029
jsimon@simonlawpc.com

> *Liaison Counsel and Member Plaintiffs' Executive Committee*

*/s/ Deborah Kravitz*
Scott A. Kamber (SK-5794,SDNY)
KamberLaw LLC
100 Wall Street 23rd floor
New York, NY 10005
P. (212) 920-3072
F. (212) 202-6364
skamber@kamberlaw.com


Deborah Kravitz, #275661CA
KamberLaw LLP
401 Center St., Suite 111
Healdsburg, CA
P. (707) 820-4247
F. (212) 202-6364
dkravitz@kamberlaw.com

> *Interim Class Counsel and Chair of the Plaintiffs' Executive Committee*

Gray, Ritter & Graham, P.C.
Don M. Downing #30405MO
701 Market Street, Suite 800
St. Louis, MO 63101-1826
P. (314) 241-5620, ext. 2006
F. (314) 241-4140
ddowning@grgpc.com

Bursor & Fisher, P.A.
Joseph I. Marchese
Frederick J. Klorczyk III

27

888 Seventh Ave.
New York, NY 10019
P. 646-837-7410
F. 212-989-9163
jmarchese@bursor.com
fklorczyk@bursor.com

Steelman, Gaunt & Horsefield
David Steelman, #27334MO
901 N Pine St
Rolla, MO 6540
P. (573) 341-8336
F. (573) 341.8548
dsteelman@steelmanandgaunt.com

*Members of Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served electronically upon all counsel of record in this action via the CM/ECF system on this 29th day of July, 2016 with copies mailed to the following objectors at the addresses appearing on their notices of appeal where appearing *pro se* or to counsel:

Pamela A. Sweeney  (*pro se*)
2590  Richatdson Slreet
Madison, WI 537

Caroline Nadola  (*pro se*)
1421 Washington Place
Chesterbrook, PA 19087

Pamela McCoy (*pro se*)
6801 Garrett Rd
Ravenna, OH 44266

Gary Sibley  (*pro se*)
2711 N. Haskell, Suite 550
Dallas, Texas 75204

and

Timothy Belz
Ottsen, Leggat & Belz

112 S. Hanley Road, Ste. 200
St. Louis, KO 63015

Christopher Bandas
Bandas Law Firm
500 N Shoreline Blvd., Ste. 1020,
Corpus Christi, TX 78401

    Attorneys for Paul Lopez

                   */s/ John G. Simon*
                   John G. Simon