# EXHIBIT A

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

= = = = = = = = = = = = = = = = = = = = = = = = = = = = 

IN RE: BLUE BUFFALO COMPANY,
LTD. MARKETING AND SALES
PRACTICES LITIGATION

RELATES TO: ALL CASES

Plaintiff, Case No. 4:14 MD 2562 RWS

= = = = = = = = = = = = = = = = = = = = = = = = = = = = 

Deposition of:

PAMELA A. SWEENEY

Madison, Wisconsin
May 9, 2016

Reported by: Taunia Northouse, RDR, CRR, CCP

# I N D E X


| WITNESS | Page(s) |
|---|---|
| PAMELA A. SWEENEY | |
| Examination by Mr. Klorczyk | 4 |
| Examination by Mr. Yospe | 74 |


## E X H I B I T S


| No. | Description | Identified |
|---|---|---|
| Exh 1 | Subpoena to testify | 14 |
| Exh 2 | Exhibit A, Stipulation of Settlement | 29 |
| Exh 3 | Notice of class action | 31 |
| Exh 4 | Legal Notice from Blue Buffalo | 33 |
| Exh 5 | Objections and Notice of Intent Not to Appear of Pamela A. Sweeney | 34 |
| Exh 6 | Claim Detail | 46 |
| Exh 7 | Conditional Class Certification and Preliminary Approval Order | 61 |
| Exh 8 | Judge Anderson's curriculum vitae | 68 |
| Exh 9 | Notice of Appeal and Ninth Circuit Rule 3-2 Representation Statement | 70 |


(Attached to the original transcript and copies provided to Attorneys Klorczyk and Yospe)

(Original transcript filed with Attorney Klorczyk, copies provided to Attorneys Klorczyk and Yospe)

DEPOSITION of PAMELA A. SWEENEY, a witness of lawful age, taken on behalf of the Plaintiffs, wherein Alexia Keil, et al., are Plaintiff, and Blue Buffalo Company, Ltd., is Defendant, pending in the United States District Court for the Eastern District of Missouri, pursuant to subpoena, before Taunia Northouse, a Registered Diplomate Reporter and Notary Public in and for the State of Wisconsin, at the offices of Verbatim Reporting, Limited, Two East Mifflin Street, Suite 102, in the City of Madison, County of Dane, and State of Wisconsin, on the 9th day of May 2016, commencing at 10:03 in the forenoon.

A P P E A R A N C E S

FREDERICK J. KLORCZYK, III, Attorney
BURSOR & FISHER, P.A.
888 Seventh Avenue, New York, New York 10019, appearing by videoconference on behalf of the Plaintiffs.
fklorczyk@bursor.com 616-837-7129

JULIE E. PIPER-KITCHIN, Attorney
KAMBER LAW, LLC
8816 Manchester Road, No. 250, St. Louis, Missouri 63144, appearing on behalf of the Plaintiffs.
314-330-3255

SAM A. YOSPE, Attorney
PATTERSON BELKNAP WEBB & TYLER, LLP
1133 Avenue of the Americas, New York, New York 10036-6710, appearing by conference call on behalf of the Defendant.
syospe@pbwt.com 212-336-2471

PAMELA A. SWEENEY,

called as a witness, being first duly sworn, testified on oath as follows:

EXAMINATION

By Mr. Klorczyk:

Q Good morning, Ms. Sweeney. Can you please state your name and address for the record.

A Pam Sweeney, 2590 Richardson Street, Madison, Wisconsin 53711.

Q Thank you. Is that --

A I couldn't hear you.

Q Is that your legal name? Is that better?

A Yeah, there you go.

Q What's your full legal name?

A Pamela Sweeney.

Q Okay. And your middle initial or your middle name is what?

A My middle name is Ann or it could be S. Sometimes I use my maiden name. Sometimes I use Ann. So either Pamela Ann Sweeney or Pamela S. Sweeney.

Q Okay. Are you currently employed?

A No.

Q When was the last time you were employed?

A I don't recall. I was a substitute teacher for my

Q What did you talk about with your husband about today's deposition?
A He just said, "Get on the record that you're only there two hours." And pretty much that was it. And then we had to stop at the courthouse to file the motion to quash.
Q I'm sorry, what was the last part of that, what you said?
A We had to stop at the courthouse to file the withdrawal.
Q Okay. Did your husband give you any other advice about today's deposition?
A No.
Q Have you spoken with your husband before filing your objection?
A No.
Q What is your husband's name?
A Patrick.
Q Okay. And what does he do?
A Pardon me?
Q What does your husband do for a living?
A He's a real estate attorney.
Q Is he providing counsel to you in connection with your objection to this deposition?
A No.

Q Patrick Sweeney is your husband; correct?
A Correct.
Q And have you ever objected or appeared -- have you ever objected with your husband in a class action lawsuit?
A Can you clarify that?
Q Sure. Have you ever filed an objection on behalf of you and your husband to a class action lawsuit?
A The only thing I can think of is Western Union which I filed and he filed, so I guess we both filed.
Q Okay.
A That would be the only one.
Q Has your husband ever represented you as a lawyer in an objection that you filed in a class action lawsuit?
A I'm not sure.
Q We'll get to that a little bit later on. Who's Kerry Ann Sweeney?
A My daughter.
Q Do you know if she's ever filed an objection to a class action lawsuit?
A She has.
Q Do you know what cases that was in?
A StarKist.

Q Did you help her or ever help her with an objection to a class action lawsuit?

A We discussed it. I mean, I guess probably. I guess the answer would be yes, but she did it ultimately.

Q Okay. What kind of assistance did you provide her?

A We spoke about it.

Q Okay. Did you tell her -- give her any guidance on what objections to make?

A I don't recall.

Q Do you know who Christopher Bandas is?

A I do not.

Q Have you ever heard of that name?

A I have.

Q In what context have you heard of Christopher Bandas?

A I've just heard his name from my husband.

Q In what context did your husband talk about Christopher Bandas?

A In what context? Just that Christopher Bandas was doing something. I don't know the man. I've never met him, never talked to him. So you know what, I really don't recall, so I'm uncomfortable even answering that. So I'm just going to say I

don't recall because I don't want to perjure.
Q Has Christopher Bandas ever represented you as an objector in a class action lawsuit?
A No.
Q Do you know who David Stein is?
A I do not.
Q Have you ever heard that name before?
A Never.
Q Do you know who Thomas L. Cox, Jr., is?
A No.
Q Have you ever heard that name before?
A No.
Q Do you know who Timothy Belz is?
A No.
Q Have you ever heard that name before?
A No.
Q Have you ever heard of Matthew Belz?
A No.
Q Do you know a Joseph Darrell Palmer?
A I do.
Q How do you know him?
A He went to law school with Patrick.
Q Do you know him personally, or is he an acquaintance?
A What do you mean?

your objection?

A Could you repeat that?

Q Did you ever look for receipts prior to filing your objection?

A I don't keep receipts.

Q When was the last time that you purchased Blue Buffalo pet food?

A Probably the beginning of the 2016.

Q Have you purchased any Blue Buffalo pet food since you learned about this case?

A No.

Q Have you inquired with either Mounds or Pet World whether they have records of your purchases?

A No.

Q Did it cross your mind to do that?

A No.

Q So what led you to purchase Blue Buffalo pet foods over other brands?

A I think their marketing, to be honest.

Q What about their marketing?

A It just -- they have the wolf on there. It's strategically placed in the stores, I would say.

Q Any other reasons that you purchased Blue Buffalo?

A I just thought it would be a better product because they listed there were no by-products, it

Q So why do you think that the settlement is not fair?
A It's written in my objection.
Q Do you have any objection to the $32 million settlement?
A I do not.
Q So you think that $32 million is adequate for the class?
A I don't know. I didn't negotiate it, so I'm not really sure if it's adequate or not, but it seems reasonable.
Q And you're not asking the court to deny final approval on the basis that the objectors aren't receiving enough money in the settlement, though; correct?
A Well, in a way I am because I'm objecting to the attorneys' fees, so you take that out of the 32 million.
Q Sure. But you're not objecting to the $32 million in the settlement funds; correct?
A Correct.
Q So after you write, "I do not intend to appear at the final fairness hearing," you object to the attorneys' fees of $8 million, along with $1.4 million in costs of settlement and

administrative fees; correct?

A Correct.

Q What is the basis for that objection?

A I think it's too much.

Q Why do you think it's too much?

A Because it's almost 30 percent of the settlement.

Q What do you think the attorneys' fees in this case should be?

A I think they should cut it in half.

Q Why do you believe 15 percent is a fair attorneys' fee award?

A Because I think 30 percent is too high, and I think more should go to the class, and I think it's just too high.

Q Do you have an understanding of what attorneys' fees are typically in class action cases?

A Do I have -- do you want to clarify that?

Q Do you have any sense of what the typical attorneys' fees are in a class action case?

A They differ.

Q Okay. Can you provide an example?

A I don't know. I've seen them at 20 percent. I couldn't tell you -- no, I can't of a specific example.

Q Did you do any research to determine whether or

not a 30 percent attorneys' fee award was appropriate in this case?

A Do you want to clarify that?

Q Did you do any research to support your contention that 30 percent in attorneys' fees is too high in this case?

A Yeah, I looked at other ones, and I can't remember which ones, and some take a lesser percent. Others put in more time. This is high. 30 to 35 percent is high.

Q In doing that research, did you see any cases that approved attorney fee awards of 33 percent?

A I do not recall.

Q But here you just put --

A I know they've asked for 30 -- I've seen it up to 35 percent that was asked for.

And I also just saw one case where they cut $10 million out of the attorneys' fees because the judge didn't like it.

Q You're aware that the entire attorneys' fees asked here is 8 million; correct?

A Correct.

Q So why did you decide to include the $1.4 million dollars of cost, expenses and settlement administrative fees in your computation of the

of purchases to get a greater amount than $10?

A No, no, I think --

Q It's okay to require proof of purchases it's your opinion?

A On greater amounts.

Q Setting aside the amounts for one moment, you don't have any objections to the fact that the settlement required class members to submit proof of purchase if they want to receive more than just $10?

A No.

Q Does the $200 cap affect you in this case?

A It does not affect me personally, no.

Q But you just think it's unfair?

A I do. I don't think it's enough. I think you guys should give up some of your attorneys' fees and put it towards that.

Q Are you aware that the settlement agreement provided for a pro rata increase in the event that there are settlement funds left over after the class members' claims are paid?

A State that again.

Q Are you aware that the settlement provides for a pro rata increase in the event that there's money left over in the settlement fund after class

Q Did he assist you in preparing this objection?

A No, he did not.

Q So turning back to page 2, are these all the cases -- all three that are listed here that you have filed objections in?

A To the best of my recollection. Recently, since I mailed this in, you could add Justice to the list and Snyder's pretzels. And that's to the best of my recollection.

Q How did you -- did you search for any records of your objections?

A Again, I don't have them.

Q Did you do anything to confirm that this list is as complete as possible?

A Can you state that again?

Q Did you do anything at all to confirm the completeness of this list?

A Did I do anything? No.

Q So you just went off your recollection?

A That is correct. And I wrote, "To the best of my recollection, I have objected to the following." I state that clearly.

Q So other than relying on your own memory, you did nothing to determine which settlements you had previously filed an objection; correct?

A That is correct.

Q Other than the two objections you just referenced that are not listed here, can you remember of any other objections that you have previously filed?

A No.

MR. KLORCZYK: Let's just take a quick break.

THE WITNESS: Well, you know, it's 11:43, and I'd just as soon sit here for the next 13 minutes and get this done, unless you really need the break.

MR. KLORCZYK: I mean, I would just like to take a break to make sure I have my thoughts organized so I can ask you the remainder of my questions. So it's going to be five minutes off the record.

THE WITNESS: All right.

(Recess)

By Mr. Klorczyk: (Continuing)

Q Ms. Sweeney, are you aware if the settlement agreement was mediated?

A I believe it was.

Q Do you know who mediated it?

A I do not.

Q Have you -- so you're not aware that this was

mediated by a retired federal district judge, Wayne Anderson?

A No, I'm not.

MR. KLORCZYK: Julie, can you please have the court reporter mark as Exhibit 8 Judge Anderson's resume`.

(Exhibit No. No. 8 marked for identification)

Q So I'm going to represent to you that this is Judge Anderson's resume`. Just briefly read through it and let me know when you're finished.

A He was captain of the track team. Wonder if he still holds the hundred-yard dash.

I've read enough. I've read it.

Q Do you believe that Judge Anderson was an appropriate mediator for this matter?

A He seems to be qualified.

Q You have no reason to believe that he was not qualified to mediate this settlement, do you?

A I have no reason to believe that.

Q Who do you think is more qualified to assess the fairness of the proposed settlement, you or Judge Anderson?

A To assess the fairness of the settlement? To mediate -- can you -- I'm uncomfortable answering

that question, puts me in an uncomfortable position. Could you rephrase it?

Q Who do you think is more qualified to assess the fairness of the proposed settlement, you or Judge Anderson?

A Legally, Judge Anderson.

Q And you have no reason to believe that his judgment was partial here?

A Could you state that again?

Q Do you have any reason to believe that Judge Anderson did not act fairly in mediating the Stipulation of Settlement?

A No.

Q Have you ever appealed one of your prior objections?

A Yes.

Q Do you know which one?

A I'm not at liberty to discuss that.

Q Why not?

A I signed a nondisclosure.

Q Did you file an appeal in a case called Larsen v. Trader Joe's Company?

A I did not.

MR. KLORCZYK: Julie, can you please introduce Ms. Sweeney Notice of Appeal

Larsen v. Trader Joe's Company and have it marked as Exhibit No. 9.

(Exhibit No. 9 marked for identification)

Q Ms. Sweeney, have you ever seen Exhibit No. 9 before?

A I have not.

Q Were you aware that you had filed an appeal in this case?

A I was not.

Q And this lawsuit was not reflected on your list of objections in your objection, was it?

A It was not.

Q Did you just forget about this case?

A No. I didn't do this.

Q Okay. Did you file an objection in the Trader Joe's case?

A I believe I might have. I don't recall. But I did not do this.

Q Did you authorize Joseph Darrell Palmer, who appears to have been your attorney in this matter, to file an appeal?

A No, I did not.

Q If you were required to post a bond on an appeal in the event that you do appeal the Blue Buffalo

settlement, are you capable of doing so?

A Depends what the appeal would be, the appeal bond would be.

Q Could you personally post a $170,000 bond if required by the court to do so?

A Pardon me?

Q Could you personally post a $170,000 bond if you were required by the court to do so?

A I can't answer that.

Q Why not?

A I don't have enough information.

Q Okay. I'm just asking if you have the financial ability to put up $170,000 of an appellate bond if the court were to require you to do so in the event that you appeal? Do you have $170,000 to post as an appellate bond in this case?

A I don't have the information to make -- answer that.

Q Okay. Could you post a $10,000 appellate bond if required to do so by the court?

A I don't have the information to answer that.

Q Are you prepared to pay class counsel's fees on appeal in the event your appeal, if one is filed, is ultimately unsuccessful?

A I don't have the information to answer that.

the subpoena in this case?
A No.
Q Are you aware if any of your past objections were successful in bringing about change to a settlement agreement?
A I do not know.
Q Have you ever received compensation in connection with an objection that you have filed?
A I do not -- no, I have not.
Q You've never been paid by any lawyer for a class or a defense lawyer?
A State that again.
Q Sure. Have you ever been paid to withdraw your objection to a class action settlement?
A I'm not at liberty to discuss anything of that nature.
Q Did you voluntarily withdraw your objection in the U.S. Bank case because you or your husband received money from the class?
A I do not recall.
Q Why did you withdraw your appeal in the Larsen case?
A Again, I never -- I'm not a part of that. My name was -- must have been used.
Q Did you authorize your husband to use your name in