**RECEIVED**

AUG 0 8 2016

BY MAIL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE BLUE BUFFALO COMPANY, | ) | |
| LTD., MARKETING AND SALES | ) | Case No. 14-md-02562-RWS |
| PRACTICES LITIGATION | ) | |
| | ) | |
| RELATES TO:  ALL CASES | ) | |

---

## MEMORANDUM OF CAROLINE NADOLA IN OPPOSITION TO
## MOTION FOR APPEAL BOND

---

## I. INTRODUCTION

In their motion for an appeal bond, Plaintiffs' lawyers spent a significant amount of time and energy personally attacking the other four appellants (Sweeney, Lopez, McCoy and Sibley) as serial/professional objectors, and then unfairly attempted to lump my legitimate appeal in with the others. They are trying to piggyback my appeal with the others in their request for a bond because – for my appeal standing on its own – none of the *Uponor*[1] factors weigh in favor of imposing an appeal bond against me.

## II. ARGUMENT

### A. THE FACTORS IN *UPONOR* WEIGH HEAVILY AGAINST IMPOSITION OF AN APPEAL BOND AGAINST ME

As set forth below, none of the *Uponor* factors advanced by Plaintiffs' lawyers support imposing an appeal bond against me for my appeal.

#### 1. MY FINANCIAL INABILITY TO POST THE REQUESTED BOND

Regarding ability to post the requested $150,309 bond, Plaintiffs' lawyers addressed the ability of the other "repeat objectors" to post a bond, but completely ignored my inability. I do not have the financial ability to post a $150,309 bond (or even one-fifth of such a bond -- $30,061.80),[2] and requiring me to post such a bond would create a barrier to my well-founded appeal. Therefore, this *Uponor* factor weighs against requiring me to post an appeal bond.

#### 2. RISK OF NON-PAYMENT

Regarding risk of non-payment, Plaintiffs' lawyers argued:

---

[1]     *In re Uponor, Inc.*, 716 F.3d 1057 (8th Cir. 2013).

[2]     Declaration of Caroline Nadola, ¶ 2, attached as Exhibit A.

1

> Sweeney, McCoy, Lopez and Sibley all are repeat objectors and at least
> two of them are, or have been, represented by known professional
> objectors who have been criticized across the country for their vexatious
> tactics. The merits of an appeal also are relevant to the risk of
> nonpayment, "in that if the appellant is pursuing a clearly frivolous appeal
> one might infer that the appellant is abusing the judicial process and thus
> has no intention of paying any costs taxed on appeal." (citations
> omitted).[3]

Plaintiffs' lawyers argue that the other four appellants' and their counsels' reputations for

having "been criticized across the country for their vexatious tactics" warrants a bond,

and then, yet again, unfairly try to lump me in with them. I have never before objected to

a class action settlement.[4]  Although I am acting *pro se*, I have consulted with a private

attorney who also has never filed an objection to a class action settlement.[5]  As

demonstrated below, my unique appeal is well-founded, and I am not "pursuing a clearly

frivolous appeal." Additionally, Plaintiffs' lawyers strained to argue that, since I live in

Pennsylvania, this would present "additional expense should collection actions be

required."[6]  But, at least one of the law firms representing Plaintiffs is also located in

Pennsylvania. Accordingly, this *Uponor* factor also weighs against imposing an appeal

bond against me.

## 3.    SIGNIFICANT MERIT OF MY APPEAL

The basis for my appeal is well-founded, and thus the merit of my appeal weighs

heavily in favor of not requiring me to post a bond. Instead of focusing on the merit of

my appeal, Plaintiffs' lawyers spent an enormous amount of energy personally attacking

the other four appellants, and then tried to lump my appeal in with theirs in requesting a

---

3    Memorandum in Support of Motion for Appeal Bond, Doc. 233, p. 15.
4    Declaration of Caroline Nadola, ¶ 3.
5    Declaration of Caroline Nadola, ¶ 4.
6    Memorandum in Support of Motion for Appeal Bond, Doc. 223, pp. 14-15.

2

bond. Indeed, out of their 26-page memorandum of law, Plaintiffs' lawyers only devoted

approximately eight sentences to the merit of my appeal.[7] This was done by design,

because an in-depth analysis of my appeal (as opposed to the others) reveals what

Plaintiffs' lawyers do not want to reveal: that my appeal is meritorious and has a strong

chance of success.

> As the Court is aware, my objection stated the following:

> Reason for objection: The settlement is not fair, reasonable and adequate. The
> allocation of the settlement fund equally among consumers of all states is unfair
> because it does not account for differences in the strengths of varying states'
> unfair trade practices statutes. "For example, while many states' unfair trade
> practices statutes allow for private causes of action and provide for minimum
> statutory damages ranging between $25 and $2,000, other states' statutes either do
> not provide for private causes of action, or specify that actual damages can be
> recovered in a private action, but do not provide for minimum damage awards."
> *Clement v. American Honda Finance Corp.*, 176 F.R.D. 15, 23 (D.Conn. 1997).[8]

In their motion, Plaintiffs' lawyers baldly argued that "[t]his objection also is entirely

generic, with no effort to provide a comparison of consumer protection statues alleged in

this case." Inexplicably (or by design), Plaintiffs' lawyers did not address the *Clement*

case cited in my objection, which highlighted the fact that "...many states' unfair trade

practices statutes allow for private causes of action and provide for minimum statutory

damages ranging between $25 and $2,000, other states' statutes either do not provide for

private causes of action, or specify that actual damages can be recovered in a private

action, but do not provide for minimum damage awards." *Clement*, 176 F.R.D. at 23.

These differences in such state laws support my objection that the settlement was unfair

because it allocated the settlement fund equally among class members of all states,

---

7    Memorandum in Support of Motion for Appeal Bond, pp. 18-19.
8    Objection, Doc. 188.

3

without accounting for the varying strengths of different states' unfair trade practice statutes.

Moreover, Plaintiffs' lawyers eight-sentence argument blatantly ignored other cases that support the basis for my appeal. For example, it has been held that a court "…must determine whether the **allocation plan** is fair, reasonable and adequate before allowing the settlement proceeds to be distributed, because it is part of the "proposal" within the meaning of Rule 23(e)." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2011 WL 1398485 *4 (D.Me. April 13, 2011)(emphasis added). In that case, the court "…conclude[d] that it [wa]s appropriate to award all the money to consumers in those jurisdictions with legitimate state-law recovery opportunities … even though that decision means that residents of other jurisdictions will receive nothing." *Id.* at *5. The court further stated that, "[f]or instance, an agreement that gives the same monetary remedy to all members of the class, despite significant differences in the nature of their claims or injuries, may not be fair and reasonable." *Id.* at *6.

Similarly, in *Rougvie, et al. v. Ascena Retail Group, et al.*, No. 2:15-cv-724-MAK (E.D.Pa.), the parties, in their motion for final approval of another nationwide settlement of state law claims, recognized the necessity for an allocation plan that is fair based on differences in state law:

> The Settlement also takes in to account both the differences in the state consumer protection statutes, as well as the differences in state law concerning the availability of class actions. Those members who reside in states in which their consumer protection statutes offer potential damages up to treble the amount purchased fall within the "treble recovery" category. Those Class Members who reside in states in which their consumer protection statutes permit only actual damages recovery fall within the "single recovery" category. And those Class Members who reside in states that recognize no class actions or whose consumer protections statutes do not permit class actions, fall within the "limited

4

recovery" category. The treble recovery Class Members get a
compromised enhancement of their damages in recognition of the possible
right to receive enhanced damages. The limited recovery Class Members
receive a compromised reduction of their damages in recognition of their
states' limited ability to recover damages pursuant to a class action.[9]

That fair plan of allocation, as a contrasting example to the instant settlement, was

structured as follows:

|  | **Limited Recovery Class Member** | **Single Recovery Class Member** | **Treble Recovery Class Member** |
|---|---|---|---|
| **Cash Award** | $7 | $13 | $20 |
| **Voucher Award** | $10 (off purchase of $25 or more) | $20 (off purchase of $25 or more) | $30 |
| **Applicable States** | AL, GA, LA, MS, MT, SC, TN | AK*, AR AZ, CA, CT, DE, IA, IL, FL, KY, MD, ME, MI, MN, MO, ND, NE, OK, OR, RI, SD, UT, VT, WV, WY | DC, CO, HI*, ID, IN, MA, NH, NM, NJ, NY, NV, NC, OH, PA, TX, VA, WA, WI |

*Alaska and Hawaii residents will receive a gift card via first class mail instead of a
voucher.

See, Exhibit B.

Instead of addressing my concerns about the fairness of the plan of allocation in

this settlement head-on, Plaintiffs' lawyers instead tried to misdirect and confuse the

Court by citing to cases for the separate premise that "variations in state laws are not

obstacles to certification in the settlement context."[10] My objection was not that the class

should not have been certified – it was that the plan of allocation among class members

was unfair. Plaintiffs' lawyers, who are familiar with class action law, surely recognized

this. (Indeed, they stated earlier in their motion: "No objector contends that the

---

9       Plaintiffs' and Defendants' Joint Motion for Final Approval of Settlement, Doc.
98, p. 8, *Rougvie, et al. v. Ascena Retail Group, Inc., et al.*, No. 2:15-cv-00724-MAK
(E.D.Pa).
10      Memorandum in Support of Motion for Appeal Bond, Doc. 223, p. 19.

5

settlement class was inappropriately certified."[11]). Simply stated, the cases cited by Plaintiffs' lawyers do not address the issue raised in my appeal. Disturbingly, Plaintiffs' lawyers used this same misdirection in their Omnibus Response to Objections previously presented to this Court.[12]

Additionally, Plaintiffs' lawyers make the phony argument that since I am "…a resident of Pennsylvania … [I am] not among the subclass members asserting a consumer protection claim."[13] The Stipulation of Settlement (Doc. 160-1) does not provide for subclasses. *Id.* at ¶ 1.25. The Settlement agreement simply states that: "'Settlement Class Members' or 'Settlement Class' means: All residents of the United States of America who, from May 7 2008 through the Preliminary Approval Date, purchased any of the Blue Buffalo Products." *Id.* Moreover, even though it is irrelevant based on the class definition, I purchased Blue Buffalo products in both Pennsylvania and New Jersey during the class period.[14] Such arguments by Plaintiffs' lawyers are, themselves, vexatious. Simply stated, my objection that the plan of allocation among class members is not fair and reasonable is meritorious. This *Uponor* factor also weighs heavily against imposing a bond against me.

## 4. NO VEXATIOUS CONDUCT BY ME

Plaintiffs' lawyers take the same approach of improperly grouping me with the other objectors regarding this *Uponor* factor. They argue that "[t]he objectors raise no legitimate arguments, and four of them have a history of objections that add nothing of

---

11    Memorandum in Support of Motion for Appeal Bond, Doc. 223, p. 15.
12    Plaintiffs' Omnibus Response to Objections to the Final Approval of the Settlement, Doc. 203, pp. 14-17.
13    Memorandum in Support of Motion for Appeal Bond, Doc. 223, pp. 19.
14    Declaration of Caroline Nadola, ¶ 5.

6

value to the class. ...Courts repeatedly have recognized that such tactics support imposing a bond."[15] As demonstrated above, my appeal raises a legitimate argument, and Plaintiffs' lawyers have alleged no vexatious conduct by me. This factor also weighs heavily against imposing an appeal bond against me.

## B.    THE REQUESTED BOND IS UNREASONABLE

The requested appeal bond of $150,309 is completely unreasonable and presents a barrier to my well-founded appeal. Similarly, in *Uponor*, the Court of Appeals for the Eighth Circuit agreed that a district court's imposition of a $170,000 appeal bond was excessive, and entered an order staying the "requirement that Appellants post an appeal bond in excess of $25,000." *In re Uponor, Inc.*, 716 F.3d 1057, 1062 (8th Cir. 2013). Here, as demonstrated above, any appeal bond against me is inappropriate.

## III.    CONCLUSION

For the reasons stated above, Plaintiffs' lawyers' motion requesting that I be ordered to post an appeal bond must be denied.

DATED: August 5, 2016                     Respectfully submitted,

Caroline Nadola, *Pro Se*
1421 Washington Place
Chesterbrook, PA 19087
609-351-1346

Appellant (Class Member/Objector)

---

[15]    Memorandum, Doc. 233, p. 21.

7

**RECEIVED**

AUG 0 8 2016

**BY MAIL**

**Caroline Nadola**
**1421 Washington Place**
**Chesterbrook, PA 19087**
**Tel: 609-351-1346**
**Email: caroline.nadola@comcast.net**

August 5, 2016

**VIA FEDEX EXPRESS**

Clerk of Court
United States District Court for the
 Eastern District of Missouri
111 South 10th Street
St. Louis, MO 63102

**Re:  In re: Blue Buffalo Company, Ltd. Marketing and Sales Practice Litigation**
**No. 4:14 MD 2562 RWS**

Dear Sir/Madam:

Enclosed for filing is Caroline Nadola's Memorandum in Opposition for Motion
for Appeal Bond.

Very truly yours,

Caroline Nadola

Enclosure