UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: BLUE BUFFALO COMPANY, LTD. | ) | MDL NO. 2562 RWS |
| MARKETING AND SALES PRACTICES LITIGATION | ) | ALL CASES |

**ORDER**

This multidistrict litigation is before me on the Plaintiffs' Motion for Appeal Bond. Plaintiffs seek an order imposing on appellants Pamela Sweeney, Pamela McCoy, Paul Lopez, Gary Sibley, and Caroline Nadola ("the Objectors") and their counsel an appeal bond in the amount of $150,309.00. Each of the five Objectors oppose the motion for appeal bond. For the reasons that follow, I will grant Plaintiffs' motion in part and order the Objectors to pay an appeal bond of $25,000.00.

**Background**

On October 17, 2014, the United States Judicial Panel on Multidistrict Litigation entered its Order consolidating for pretrial proceedings several consumer class actions alleging that Blue Buffalo made false and misleading representations about the ingredients in its pet food products. These actions, as well as some additional tag-along actions that were filed after the creation of the multidistrict litigation ("MDL") suit, were ultimately settled.

The settlement proceedings included certification for settlement purposes the parties' proposed settlement, after which notice was directed to potential class members. After the notice period terminated, I held a fairness hearing to consider the fairness of the settlement and the award of attorneys' fees, among other things. While the overwhelming response from potential class members was positive, there were also some objections to the settlement. The current Objectors, Pamela Sweeney, Pamela McCoy, Paul Lopez, Gary Sibley, and Caroline Nadola,

were among those who objected to the fairness of the settlement before it was approved.  None of the Objectors attended the fairness hearing.

On June 16, 2016, after the fairness hearing, I entered a Final Order and Judgment approving the class settlement in this action.  *See* [#214].  I also entered my Findings of Fact, Conclusions of Law, and Order Awarding Fees and Costs.  *See* [#215].  The settlement provides valuable economic restitution and injunctive relief to a certified class of consumers who had purchased certain Blue Buffalo petfood products between May 7, 2008 and December 18, 2015.  Under the terms of the settlement, Blue Buffalo has paid $32 million in cash into a Settlement Account available for class members.

I also approved attorneys' fees of 25% of the settlement amount, recognizing that "courts in this circuit . . . have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund."  [#215] at 2 (citing *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *1 (N.D. Iowa Nov. 9, 2011) (quoting *In re Xcel Energy, Inc., Sec., Derivative & '"ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases)).  Higher awards of one-third are common. *Id.* at 3.  Although I was not required to do so, I also conducted a lodestar cross check, which supported my finding that the attorneys' fees of 25% were fair. *Id.* at 3.  With the final approval, over 100,000 claimants stand to collectively receive over $22 million in cash benefits from the settlement fund.

In July 2016, each of the Objectors listed above filed notices of appeal from this Court's final Orders approving the settlement and awarding attorneys' fees and expenses in this action.  On July 29, 2016, Plaintiffs filed the current motion for appeal bond.

2

**Legal Standard**

"Although an appeal typically divests a district court of jurisdiction over a case, the court retains jurisdiction to impose a cost bond for appeal." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *1 (D. Minn. Sept. 11, 2012) (citing *Venen v. Sweet,* 758 F.2d 117, 121 n. 2 (3d Cir.1985)).  Under Rule 7 of the Federal Rules of Appellate Procedure, a district court may require an appellant to file a bond in an "amount necessary to ensure payment of costs on appeal."  Fed. R. App. P. 7.  "The purpose of an appellate cost bond is the protection of appellees' rights by 'provid[ing] some level of security to Lead Plaintiffs who have no assurances that Appellants have the ability to pay costs and fees associated with opposing their appeals.'"  *Id.* at *2 (quoting *In re Ins. Brokerage Antitrust Litig.*, Civ. No. 04–5184, 2007 WL 1963063, at *2 (D.N.J. July 2, 2007)).  District courts have discretion to craft a bond indicative of the expected outcome on appeal.  *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir.1998).  "Appeal bonds are often required on appeals of class action settlements or attorneys' fee awards because the appeal effectively stays the entry of final judgment, the claims process, and payment to all class members."  *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 2012 WL 3984542 at *2 (internal citations omitted).  However, appeal bonds must not create "an impermissible barrier to appeal."  *Id.* (internal quotations omitted).

In determining whether a Rule 7 bond is necessary, courts consider the following factors: (1) the appellant's financial ability to post a bond; (2) the risk of nonpayment of appellee's costs if the appeal is unsuccessful; (3) the merits of the appeal; and (4) bad faith or vexatious conduct on the part of the appellants.  *Id.* (citing *Berry v. Deutsche Bank Trust Co. Americas*, 632 F.Supp.2d 300, 307 (S.D.N.Y.2009).  Within its discretion, the court may make objectors jointly and

severally liable for the bond payment. *Id.* (citing *In re. Ins. Brokerage Antitrust Litig.*, 2007 WL 1963063, at *3.

## Discussion

Plaintiffs, on behalf of themselves and others similarly situated, seek an appeal bond from the Objectors for the following costs: (1) $25,000 in appeal-related costs, (2) $60,000-$80,000 in administrative costs, (3) $13,334 in delay costs/interest, and (4) $51,975 in attorneys' fees. Plaintiffs argue that each of the factors that courts consider in determining whether an appeal bond is necessary weigh in favor of imposing a bond.

Each of the Objectors oppose the imposition of an appeal bond, requesting either that no bond be required, or than any bond that is ordered be limited to the direct costs of the appeal, and in a much lower amount that the $25,000 in direct costs that Plaintiffs seek. They also argue that the weight of the factors do not support the imposition of a bond.

### A. Factors Justifying an Appeal Bond

Each of the factors courts consider to determine whether an appeal bond is necessary weigh in favor of imposing an appeal bond.

First, none of the Objectors have demonstrated an inability to post a bond. An "appellant asserting that the size of the Rule 7 Bond presents a financial barrier to an appeal must . . . make a sufficient showing in support of that assertion." *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d at 151 (citing *Adsani*, 139 F.3d at 76). Objector Sibley attempts to rebut Plaintiffs argument that he has the ability to pay because he stated at deposition that he could pay an appeal bond of $15,000. Sibley argues that this statement is actually evidence that he cannot pay more than $15,000. Whatever meaning might be read into this statement, Sibley has not actually stated that he cannot pay a bond over $15,000, let alone presented evidence of an inability to pay that amount.

Additionally, it is obvious from Sibley's statement that he does have the ability to pay a bond of $15,000.  Objector Nadola also argues she is unable to pay an appeal bond, stating that she could not pay even one-fifth of the total requested bond ($30,000).  But Nadola does not provide any reasons for why she cannot pay more than $30,000, nor does she present any evidence supporting such a finding, which is her burden.  Objector Sweeney argues that she is unable to pay unless the bond is limited to the "true costs" of the appeal, stating that she is unemployed.[1]  Sweeney does not provide any evidence of her financial state, however, and the mere fact of unemployment does not establish inability to pay.  Moreover, at deposition, Sweeney refused to answer any questions regarding her ability to pay a bond.  The remaining Objectors, Lopez and McCoy, do not argue that they are unable to pay the bond.

Second, courts consider whether there is a risk of non-payment of Plaintiffs' costs if the appeal is unsuccessful.  This factor also weighs in favor of a bond because all of the Objectors reside in states outside of this District, which increase potential costs of collecting on a judgment.  Additionally, some of the Objectors' have stated that they would be unable to pay, which mau suggest that there is a risk of nonpayment.  *See Heekin v. Anthem, Inc.,* 1:05-CV-01908-TWP, 2013 WL 752637, at *2 (S.D. Ind. Feb. 27, 2013); *Uponor*, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012).

Third, courts consider whether the appeal lacks merit.  Here, the Objectors each raise arguments on appeal that were raised before me when I considered whether the settlement was fair and whether the award of attorneys' fees was reasonable.  I overruled these objections at that time and found the settlement and award of fees to be fair and reasonable.  For the same reasons I stated

---

[1] Objector Sweeney filed her opposition to the Plaintiffs' Motion for Appeal Bond more one month after the deadline to respond had passed.  Plaintiffs argue that Sweeney's opposition should not be considered because she filed it out of time without seeking leave to do so.  Although Sweeney's opposition was filed out of time, I will exercise my discretion and consider her arguments, particularly because doing so in this case does not prejudice Plaintiffs.

5

on the record at the fairness hearing and set out in my Order approving the settlement and award of fees, *see* Transcript of Fairness Hearing [#211]; *see also* [#214], [#215], and for the reasons set out in Plaintiffs' briefs in support of their motion for an appeal bond, I believe that the Objectors' same arguments on appeal lack merit.

Finally, the question of whether the Objectors' appeals were brought in bad faith or reflect vexatious conduct also weighs in favor of requiring an appeal bond. Four of the five Objectors appear to be professional or serial objectors, which is a strong indicator that the appeals were brought in bad faith. Objector Nadola, however, is the exception, as this is the first time she has objected to a class action settlement. As a result, this factor weighs against Lopez, Sibley, Sweeney, and McCoy, but not against Nadola.

### B. Requested Costs

The issues before me now are very similar to those raised in *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542 (D. Minn. Sept. 11, 2012). In *Uponor*, the United States District Court for the District of Minnesota found that an appeal bond of $170,000 was necessary to cover the direct costs of the appeal and costs caused by the delay of implementing the settlement and by the claims administrator having to give additional notice to the class during the course of the appeal. *Id.* at *3-6. The *Uponor* Court found that a bond of $170,000 would not be a barrier to appeal because the objectors had not offered any evidence of financial hardship. *Id.* at *6. In reaching these findings, the *Uponor* Court considered the strength of the objectors' arguments on appeal and concluded that they were "very weak," and that the objectors had "evidenced bad faith and vexatious conduct" in seeking appeal, which weighed in favor of imposing a bond. *Id.* at *2. The Court's finding of bad faith turned mostly on the fact that the objectors there, and their counsel, were "professional" or "serial" objectors. *Id.*

6

The *Uponor* objectors appealed the district court's order requiring an appeal bond of $170,000, contending it was excessive. The United States Court of Appeals for the Eighth Circuit agreed with the objectors and "entered an order staying the requirement that Appellants post an appeal bond in excess of $25,000." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1062 (8th Cir. 2013) (citing No. 12–2761/3179 (8th Cir. Sept. 28, 2012)) (internal quotations omitted). Because the *Uponor* plaintiffs did not challenge the Eighth Circuit's stay of the appeal bond over $25,000, the Court did not address the appellants' arguments further. *Id.* at 1062 n.3.

Because the facts relevant to Plaintiffs motion for appeal bond are so similar to those in *Uponor*, and for the reasons that follow, I will impose an appeal bond in the amount of $25,000.

Plaintiffs first seek $25,000 in direct appeal costs. Under Fed. R. App. P. 7, requiring an appeal bond to cover expected costs on appeal may be proper. Under Fed. R. App. P. 39(e), costs that may be assessed against parties on appeal include costs for "the preparation and transmission of the record; the reporter's transcript, if needed to determine the appeal; and the fee for filing the notice of appeal." Plaintiffs state that the expected costs of the appeal will amount to $25,000. The *Uponor* Court found that amount to be reasonable because of the large number of law firms that would require copies, the fact that there were multiple appeals, and the size of the record. *Id.* at *3-4. Objectors here argue that $25,000 is excessive. Courts routinely award appeal costs in actions of this size and nature in the amount of $25,000, however, and that amount is reasonable here in consideration of the record and because there are multiple appeals at issue.

Second, Plaintiffs seek $60,000-$80,000 to cover the administrative costs associated with work the claims administrator will need to perform to communicate with class members during the appeal process and maintain the claims website. *See* Ex. L to Plaintiffs' Memorandum in Support

7

of Motion for Appeal Bond [#233-12]. The Eighth Circuit has not yet addressed whether administrative costs are properly included as bondable "costs on appeal" under Fed. R. App. P. 7. However, its order staying the *Uponor* Court's order requiring an appeal bond in excess of $25,000 indicates a disapproval of the inclusion of such costs. Under this guidance, and based on the facts before me, I do not find that a bond is required to ensure payment of such costs on appeal.

Third, Plaintiffs seek $13,334 in delay costs. Plaintiffs calculate this figure by estimating the amount of interest that will accrue on the settlement fund (excluding attorneys' fees and administrative costs) over the course of the appeal, which Plaintiffs expect to take approximately one year. Plaintiffs argue that such an award is proper because filing these appeals is tantamount to a stay of the judgment, and Fed. R. Civ. P. 8 and 28 U.S.C. § 1961 authorize the award of post-judgment interest in such cases. Again, the Eighth Circuit has not addressed whether the inclusion of delay costs or post-judgment interest is a proper "cost[] on appeal" under Rule 7. Moreover, I am not convinced that including delay or interest costs is necessary to ensure payment of these costs on appeal.

Fourth, Plaintiffs ask me to order the Objectors to post $51,975 to cover the attorneys' fees they expect to incur in defending the appeal. Some of the Objectors argue that inclusion of attorneys' fees is improper because Plaintiffs' attorneys would not be entitled to fees even if they prevail on appeal. Plaintiffs respond that some of the consumer protection statutes under which their claims were brought, including the Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.025.1, as well as the consumer protection statutes of Ohio, New Jersey, and Florida, provide for the award of reasonable attorneys' fees to the prevailing party. Plaintiffs also argue that they could be entitled to fees if the Eighth Circuit finds that the appeals are frivolous under Fed. R. App. P. 38. Again, the Eighth Circuit has not directly addressed whether attorneys' fees may be

8

appropriately included as "costs on appeal" under Rule 7. Because the ultimate award of attorneys' fees is so hypothetical at this point, and because the Eighth Circuit stayed the portion of the district court's order requiring the *Uponor* objectors to post an appeal bond covering attorneys' fees, I do not find that bond for attorneys' fees is necessary to ensure the payment of these potentially-recoverable costs.

Finally, Plaintiffs have requested that the Objectors be jointly and severally liable for the appeal bond and that the bond be entered against Objectors' attorneys as well as the Objectors themselves. Plaintiffs argue that imposing joint and several liability is routinely done in situations similar to these, and that the imposition of joint and several liability here will actually benefit the Objectors by allowing them to "pool their resources" and make the payment of the bond less onerous. Objector Lopez argues that requiring the Objectors to be jointly and severally liable for the bond is unconstitutional because it could cause one objector to be held liable for separate conduct of another objector if, for example, one objector is sanctioned for a frivolous appeal while the other is not. Although it does appear that other courts have made objectors in similar situations jointly and severally liable for an appeal bond, because each of the five Objectors here have filed separate appeals, and because there is no evidence that Objector Nadola is a professional or serial objector, unlike the four others, I will not impose joint and several liability on the Objectors. Instead, each Objector will be required to post one-fifth of the required appeal bond. Additionally, Plaintiffs' arguments for requiring the Objectors' attorneys to post the appeal bond along with the Objectors is unpersuasive and I will not enter the appeal bond against the Objectors' attorneys.

## Conclusion

For the reasons stated above, I find that an appeal bond in the amount of $25,000, to cover the direct costs of defending the appeal, is necessary and sufficient to ensure the payment of costs

on appeal. *See* Fed. R. App. P. 7; 39(e). As a result, I will grant in part Plaintiffs' Motion for Appeal Bond and order each of the five Objectors to pay one-fifth of the appeal bond, which comes to $5,000 per Objector.

Accordingly,

**IT IS HEREBY ORDERED** that Caroline Nadola's Motion for Leave to file a Sur-Reply #[259] is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Appeal Bond #[232] is **GRANTED** in part and **DENIED** in part in accordance with the terms of this Memorandum and Order. Pamela Sweeney, Pamela McCoy, Paul Lopez, Gary Sibley, and Caroline Nadola shall each file an appeal bond of $5,000, for a total appeal bond of $25,000, by **no later than October 14, 2016**.

                                                                                              _____
                                                                                              RODNEY W. SIPPEL
                                                                                              UNITED STATES DISTRICT JUDGE

Dated this 3rd day of October, 2016.